UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISON

| | |
|---|---|
| BRIAN P. LANE, Individually and behalf of all others similarly situated, | |
| Plaintiff, | |
| v. | Case No.: 3:19-cv-01492-X |
| THE UNITED STATES, | Judge Brantley D. Starr |
| Defendant. | |

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S
## MOTION TO DISMISS AND BRIEF IN SUPPORT

Plaintiff, Brian Lane, ("**Plaintiff**"), by and through his undersigned counsel, hereby files

his Response to The United States of America's Motion to Dismiss.

Adam M. Riley (KY 97748)
Flint Law Firm, LLC
222 E. Park St., Suite 500
P.O. Box 189
Edwardsville, IL 62025
T: (618) 288-4777
F: (618) 288-2864
ariley@flintlaw.com

Sara E. Coopwood (TX 24077505)
Flint Law Firm, LLC
3838 Oak Lawn Avenue, Suite 1000
Dallas, Texas 75219
T: (618) 288-4777
F: (618) 288-2864
scoopwood@flintlaw.com

## TABLE OF CONTENTS

TABLE OF AUTHORITIES..................................................................ii

INTRODUCTION.............................................................................1

BACKGROUND...............................................................................3

ARGUMENT...................................................................................6

I.      Standard of Review

II.     The Government's Final Rule requiring surrender or destruction of lawfully
        acquired bump-stocks was a *per se* physical taking..........................................6

        A.  *Horne* makes no exception from categorical physical takings for the
            Government's exercise of police powers.................................................8

        B.  The Government does not escape liability for a categorical physical
            taking by offering property owners a choice between surrendering their
            property to the Government of destroying it themselves.........................9

        C.  Government "use" of taken property is not a requirement of a
            categorical physical taking under *Horne*............................................10

III.    Even under a regulatory takings analysis, the Final Rule was still a
        categorical taking......................................................................12

IV.     The Government's exercise of "police powers" does not excuse payment
        of just compensation for a categorical taking........................................14

        A.  *Mugler* and *Miller* are not controlling because the Final Rule totally
            dispossessed Plaintiff of his property................................................15

        B.  The Final Rule was not a prohibition on contraband.............................17

        C.  Plaintiff's property was not taken subject to an *in rem* civil forfeiture
            proceeding or as evidence in a criminal prosecution............................21

        D.  Plaintiff seeks compensation for tangible property..............................22

        CONCLUSION..................................................................................25

## TABLE OF AUTHORITIES

### Cases

*A & D Auto Sales, Inc. v. United States,*
748 F.3d 1142 (Fed. Cir. 2014)......................................................12, 17, 20

*Acadia Technology v. United States,*
458 F.3d 1327 (Fed. Cir. 2006).........................................................21, 25

*Akins v. United States,*
82 Fed. Cl. 619 (2008)...............................................................19, 24, 25

*Akins v. United States,*
312 F. App'x 197 (11th Cir. 2009).......................................................19

*Allied-General Nuclear Services v. United States,*
839 F.2d 1572 (Fed. Cir. 1988).................................................23, 24, 25

*AmeriSource Corp. v. United States,*
525 F.3d 1149 (Fed. Cir. 2008)........................................................22, 25

*Andrus v. Allard,*
444 U.S. 51 (1979)................................................................13, 14, 17

*Bell Atl. Corp v. Twombly,*
550 U.S. 544 (2007)......................................................................6

*Caldwell v. United States,*
391 F.3d 1226 (Fed. Cir. 2004)..........................................................17

*Campbell v. United States,*
932 F.3d 1331 (Fed. Cir. 2019).........................................................10

*Duncan v. Becerra,*
366 F. Supp. 3d 1131, (S.D. Ca. 2019).................................................21

*Gardner v. Michigan,*
26 S. Ct. 106 (1905)....................................................................10

*Gibson Wine Co. v. Snyder,*
194 F.2d 329 (D.C. Cir. 1952)..........................................................18

*Gonzales v. Kay,*
577 F.3d 600 (5th Cir. 2009).................................................................6

*Guedes v. BATFE,*
920 F.3d 1 (2019) (*per curium*)..............................................5, 17, 18, 19

*Hawaii Housing Auth. v. Midkiff,*
467 U.S. 986 (1984)...........................................................................11

*Holliday Amusement Co. v. South Carolina,*
493 F. 3d 404 (4th Cir. 2007).............................................................20

*Horne v. Department of Agriculture,*
-- U.S. --, S.Ct. 2419 (2015)........................................................*passim*

*John Corp. v. City of Houston,*
214 F.3d 573 (5th Cir. 2000)...............................................................15

*Katzin v. United States,*
908 F.3d 1331 (Fed. Cir. 2018)...........................................................10

*Kessler v. United States,*
229 Ct. Cl. 472 (1981)........................................................................22

*Loretto v. Teleprompter Manhattan CATV Corp.,*
458 U.S. 419 (1982)....................................................................*passim*

*Lucas v. South Carolina Coastal Council,*
505 U.S. 1003 (1992)...............................................................2, 12, 13, 16

*Maritrans, Inc. v. United States,*
342 F.3d 1344 (Fed. Cir. 2003)......................................................13, 14

*Maryland Shall Issue v. Hogan,*
353 F. Supp. 3d 400 (D. Md. 2018)......................................................20

*Melancon, Inc. v. City of New Orleans,*
703 F.3d 262 (5th Cir. 2012).............................................................24

*Miller v. Horton,*
26 N.S. 100 (Mass. 1891).............................................................10, 11

*Miller v. Schoene,*
276 U.S. 272 (1928).....................................................................16, 24

*Mitchell Arms, Inc. v. United States,*
7 F.3d 212 (Fed. Cir. 1993)...................................................17, 23, 24, 25

*Mugler v. Kansas,*
123 U.S. 623 (1887).................................................................15, 16, 24

*Penn Central Transportation Co. v. New York City,*
438 U.S. 104 (1978).........................................................................12

*Pennsylvania Coal v. Mahon,*
260 U.S. 393 (1922).........................................................................12

*Preseault v. United States,*
100 F. 3d 1525 (Fed. Cir. 1996)..........................................................7

*PruneYard Shopping Ctr. v. Robins,*
447 U.S. 74 (1980)...........................................................................12

*Pumpelly v. Green Bay & Mississippi Canal Co.,*
80 U.S. 166 (1871)...........................................................................11

*Roberts v. Bondi,*
No. 8:18-cv-1062, 2018 WL 3997979 (M.D. Fla. Aug. 21, 2018)..................20

*Rose Acre Farms, Inc. v. United States,*
373 F.3d 1177 (Fed. Cir. 2004)...........................................................12

*Ruckelshaus v. Monsanto Co.,*
467 U.S. 229 (1984)...........................................................................11

*Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency,*
535 U.S. 302 (2002)...........................................................................11

*United States v. Dow,*
357 U.S. 17 (1958)............................................................................17

*United States v. General Motors Corp.,*
323 U.S. 373 (1945).......................................................................8, 11

*United States v. Sec. Indus. Bank,*
459 U.S. 70 (1982)............................................................................17

*United States v. Welch*,
217 U.S. 333 (1910)……………………………………………………………..…11

## Statutes

26 U.S.C. Chapter 53…………………………………………………………………3

18 U.S.C. Chapter 44…………………………………………………………………3

18 U.S.C. § 922(o)(2)……………………………………………………...………4

Pub. L. No. 99-308, 100 Stat. 449 (1986)………………………………………3

## Rules

FRCP 12(b)(6)………………………………………………………..……....6

## Regulations

82 Fed. Reg. 60,929……………………………………………..………......4

83 Fed. Reg. 66,523……………………………………...…………5, 7

83 Fed. Reg. 66,514……………………………………………………………4

83 Fed. Reg. 13,442………………………………………………..………....5

83 Fed. Reg. 7,950…………………………………………………………..…...4

## INTRODUCTION

On October 1, 2017, a shooter opened fire on a concert in Las Vegas, killing 58 people and wounding hundreds more.  Authorities reported that the shooter used firearms equipped with bump-fire type rifle stocks (collectively referred to as "bump-stocks" or "stocks"). The incident galvanized support for gun control, in particular for a ban on bump-stocks, which had been legally sold in the United States since 2010. By the end of 2018, the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") issued a rule that banned bump-stocks and even required everyone who had legally purchased and possessed a bump-stock to surrender their property to the United States government (the "Government") or destroy it.

Plaintiff Brian Lane ("Plaintiff") is the former owner of bump-stock devices. He complied with the ATF rule and destroyed his lawfully acquired stocks. Nothing remains of his former property. At all times before he was forced to abandon or destroy his personal property, Plaintiff used his stocks only in a lawful manner for recreation. Plaintiff had no connection to the Las Vegas shooting. Neither Plaintiff nor his bump-stock devices have been implicated in any criminal activity whatsoever.

The new ATF rule requiring the surrender or destruction of lawfully acquired stocks was categorically a taking requiring just compensation under any Fifth Amendment analysis—physical or regulatory. It was a classic physical taking because it totally and permanently dispossessed Plaintiff of his tangible personal property. That is the very blueprint for a *per se* physical taking that demands

1

compensation no matter how weighty the government interest behind it. *Horne v. Department of Agriculture*, -- U.S. --, 135 S. Ct. 2419 (2015). However, even a regulatory taking analysis inexorably leads to a categorical duty to compensate Plaintiff because an act of government that confiscates or destroys property obviously necessarily also deprives its owner of all beneficial use of the property— the lynchpin of a categorical regulatory taking. *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1017 (1992).

The dispute between Plaintiff and the Government boils down largely to a disagreement about the interaction between the Government's exercise of police powers and the people's Fifth Amendment right to compensation for property taken by government action. The Government insists that an exercise of police powers exempts even a total dispossession of tangible property from compensation so long as the Government's purpose was the promotion of public safety. Essentially, the Government aims to replace categorical takings with a categorical immunity from takings by the mere assertion of a public safety impetus for government action.

This case is not about whether the Government can or should introduce bans on previously lawful firearms. It is about whether the federal government can constitutionally take from citizens their lawfully acquired tangible personal property without paying them just compensation. It is about who should bear the cost of shifting perceptions about how to promote public safety, the nation as a whole or a select group of property owners? When Government promotes public safety by destroying all property rights in lawfully acquired private property, the

Fifth Amendment requires that the costs be distributed evenly. The Court should deny the Government's motion to dismiss.

## BACKGROUND

The Takings Clause of the Fifth Amendment of United States Constitution provides that "private property" shall not "be taken for public use, without just compensation." U.S. Const. amend. V. The Fifth Amendment imposes a categorical duty on the government to pay just compensation for physical takings of private property. *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 421 (1982). A physical taking occurs when the state "absolutely dispossess[es] the owner of property." *Id.* at 435 n.12.

Three federal statutes regulate the sale and possession of firearms in the United States, the National Firearms Act of 1934 (NFA), 26 U.S.C. Chapter 53; the Gun Control Act of 1968 (GCA), 18 U.S.C. Chapter 44; and the Firearm Owners Protection Act (FOPA), Pub. L. 99-308, 100 Stat. 449 (1986). The GCA and FOPA specifically define the term "machinegun,"[1] and in 1986, FOPA made it unlawful for any person to transfer or possess any firearm that meets the statutory definition of "machinegun" if it was not lawfully possessed before FOPA's effective date in 1986. Notably, FOPA was prospective only. As the Government acknowledges in its Motion, FOPA did not forbid the "lawful transfer or lawful possession of a

---

[1] The federal statutes regulating firearms spell "machinegun" as a single word. Plaintiff uses the common spelling "machine gun" except when quoting statutory language.

machinegun that was lawfully possessed before the date this subsection takes effect." Mot. at 4, quoting 18 U.S.C. § 922(o)(2).

The ATF is the federal agency charged with administering the NFA, GCA and FOPA. A bump-stock device was submitted to the ATF in 2010 for examination and classification, and the ATF deemed it an unregulated firearm part. 82 Fed. Reg. 60929 (Dec. 26, 2017). For nearly a decade, the ATF issued a series of classification decisions announcing and affirming the agency determination that bump-stocks are not machine guns, as defined by the GCA and FOPA, and not subject to federal regulation. 83 Fed. Reg. 66,514.

The Government began to lay the groundwork for a change in its position on bump-stocks after the Las Vegas shooting in October of 2017. In December, the Department of Justice ("DOJ") published an advance notice of proposed rulemaking explaining that "questions had arisen" as to whether bump-stock devices "should be classified as machineguns" under federal law. 82 Fed. Reg. 60929 (Dec. 26, 2017).

On February 20, 2018, President Donald Trump issued a "Presidential Memorandum on the Application of the Definition of Machinegun to 'Bump Fire' Stocks and Other Similar Devices" noting that "the Obama Administration repeatedly concluded that particular bump stock type devices were lawful to purchase and possess," and announced that he had asked his Administration to "clarify" whether bump-stocks "should be illegal" under the federal statutory framework banning machine guns. 83 Fed. Reg. 7950.

4

The full review mandated by President Trump culminated in the issuance of a Final Rule ("Final Rule" or "Rule") that broadened elements of the definition of "machinegun" under the NFA, GCA and FOPA, such that the FOPA ban on machine guns could reach bump-stocks. *See Bump-Stock-Type Devices*, 83 Fed. Reg. 13442 (Mar. 29, 2018). The Rule required owners of bump-stocks to surrender them to the Government or destroy them, but it made clear that a person in possession of a bump-stock type device was "not acting unlawfully *unless* they fail to relinquish or destroy their device *after* the effective date of this regulation." 83 Fed. Reg. 66,523 (emphasis added). In other words, the Government decided that bump-stocks *should be* illegal, not that they *had been illegal all along* under federal law.

Challenges to the validity of the Final Rule were filed in various jurisdictions. In examining the Final Rule, the District Court for the District of Columbia determined that the Rule was legislative in nature, rather than merely interpretive of the firearm statutes under the purview of the ATF. The Court of Appeals for the D.C. Circuit agreed that the Rule is unequivocally legislative, notwithstanding "the government's litigating position in this case that seeks to reimagine the Rule as merely interpretive." *Guedes v. Bureau of Alcohol, Tobacco, Firearms and Explosives*, 920 F.3d 1, 19 (2019) (*per curiam*).

On June 24, 2019, Plaintiff filed this action seeking just compensation under the Fifth Amendment for the bump-stocks he was required to destroy or abandon to the Government. In addition to Plaintiff's claim, three other lawsuits seeking just compensation for property taken by the Final Rule have been brought in the Court

5

of Federal Claims. *See Rouse, et al. v. United States*, 18-cv-1980 (Fed. Cl.); *Modern Sportsman, LLC, et al. v. United States*, 19-cv-449 (Fed. Cl.); *McCutchen, et al. v. United States*, 18-cv-1965 (Fed. Cl.). The *Rouse* and *McCutchen* complaints were filed as putative class action lawsuits. In all three cases, the Government filed motions to dismiss. The motion was granted in *McCutchen*; motions are still pending in *Rouse* and *The Modern Sportsmen*.

Plaintiff filed this class action on behalf of himself and a class of similarly situated purchasers of bump-stock devices who legally possessed bump-stocks at the time the Final Rule was issued. Plaintiff alleges that the Rule's requirement that bump-stocks be surrendered or destroyed was a taking under the Fifth Amendment of the United States Constitution.

## ARGUMENT

### I.    Standard of Review

In considering a Rule 12(b)(6) motion for failure to state a claim, the Court must construe the complaint in the light most favorable to Plaintiff and accept as true the facts as plead. *Gonzalez v. Kay,* 577 F. 3d 600, 603 (5th Cir. 2009). As the moving party, the Government bears the burden of proving that the complaint should be dismissed. *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007). The Government's motion must be denied if Plaintiff plead factual allegations that are enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true, even if doubtful in fact. *Id.*

### II.   The Government's Final Rule requiring surrender or destruction of lawfully acquired bump-stocks was a *per se* physical taking.

The ATF Final Rule required owners of bump-stocks to surrender their private property to the government or destroy it.[2] One way or the other, Plaintiff was permanently dispossessed of his property. The Rule also acknowledged that ownership of the stocks was entirely legal before the effective date of the Rule. 83 Fed. Reg. 66,523. This is a Fifth Amendment "taking" in the most literal sense of the word. The Rule did not just take *value* from Plaintiff's property by placing restraints on the *use* of the property; it actually *physically* took the tangible property itself. Unlike a regulation that leaves some property rights intact, Plaintiff was left with nothing. Restraints on the *use* of private property raise different legal issues than interference with the possession of private property. *Preseault v. United States*, 100 F.3d 1525, 1540 (Fed. Cir. 1996) ("This issue of title and ownership expectations must be distinguished from the question that arises when the Government restrains an owner's use of property. . .without disturbing the owner's possession.").

The takings analysis of a physical dispossession of personal property by the Government is uncomplicated. A physical taking of personal property by the government is *per se* a taking that must be compensated, regardless of the public benefit the government sought to achieve or the economic impact on the owner. *Horne*, 135 S.Ct. at 2425-27. Courts do not balance the government's interests

---

[2] The ATF's website confirms "[c]urrent possessors of bump-stock-type devices must divest themselves of possession as of the effective date of the final rule[.]" https://www.atf.gov/rules-and-regulations/bump-stocks (last visited October 8, 2019).

against the owner's interest. The Government's obligation to compensate is absolute. *Loretto*, 458 U.S. 419.

The Government acknowledges that *Horne* held that the Government has a "categorical duty under the Fifth Amendment to pay just compensation," and that this duty applies not "only to real property, [but] to personal property." Motion at 18, citing *Horne*, 135 S. Ct. 2425-26. Despite the plain meaning of the word "taken," and the Supreme Court's decision in *United States v. General Motors Corp.* defining the term "taken" to include destruction, 323 U.S. 373, 378 (1945), the Government proposes that the Court should not regard the Final Rule that dispossessed Plaintiff of his property as a "taking" in the legal sense because: 1) the promulgation of the Final Rule was motivated by an interest in promoting public safety; 2) the Rule allowed Plaintiff to destroy his property himself; and 3) the Government did not take the bump-stocks for its own "use." None of these objections to the application of *Horne* are justified by the *Horne* decision itself.

### A. *Horne* makes no exception from categorical physical takings for the Government's exercise of police powers.

The Government contends that it is immune from all takings liability—not just physical takings under *Horne*—when it exercises its police powers to promote public safety. Mot. at III. B. Plaintiff will respond to the Government's general arguments for a "police powers" exemption in Section IV below. The *Horne* decision itself recognizes no exceptions.

The *Horne* Court took the categorical stance that the government has an absolute obligation to pay just compensation when it physically takes private

property—be it real property or personal property. *See Horne*, 135 S. Ct. 2425-26. The *Horne* Court was clear: "The Government has a categorical duty to pay just compensation when it takes your car, just as when it takes your home." *Id.* at 2426. A physical taking of property gives rise to a per se taking "without regard to other factors that a court might ordinarily examine." *Id.* at 2428 (quoting *Loretto*, 458 U.S. at 432). The *Horne* Court specified that the "character of the government action" or "the claimed public benefit" do not come into consideration in a *per se* physical takings analysis. *Id.* at 2427.

## B. The Government does not escape liability for a categorical physical taking by offering property owners a choice between surrendering their property to the Government or destroying it themselves.

The Government insists that *Horne* is inapplicable because the ATF did not physically seize Plaintiff's property; it gave property owners the option of destroying their own property and "this distinction is critical." Mot. at 19. *Horne* did not concern itself with the distinction between physical seizure and mandated destruction of property. The only critical distinction identified in the *Horne* decision is the difference between prohibiting the sale of raisins (which the Government could do without effectuating a taking) and requiring raisin growers to set aside a reserve of raisins for the Government (which *Horne* deemed to be a categorical taking because the growers lost *all rights* in the raisins). *Horne*, 135 S. Ct. at 2428. That distinction is unrelated to Plaintiff's claims. The *Horne* Court merely applied the complete physical takings rational to personal property. As noted, a *per se* physical taking occurs when the owner is completely dispossessed of their property.

9

*Loretto*, 458 U.S. at 435 n.12; *Campbell v. United States*, 932 F.3d 1331, 1337 (Fed. Cir. 2019) (quoting *Katzin v. United States*, 908 F.3d 1350, 1361 (Fed. Cir. 2018)) ("A physical taking generally occurs when the government directly appropriates private property or engages in the functional equivalent of a '*practical ouster of [the owner's] possession*.'") (emphasis added). It is undisputed here that the Plaintiff has been completely and permanently ousted from the possession of his property.

### C.   Government "use" of taken property is not a requirement of a categorical physical taking under *Horne*.

The Government insists that there can be no categorical physical taking under *Horne* because the bump-stocks were destroyed and not retained for government use. Mot. at 21. This is a self-serving extrapolation from the *Horne* decision that is nowhere to be found in the opinion itself.[3] The Government suggests that the *Horne* Court discussed colonial era impressment of supplies for army use to demonstrate that a categorical taking requires actual government use, but the purpose of that discussion was to show that the founders intended to afford Fifth Amendment protection to personal property and not just real property.[4]

---

[3] The Government's suggestion that *Gardner v. Michigan*, 26 S. Ct. 106 (1905) stands for the proposition that government use is a necessary component of a categorical physical taking is wrong. *See* Mot. at FN 19. *Gardner* was an Equal Protection challenge to a criminal statute that required disposal and destruction of garbage. The defendant did not raise and the Court did not address claims under the Fifth Amendment.

[4] As Justice Holmes noted in *Miller v. Horton*: "When a healthy horse is killed by a public officer, acting under a general statute, for fear that it should spread disease, the horse certainly would seem to be taken for public use as truly as if it were seized to drag an artillery wagon. The public equally appropriates it, whatever they do with it afterwards. Certainly the legislature could not declare all cattle to be

The Supreme Court has also long rejected the notion that the Government or general public must actually use the property at issue to constitute a taking.[5] See *Pumpelly v. Green Bay & Mississippi Canal Co.*, 80 U.S. 166, 178 (1871) (holding the Government's destruction of property by flooding a public use). In *United States v. General Motors Corporation,* the Supreme Court held that "the deprivation of the former owner rather than the accretion of a right to the sovereign constitutes the taking." 323 U.S. at 378. The Court went on to explain that whether the Government directly appropriates property or destroys all of an owner's existing rights in the property "the Fifth Amendment concerns itself solely with the property." *Id; see also United States v. Welch*, 217 U.S. 333, 339, (1910) ("a destruction for public purposes may as well be a taking as would be an appropriation for the same end.").

In addition to manufacturing extrapolations from the *Horne* decision that are contrary to precedent, the Government ignores the Court's repeated justification for applying a categorical standard to physical takings that fits Plaintiff's claim like a glove. A physical appropriation is a categorical taking without regard to any other factors because of the severity of the property owner's loss: the entire "bundle" of

---

nuisances, and order them to be killed without compensation."  26 N.S. 100, 102 (Mass. 1891).

[5] The Supreme Court has held "that the scope of the 'public use' requirement of the Taking Clause is 'coterminous with the scope of a sovereign's police powers.'" *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1014 (1984) (citing *Hawaii Housing Authority v. Midkiff*, 467 U.S. 229, 240 (1984)). In other words, the valid exercise of the Government's police powers is a public use itself. *See also Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 326 (2002).

property rights in their property—the rights to possess, use and dispose of property.

*Horne*, 135 S. Ct. at 2428 (citing *Loretto*, 458 U.S. at 435).

### III.   Even under a regulatory takings analysis, the Final Rule was still a categorical taking.

The Final Rule was obviously a physical taking: it required Plaintiff to surrender tangible property or destroy it. However, even if the Final Rule were construed as a regulatory taking, it would, nonetheless, be a *per se* regulatory taking because the Rule stripped Plaintiff of all property rights in the property he lawfully acquired.

The Government may reasonably regulate property, but a taking will occur when a police power regulation goes "too far." *Pennsylvania Coal v. Mahon,* 260 U.S. 393, 415 (1922). In *Penn Central Transportation Co. v. New York City*, the Supreme Court developed and "ad hoc" factual inquiry to determine for how far was "too far." 438 U.S. 104, 124 (1978). However, the Court subsequently clarified that when a regulation deprives land of all economically beneficial use, the Government must pay just compensation unless the proscribed use interests were not part of the property owner's title to begin with. *Lucas*, 505 U.S. at 1027.[6]

This principle has been applied by the Federal Circuit to tangible personal property. *A & D Auto Sales Inc.,* 748 F.3d at 1151; *Rose Acre Farms, Inc. v. United*

---

[6] The Government stops short of suggesting that the right to possess does not inhere to the title of lawfully acquired tangible property under Texas law. Such inherent rights are of course defined by each individual state's common law of property and nuisance. *Lucas*, 505 U.S. at 1029; *see also PruneYard Shopping Ctr. v. Robins*, 447 U.S. 74, 84 (1980) ("Nor as a general proposition is the United States, as opposed to the several States, possessed of residual authority that enables it to define "property" in the first instance.").

*States*, 373 F.3d 1177, 1196–98 (Fed. Cir. 2004); *Maritrans, Inc. v. United States*, 342 F.3d 1344, 1353–55 (Fed. Cir. 2003). Opponents of applying a *per se* regulatory taking analysis to personal property selectively invoke language from the *Lucas* decision, but as noted by the Federal Circuit the frequently-quoted language from *Lucas* does not foreclose a finding of *per se* regulatory taking of personal property. In *Lucas*, the Court admonished that, "in the case of personal property, by reason of the State's traditionally high degree of control over commercial dealings, [the property owner] ought to be aware of the possibility that new regulation might even render his property economically worthless (at least if the property's only economically productive use is sale or manufacture for sale)." *Id.* 1027-28.

Awareness of the state's "traditionally high control over *commercial* dealings" (emphasis added) does not put an owner of tangible personal property on notice that the government might demand the surrender or destruction of his property. Private ownership of tangible property is not commercial dealing. The Lucas dicta merely reaffirms the principal announced in *Andrus v. Allard*: that the Government may ban the sale of an item of personal property without effecting a taking providing the owner maintains possession and other beneficial uses of her lawfully acquired property. 444 U.S. 51, 66 (1979). But as recognized by the reasoning in *Andrus*, and reaffirmed by *Horne*, while property owners may expect some uses of their personal property to be restricted by newly enacted measures, people still do not expect their personal property to be "taken away." *Horne*, 135 S. Ct. at 2427.

13

As recognized by the Federal Circuit in *Maritrans*, the Supreme Court's earlier decision in *Andrus v. Allard* comports with such a reading of *Lucas*. 342 F.3d at 1354. In *Andrus*, the Supreme Court held that the simple prohibition on the sale of lawfully acquired eagle feathers does not effect a taking in violation of the Fifth Amendment when the challenged regulations "do not compel the surrender" of the property in question, and "there is no physical invasion or restraint upon" it. *Id.* at 65. But the Court warned that, "it is crucial that appellees retain the rights to possess and transport their property, and to donate or devise the protected birds." *Id.* at 66. When the effect of regulation is that the owner of personal property is entirely dispossessed of what was lawfully his, a finding of *per se* taking is permissible under a regulatory analysis.

The Final Rule compelled the utter surrender of Plaintiff's bump-stocks. Plaintiff lost every property right he had in his property under Texas law—the right to transport, to sell, to donate, to devise and to possess. No rights remained because the Government demanded destruction of the bump-stocks or abandonment to the ATF. This is an exercise of police power that goes "too far" in its regulation of the use of property that categorically requires compensation by the Government.[7]

## IV.     The Government's exercise of "police powers" does not excuse payment of just compensation for a categorical taking.

The Government acknowledges that the state cannot evade its legal obligation to pay just compensation when it physically takes private property or

---

[7] Plaintiff's claim here renders the *Penn Central* test a foregone conclusion since Plaintiff has no rights left in his property. *See Horne* 135 S. Ct. at 2438 (Sotomayor, J., dissenting).

eliminates all beneficial use of property merely by invoking the police powers of the state. Mot. at 17 citing *John Corp. v. City of Houston*, 214 F.3d 573, 578 (5th Cir. 2000) ("[t]he Supreme Court's entire 'regulatory takings' law is premised on the notion that a city's exercise of its police powers can go too far, and if it does, there has been a taking."). Nonetheless, the Government contends that Plaintiff cannot state a takings claim because the Government was exercising its police powers in support of public health and safety when it deprived Plaintiff of his property. There is no such rule. The cases and extracted language cited by the Government provide a shelter for the Government into four discrete categories that have no relation to Plaintiff's claim: 1) Government action that merely diminishes the value of property; 2) Government action that takes property that was established contraband; 3) Government action that takes property pursuant to an in rem civil forfeiture proceeding or a criminal prosecution as punishment for a crime; and 4) Government action that takes a business expectancy interest in a highly regulated industry.

### A. *Mugler* and *Miller* are not controlling because the Final Rule totally dispossessed Plaintiff of his property.

The Government contends that the late nineteenth century Supreme Court case *Mugler v. Kansas,* 123 U.S. 623 (1887), requires this Court to excuse the Government from payment for the total destruction of Plaintiff's property rights in his bump-stocks because the impetus behind the Final Rule was the promotion of public safety. But *Mugler* cannot control the outcome of a takings claim when plaintiffs are totally dispossessed of their property. The plaintiffs in *Mugler* suffered

15

only a diminution in their property's value. Kansas state law prohibited the plaintiffs in *Mugler* from using their real property to manufacture or sell alcoholic beverages, but the plaintiffs retained possession of their property and could do anything they wished with it except sell or produce alcohol. *Id.*

*Miller v. Schoene*, 276 U.S. 272 (1928), cited by the Government as an example of an exercise of police powers that is beyond the compensation requirement (mot. at 16) is also just diminution in value case. While the Virginia statute in *Miller* required the plaintiff to cut down cedar trees on his property, the Court explicitly found that the plaintiff still had "the privilege of using the trees when felled" as opposed to their previous use for ornamental purposes. *Id.* at 277. More importantly, the issue before the Court was the detrimental impact of the destruction of the trees on the value of Miller's land, which he retained. *Id.* To the extent that the Court's acceptance of the Government's public safety justification to uphold the Virginia statute can be extrapolated to takings claims, it can only be applied to regulations that just *diminish* the value of property. That is not Plaintiff's case.

In the century that has elapsed since *Mugler* and *Miller* were decided, the Supreme Court has explained that these cases were simply the Court's "early formulation of the police power justification necessary to sustain (without compensation) any regulatory *diminution* in value[.]' *Lucas*, 505 U.S. at 1026 (emphasis added) (citing *Mugler*, 123 U.S. 623 and *Miller*, 276 U.S. 272). Whatever application *Mugler* and *Miller* may have to takings that work a diminution in value,

16

they are irrelevant to a takings analysis of Plaintiff's claim of total dispossession and loss of all value. For physical takings, the rule has always been that a physical invasion or a physical appropriation[8] of property is a *per se* taking, without regard to other factors. *Loretto*, 458 U.S. 419.

### B.   The Final Rule was not a prohibition on contraband.

The Government asserts that a prohibition on contraband cannot be a taking for public use under the Fifth Amendment, but Plaintiff's bump-stocks were not contraband at the time they were taken. The Final Rule converted them into contraband.[9] As the United States Court of Appeals for the DC Circuit explained in its April 1, 2019 decision in *Guedes v. Bureau of Alcohol, Tobacco, Firearms and Explosives*, the Final Rule was a legislative rule with the force and effect of law that newly criminalized the possession of Plaintiff's previously lawful property *going forward*. 920 F.3d 1 (2019), 17-21. Legislative rules result from an agency's exercise

---

[8] Physical appropriation occurs when the "owner [is] deprived of valuable property rights, even [if] title ha[s] not formally passed." *Caldwell v. United States*, 391 U.S. at 1235 (citing *United States v. Dow*, 357 U.S. 17, 23, 78 S.Ct. 1039, 2 L.Ed.2d 1109 (1958).

[9] The suggestion that the Government may classify lawfully acquired property as "contraband" without implicating the Fifth Amendment is without merit. The statutes at issue in *Andrus v. Allard* classified newly acquired eagle feathers as forbidden contraband.  The Supreme Court warned of the takings implications of classifying the parts of birds lawfully acquired as contraband and requiring their dispossession. Cf. *Mitchell Arms, Inc. v. United States*, 7 F.3d 212 (Fed. Cir. 1993) (holding that no taking occurred when the Government revoked importer's assault weapon importation permits for "health and safety" reasons but stressed that the firearms importer still maintained the possession and use of the weapons); *see also A & D Auto Sales, Inc.* 748 F.3d at 1153 (quoting *United States v. Sec. Indus. Bank*, 459 U.S. 70, 82 (1982) (holding that while the "prospective application of such laws does not give rise to takings liability, retroactive application to existing property interests would raise 'difficult and sensitive questions' of a taking.").

of delegated legislative power from Congress and create new law. *Id.* at 17-18; *Gibson Wine Co. v. Snyder*, 194 F.2d 329, 331 (D.C. Cir. 1952). Legislative rules establish a new legal rule going forward, whereas interpretive rules reflect what the interpreted statute always meant. *Guedes*, 920 F.3d at 19.

The D.C. Circuit determined that the Final Rule was legislative by examining whether the ATF intended to speak with the force of law, as reflected by the language the agency used in the rule, the agency's specific invocation of its general legislative authority, and the inclusion of the rule in the Code of Federal Regulations. *Id. at 18.* The D.C. Circuit found that the Final Rule "unequivocally bespeaks an effort to adjust the legal rights and obligations of bump-stock owners, i.e., to act with the force of law." *Id.* The language of the Rule itself clearly indicates that bump-stocks will be prohibited only in the future when the Rule takes effect. *Id.* The Rule specifically invoked both its legislative authority delegated by Congress and the *Chevron* deference accorded only to legislative rules by the courts. *Id.* The ATF published the Final Rule in the Code of Federal Regulations. *Id.*

*Guedes* determined that the Final Rule was legislative despite the Government's efforts to recast the rule as interpretive, presumably to pre-empt takings claims like Plaintiff's. *Guedes* observed that if the Government's assertion that the Final Rule was an interpretive rule was correct, then bump-stocks would always have been illegal and any possessors would have always been felons. *Id.* That would also mean in this case that Plaintiff did not acquire any rights under Texas law in what would have been illegal contraband property. The D.C. Circuit,

however, noted that the Final Rule itself assured bump-stock owners that "[a]nyone currently in possession of a bump-stock-type device is not acting unlawfully unless they fail to relinquish or destroy their device after the effective date." *Id.* at 18.

This is what distinguishes Plaintiff's claim from *Akins v. United States*. The ATF reclassification of the Akins Accelerator, described in Defendant's motion (Mot. at 14) was an interpretive rule with retroactive effect. Unlike the Final Rule, it had no indicia of the agency's intention to exercise its legislative authority—e.g., it did not reference the ATF's delegated legislative authority or make a case for *Chevron* deference, and it was not published in the Code of Federal Regulations.

There are also real-world indications that ATF was acting in its retroactive interpretive capacity in *Akins* and in its prospective legislative rule-making capacity when it promulgated the Final Rule. The ATF's early determinations that the Akins device did not meet the definition of machinegun were made on the basis of design specifications and a non-functioning sample of the device. The determination was based only on the Accelerator's "theory of operation," which "was clear even though the rifle/stock assembly did not perform as intended." *See Akins v. United States*, 312 F. App'x 197, 198 (11th Cir. 2009). The subsequent determination that the Accelerator was a "machinegun" under the federal firearms statutes was the result of the ATF's obtaining and testing an Accelerator that did perform as intended. *Akins*, 82 Fed. Cl. at 621.

The Final Rule's change of heart about bump-stock devices, on the other hand, was unrelated to organic statutory interpretation or new technical

information about how bump-stock devices function. It was a political response. President Trump underscored the political nature of the Final Rule by reminding the public that "the Obama Administration repeatedly concluded that particular bump stock type devices were lawful to purchase and possess." The Final Rule was prompted by a change in policy, not by greater familiarity with bump-stocks. The Final Rule was obviously new legislation, not interpretation of statutory language.

As the Federal Circuit explained in *A & D Auto Sales, Inc. v. United States*, "[i]f a challenged restriction was enacted before the property interest was acquired, the restriction may be said to inhere in the title. If a challenged restriction was enacted after the plaintiff's property interest was acquired, it cannot be said to "inhere" in the plaintiff's title." 748 F.3d 1142, 1152 (Fed. Cir. 2014). The D.C. Circuit made unequivocally clear that the restriction on bump-stocks imposed by the Final Rule had not been enacted when Plaintiff acquired title in his bump-stocks under Texas law. *Akins* consequently has no bearing on Plaintiff's case.

Defendant cites to federal district court decisions rejecting takings claims brought in the wake of state bans on personal property. *See Maryland Shall Issue v. Hogan*, 353 F. Supp. 3d 400 (D. Md. 2018); *Roberts v. Bondi*, No. 8:18-cv-1062, 2018 WL 3997979 (M.D. Fla. Aug. 21, 2018); *Holliday Amusement Co. v. South Carolina*, 493 F. 3d 404 (4th Cir. 2007). It is questionable whether the analysis of a state's police powers is applicable to federal exercise of police powers, and the rulings of these courts are not binding on this Court. However, if the Court intends to consider the decisions of sister courts with respect to state laws to resolve Plaintiff's claim,

20

the Court should also consider the reasoning of the Southern District of California, leading to the conclusion that a California state law banning and dispossessing owners of their lawfully acquired large capacity gun magazines was a taking in violation of the Fifth Amendment. *Duncan v. Becerra*, 366 F. Supp. 3d 1131, 1184 (S.D. Ca. 2019). The Southern District of California characterized the California law as a "rare hybrid taking" in that it forces owners to choose between surrendering their property to law enforcement for destruction (effecting a *per se* taking), selling their magazines at a deeply discounted rate, or removing the magazines from the state. *Id.* The court in *Duncan* concluded that "[w]hatever might be the State's authority to ban the sale or use of magazines over 10 rounds, the Takings Clause prevents it from compelling the physical dispossession of such lawfully-acquired private property without compensation." *Id.*

### C.   Plaintiff's property was not taken subject to an *in rem* civil forfeiture proceeding or as evidence in a criminal prosecution.

The Government's tries to fashion a general "police powers" exemption from the Takings Clause by citing to a narrow category of government seizures of property that do not require compensation: the seizure of property to be used as evidence in a criminal prosecution and the seizure of property that is subject to an *in rem* civil forfeiture proceeding. The cases cited by the Government demonstrate that Plaintiff's claim has no relationship to either category.

In *Acadia Technology v. United States*, the Government took Acadia's property pursuant to its authority under the Lanham Act to seize imported goods suspected of bearing a counterfeit mark. 458 F.3d 1327, 1329 (Fed. Cir. 2006).

Plaintiff's bump-stocks were never suspected of being in violation of any statutory scheme when they were taken. Similarly, in *AmeriSource Corp. v. United States*, the Government seized prescription drugs sold by plaintiffs to a pharmacy whose principals were indicted for "conspiracy, unlawful distribution of prescription pharmaceuticals, operating an unregistered drug facility, and conspiracy to commit money laundering." 525 F.3d at 1150. The *AmeriSource* plaintiffs were not implicated in the indictment, but their property was implicated in the crimes. *Id.* In both cases, the property taken by the Government was *itself* implicated in unlawful activity, whereas neither Plaintiff nor his bump-stocks were implicated in any criminal scheme.[10] The Government did not seize the bump-stocks as evidence in a criminal investigation, nor were they the "suspected instrumentality of a crime." The Government simply required the surrender or destruction of lawfully obtained property as part of the state's resolution to strike a new balance between the right to bear arms and public perceptions of safety.

### D.   Plaintiff seeks compensation for tangible personal property.

The Government cites to two Federal Circuit cases in which plaintiffs brought takings claims by asserting a property interest in a business expectation that depended on the issuance of a government permit. Mot. at FN. 8. These cases have nothing to do with Plaintiff's claim for compensation for tangible personal

---

[10] In neither case was the plaintiff permanently deprived of its property. *See Kessler v. United States*, 229 Ct. Cl. 472, 474 (1981) ("For a compensable taking to occur, however, it is axiomatic that the Government must obtain more than mere *custodial possession*. Instead, the Government action must deprive the owner permanently of property.") (emphasis added).

property. In both *Mitchell Arms, Inc. v. United States*, 7 F.3d 212 (Fed. Cir. 1993) and *Allied-General Nuclear Services v. United States*, 839 F.2d 1572 (Fed. Cir. 1988), the Federal Circuit refused to find a taking under the Fifth Amendment for plaintiffs who complained that the government denied them an anticipated federal permit that was necessary to operate business operations importing semiautomatic rifles and recycling plutonium, respectively. Both courts held that such business expectancies are not property rights protected by the Fifth Amendment because Mitchell's business was subject to governmental regulation of firearms importation and Allied-General's business was subject to regulation of nuclear facilities. *Mitchell Arms*, 7 F.3d at 217. In other words, neither plaintiff ever had exclusive possession of the taken "property"; it always shared possession with the federal government. *Id.* at 215.  In the same vein, the Fifth Circuit concluded that a plaintiff could not sustain a Fifth Amendment claim based on the denial of a certificate of public necessity and convenience ("CPNC") to operate a taxicab because the certificate was not property at all, but a privilege or license extended by the city and subject to amendment or revocation by the power that issued it. *See Melancon, Inc. v. City of New Orleans*, 703 F. 3d 262, 273 (5th Cir. 2012). Obviously, the CPNC was valuable not as a tangible piece of paper but as license to pursue a business interest.

Plaintiff's claim does not flow from the denial of a government permit or license. Nor does Plaintiff claim a property interest in a business expectation. Plaintiff's claim is simpler. The Final Rule took tangible property from Plaintiff. These cases have no application to takings claims for a property interest in tangible

bump-stocks. In fact, the Federal Circuit even anticipated the game-changing distinction between Plaintiff's claim and *Mitchell Arms:*

> In revoking the permits, ATF withdrew its prior authorization for Mitchell to sell certain types of assault rifles in the United States. **Otherwise, Mitchell retained complete control over the rifles. Mitchell could have done anything it wished with the rifles, except import them into the United States in their original configuration. Put another way, ATF did not take the rifles.**

*Id.* at 217 (emphasis added). Unlike the plaintiffs in *Mitchell Arms,* Plaintiff retained no control over the bump-stocks. He had to abandon or destroy them.

*Mitchell Arms*, *Allied-General* and *Melancon* show that courts deem a certain type of property—business expectancies in highly regulated areas—to be unprotected by the Fifth Amendment because property owners always shared control of it with the government. Plaintiff's property was tangible and never shared with the government. The business expectation defense also played a role in the ruling in the *Akins v. United States*. As Defendant notes, the inventor of the Akins Accelerator was the plaintiff in that lawsuit. Mot. at 14. The Government notes that the court found that Akins' "expectation interest" in selling his device was not protected by the Fifth Amendment because of the long history of machine gun regulation. *Id.* The business expectancy framework is not relevant to Plaintiff's claim for compensation for their property interest in tangible bump-stocks.

The Government is striving to create a categorical defense to takings liability for any exercise of police power in the interests of public safety. That defense is applicable only in discrete circumstance, none of which apply to Plaintiff's claim. Unlike the Supreme Court's early regulatory decisions in *Mugler* and *Miller*,

Plaintiff's property was not merely diminished in value; it was physically taken outright. Unlike the legitimate seizure of contraband, the Final Rule converted lawfully acquired property into contraband and took it all in one fell swoop. Unlike the Federal Circuit's decisions in *Acadia* and *AmeriSource*, Plaintiff's property was not taken as part of the state's prosecution of a criminal statute—either as evidence of a crime or as the suspected instrumentality of a crime. Unlike *Mitchell Arms*, *Allied-General,* and *Akins*, Plaintiff is not asserting claims for a property interest in a business expectancy in the sale of bump-stocks. There is nothing about the physical taking exacted by the Government's exercise of its police powers in the Final Rule to remove it from the general proposition that the validity of an exercise of the state's police power is a question that is separate and apart from the takings analysis. *Loretto*, 458 U.S. at 425. Consequently, the Final Rule was a categorical physical taking requiring compensation.

## CONCLUSION

Allowing the Government to require the destruction or abandonment of bump-stocks without compensating citizens who lawfully purchased and possessed them under existing federal firearms statutes is not accordance with the mandate of the Fifth Amendment or Supreme Court precedents. Plaintiff respectfully asks the Court to deny the Government's motion to dismiss.


Dated:  <u>October 11, 2019</u>                Respectfully Submitted,


                                                        <u>/s/ *Adam M. Riley*</u>

25

Adam M. Riley (KY 97748)
Flint Law Firm, LLC
222 E. Park St., Suite 500
P.O. Box 189
Edwardsville, IL 62025
T: (618) 288-4777
F: (618) 288-2864
ariley@flintlaw.com

Sara E. Coopwood (TX 24077505)
Flint Law Firm, LLC
3838 Oak Lawn Avenue, Suite 1000
Dallas, Texas 75219
T: (618) 288-4777
F: (618) 288-2864
scoopwood@flintlaw.com

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on October 11, 2019, I caused a true and correct copy of the foregoing Response to Defendant's Motion to Dismiss and Brief In Support to be served by electronic filing on all counsel of record through the Court's CM/ECF system or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2) or the local rules.


By:     /s/ *Adam M. Riley*
        Adam M. Riley