UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

_____

BRIAN P. LANE, Individually and,
on behalf of all others similarly situated

    Plaintiff,

v.

THE UNITED STATES

    Defendant.

Case No. 3:19-cv-01492-X

## **DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS**

| | |
|---|---|
| JOSEPH H. HUNT<br>Assistant Attorney General | ERIN NEALY COX<br>United States Attorney |
| LESLEY FARBY<br>Assistant Branch Director | Brian W. Stoltz<br>Assistant United States Attorney<br>Texas Bar No. 24060668 |
| MATTHEW J. GLOVER<br>Counsel to the Assistant Attorney General | 1100 Commerce Street, Third Floor<br>Dallas, TX 75242-1699<br>Telephone: (214) 659-8626 |
| ERIC J. SOSKIN (PA Bar #200663)<br>Senior Trial Counsel<br>U.S. Department of Justice<br>Civil Division, Rm. 12002<br>1100 L Street, NW<br>Washington, D.C. 20530<br>Telephone: (202) 353-0533<br>Fax: (202) 616-8470<br>Email: Eric.Soskin@usdoj.gov | Fax: (214) 659-8807<br>Email: brian.stoltz@usdoj.gov |

*Attorneys for Defendant*

# INTRODUCTION

The Final Rule at issue in this case properly recognizes that "bump stocks" constitute machine guns, for which the new manufacture and sale to the public has been prohibited for more than three decades. *See Bump-Stock-Type Devices*, 83 Fed. Reg. 66514 (Dec. 26, 2018) ("Final Rule"). As Defendant explained in its opening brief, machine guns are therefore contraband items, the criminal prohibition of which is not a compensable taking for which compensation is required. A long line of precedent thereby forecloses any takings claim when the Government exercises its police powers to ban contraband, as Defendant has done here.

Plaintiffs mistakenly seek to characterize the Final Rule as a physical taking under *Horne v. Department of Agriculture*, 135 S. Ct. 2419 (2015), or to cabin the police powers doctrine in a way that is contrary to precedent. These arguments are meritless, and have recently been rejected by the Court of Federal Claims in parallel cases concerning the Final Rule. That court, in *McCutchen v. United States*, rejected identical arguments and instead confirmed that "banning the possession of . . . weapons and requiring their owners to divest themselves of such tools of war is the paradigmatic example of the exercise of the government's police power, which defeats any entitlement to compensation under the Takings Clause." *McCutchen*, --- Fed. Cl. ---, 2019 WL 4619754, at *8 (Fed. Cl. Sept. 23, 2019); *see also Modern Sportsman, LLC v. United States*, 2019 WL 5418055 (Fed. Cl. Oct. 23, 2019) (same). This Court should reach the same result.

# ARGUMENT

A.  **The Exercise Of Police Powers To Prohibit Contraband Does Not Give Rise To A Compensable Taking.**

   1.  **The Government May Use Its Police Powers To Engage In Uncompensated Prohibitions Of Firearms And Other Weapons.**

The Government is not required to pay compensation under the Takings Clause for

"government actions taken to enforce prohibitions on the use or possession of dangerous contraband, or to require the forfeiture of property used in connection with criminal activity." *McCutchen*, 2019 WL 4619574 at *7. "It is clear that not every destruction or injury to property by governmental action has been held to be a 'taking' in the constitutional sense." *Price v. City of Junction, Tex.*, 711 F.2d 582, 591 (5th Cir. 1983) (citation omitted). This principle provides for the "preferment of [the public] interest over the property interest of the individual, to the extent even of its destruction." *Miller v. Schoene*, 276 U.S. 272, 280 (1928). Were the rule otherwise, then any effort by the Government to prohibit "the use of property for purposes" that injure "the health, morals, or safety of the community" could be "deemed a taking," *Mugler v. Kansas*, 123 U.S. 623, 668 (1887), to the detriment of public health, safety, and the public fisc. *See Modern Sportsman*, 2019 WL 5418055, at *5 ("The 'government hardly could go on if to some extent values incident to property could not be diminished without paying for every such change in the general law.'") (quoting *Penn. Coal Co. v. Mahon*, 260 U.S. 393, 414 (1922)).

Significantly, Plaintiff has identified only a single case in which a court awarded relief for a takings claim stemming from a weapons prohibition: a district court opinion holding that a California law "forc[ing] owners of large capacity magazines to surrender them to a law enforcement agency for destruction" constituted a taking requiring compensation. *Duncan v. Becerra*, 366 F. Supp. 3d 1131, 1184-85 (S.D. Cal. 2019), *on appeal*, No. 19-55376 (9th Cir.); *see* ECF No. 15 at 16 ("Opp. Br."). Plaintiff neglects to mention, however, that a different district court reached the opposite result with regard to the same California law, *see Wiese v. Becerra*, 306 F. Supp. 3d 1190, 1198 (E.D. Cal. 2018),[1] and that the Third Circuit also rejected a

---

[1] After the Ninth Circuit upheld a preliminary injunction entered in *Duncan*, *see* 742 Fed. App'x 218 (9th Cir. 2018), the district court in *Wiese* permitted plaintiffs to amend their complaint and then denied a renewed motion to dismiss as to, *inter alia*, the takings claims due to the

2

Takings Clause claim with regard to a similar magazine ban.  *See Ass'n of N.J. Rifle & Pistol Clubs v. Att'y Gen. of N.J.*, 910 F.3d 106, 124 (3d Cir. 2018).  Moreover, any persuasive relevance of *Duncan* is limited by the fact that bump stocks, as a type of contraband machine gun, pose a greater threat to public safety than the firearm magazines at issue there, and a ban on bump stocks is thus far closer to the core of the police power than the law at issue in *Duncan*.

### 2. The Government Is Not Limited To Total Deprivations Of Property When It Exercises Its Police Power Authority.

Plaintiff claims that *Mugler*, *Miller*, and other cases on which Defendant relies can be disregarded because the plaintiffs in those cases "retained possession of their property" and "still had the privilege of using" it.  Opp. Br. at 16 (contrasting cases with Final Rule's requirement that bump stocks be abandoned or destroyed).  But the Supreme Court has suggested there is no distinction in the "legitimate exercise of [the] police powers" between a regulation that diminishes the value of property and a regulation that "render[s] [personal] property economically worthless."  *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1027-28 (1992).  Prior cases concerning bans on bump stocks have likewise made no distinction, finding no compensable taking regardless of whether the plaintiff retained possession of the device.  *See Akins v. United States*, 82 Fed. Cl. 619, 623 (Fed. Cl. 2008) ("As ATF was acting pursuant to the police power . . . [the] complaint fails to state a compensable takings claim" where plaintiff was required only to disable a part of the bump stock); *McCutchen*, 2019 WL 4619574 at * 7 ("[I]t is well established that there is no taking . . . where [the government] criminalizes or otherwise outlaws the use or possession of property that presents any danger to the public health and safety.").  Indeed, because the most dangerous items will typically be prohibited outright rather

---

affirmance of the grant of preliminary relief in *Duncan*. *See Wiese v. Becerra*, 2019 WL 918212 (E.D. Cal. Feb. 25, 2019).

than merely restricted in their use, there would be no logic to giving the police power exception to compensable takings less force in such circumstances.

### 3. The Government's Previous Classification Letters Regarding Bump Stocks Are Irrelevant To The Exercise Of The Police Power To Ban Bump Stocks.

Plaintiff also asserts an entitlement to compensation on the theory that the Final Rule's prohibition on bump stocks "was not a prohibition on contraband" at all. Opp. Br. at 17. Plaintiff's theory appears to be that bump stocks could previously be owned lawfully, and that an item for which possession is "newly criminalized" does not fall within the police power doctrine. *Id.* As explained below, both premises of this argument are faulty.[2]

First, Plaintiff is incorrect in his assumption that "bump-stocks were not contraband" until the "Final Rule converted them into contraband." Opp. Br. at 17. To the contrary, the Final Rule was issued to "clarify that bumpstock-type devices . . . are 'machineguns' as defined by the National Firearms Act of 1934 and the Gun Control Act of 1968 because such devices allow a shooter of a semiautomatic firearm to initiate a continuous firing cycle with a single pull of the trigger." Final Rule, 83 Fed. Reg. 66514. The Final Rule simply states the proper interpretation of the statute, which has long required that machine guns be treated as contraband if manufactured after the effective date of the statutory ban on new machine guns. Moreover, the Final Rule explains that "ATF's earlier classifications" of some bump stocks as unregulated devices "relied on [a] mistaken premise, requiring that the Government "reconsider and rectify" those decisions as "classification errors." Final Rule, 83 Fed. Reg. 66531. These discussions

---

[2] Plaintiff's argument also improperly seeks to rely on ATF's prior classification letters as support for his view that bump stocks could previously be owned lawfully. As described in the Government's opening brief, ATF has long made clear that its "classifications are subject to change if later determined to be erroneous," see Mot. at 24 (quoting ATF, National Firearms Handbook § 7.2.4 (2009)), meaning that even the recipients of the letters themselves cannot treat the letters as permanently authoritative.

4

illustrate that, because bump stocks fall within the definition of machinegun in 18 U.S.C. § 922(o), Plaintiff cannot rely on their supposed previous lawfulness to support his claims.

Plaintiff errs in contending that the D.C. Circuit's characterization of the Final Rule as legislative supports his contention that the government's classification of bump stocks as contraband machine guns necessarily gives rise to a compensable taking.[3]  *See* Opp. Br. at 17-19 (citing *Guedes v. ATF*, 920 F.3d 1 (D.C. Cir. 2019).  "The rationale of the police powers doctrine is that it is improper to burden the government's power to prohibit the use of property in a manner that endangers public safety."  *McCutchen*, 2019 WL 4619754, at *9.  This rationale "applies regardless of whether the property . . . present[ing] a danger to public health and safety was once lawfully held," and therefore, the prior lawful possession is irrelevant.  *Id.*  Indeed, as one district court explained in rejecting a takings claim arising from a state ban on bump stocks, "[p]ractically all products later defined as contraband were not contraband before the enactment of the law that named them as such."  *Md. Shall Issue v. Hogan*, 353 F. Supp. 3d 400 (D. Md. 2018); *see also Modern Sportsman*, 2019 WL 5418055 at *1 (noting that "[t]hough the Court is highly receptive to plaintiffs' fairness arguments," those have no relevance to the takings claim in light of *Mahon*).

This principle forms the backdrop of virtually every case in which actions under the police power have been recognized as falling outside the scope of the Takings Clause.  For example, in *Mugler*, it made no difference to the outcome that malt liquor had previously been lawful in the State of Kansas: the state's prohibition on liquor did not effect a compensable taking.  Likewise, in *Miller*, there was nothing unlawful about the property owner's use of his

---

[3] The Government disagrees with the reasoning of *Guedes* with respect to its conclusion that the Final Rule was legislative in nature, but not the D.C. Circuit's holding affirming the Final Rule against Administrative Procedure Act challenge.

land to grow red cedar trees prior to the State's order mandating that the trees be destroyed. And in *Andrus v. Allard*, the Supreme Court upheld a regulatory restriction on the sale of eagle feathers that applied even to items lawfully acquired prior to the restriction. 444 U.S. 51, 55-56 (1979). In doing so, the Court reversed a lower-court opinion which had found "grave doubts" in the constitutionality of a prohibition "construed to apply to" eagle feathers that had previously been acquired lawfully. *Id.* (quoting *Allard v. Andrus*, No. 75-W-1000, 9 Env't L. Rep. 20787 (D. Colo. 1979) (3-judge panel)).[4] The Court thereby rejected the same distinction Plaintiff urges this Court to rely on here.

Plaintiff contends that his focus on whether bump stocks were previously lawful is warranted by language in *A & D Auto Sales, Inc. v. United States*, a Federal Circuit decision concerning the termination of auto dealer franchise agreements as part of the Government's efforts to restructure bankrupt automakers. *See* Opp. Br. at 20 (quoting *A & D Auto Sales*, 748 F.3d 1142, 1152 (Fed. Cir. 2014)). A correct reading of *A & D Auto Sales*, however, refutes Plaintiff's position. There, the Federal Circuit explicitly recognized that "background principles of law may inhere in a plaintiff's title to his property and thereby limit his ability to recover for a taking," and the question was only whether the Government's ability to "requir[e] dealer terminations as a condition of financial assistance" fell within such "background principles." *A&D Auto Sales*, 748 F.3d at 1152-53. The Federal Circuit concluded that there would be "no compensable property interest" in the "bankruptcy court's approval of the terminations," because such authority had long been recognized to exist in bankruptcy courts and therefore "inhered" in

---

[4] Plaintiff's attempt to characterize the takings decision in *Akins* as relying upon the distinction between a legislative and interpretive rule is misguided. *See* Opp. Br. at 19. Nothing in the *Akins* decision places legal significance on that distinction. *See generally* 82 Fed. Cl. 619.

the auto dealers' property interests.⁵  *Id.* at 1153.  Because the background principle here is that contraband such as dangerous weapons *may* be prohibited without giving rise to a compensable taking, the Government's actions here are comparable to those which the Federal Circuit concluded did *not* offend a "compensable property interest."  *Id.*

**B.       The Final Rule Did Not Effect A *Per Se* Taking Requiring Compensation.**

The Government's opening brief explained that the "categorical duty under the Fifth Amendment to pay just compensation" for a *per se* taking, as recognized in *Horne v. USDA*, 135 S. Ct. 2419, 2425-26 (2015), has no application here.  The Government noted that *Horne* did not in any way address the "police power" limitation on compensable takings.  *See generally id.*  Further, the Government demonstrated that *Horne*'s analysis turned on the fact that the Government's seizures of raisins at issue in that case involved the "actual taking of possession [of the raisins]. . . for the Government's control and use."  Mot. at 19 (quoting *Horne*, 135 S. Ct. at 2428); *accord McCutchen*, 2019 WL 4619754, at * 9 (explaining that, in *Horne*, "the Court held [the government] had effected a per se physical taking" because it "took title to and then directly appropriated the raisins for its own use").  In contrast to the historical authorities cited in *Horne* and described in the Government's opening brief—such as the seizure of private munitions stocks or gold reserves for official use—the Final Rule envisions the destruction of all bump stocks, including those abandoned by their previous possessors at governmental offices.

Plaintiff's mistaken argument that the Final Rule nevertheless operates as a *per se* taking relies on the theory that an order to destroy personal property is "the functional equivalent of a practical ouster of the owner's possession," and thus falls within the "categorical duty" described

---

⁵ The Federal Circuit did permit the auto dealers' takings claims to proceed, noting that the Government's "condition of financial assistance to the automakers" was not a pre-existing legal requirement which inhered in the property. 748 F.3d at 1153.

in *Horne*.  Opp. Br. at 10 (quoting *Katzin v. United States*, 908 F.3d 1350, 1361 (Fed. Cir. 2018)); *see also* Opp. Br. at 8-9.  However, the language cited by Plaintiff does not stem from cases about personal property, but instead, from a holding that the Government's "physical[] diver[sion] of water for its own consumptive use" involves such a "practical ouster" by preventing a downstream user from ever coming into possession of the water in the first place. *Washoe Cnty., Nev. v. United States*, 319 F.3d 1320, 1326 (Fed. Cir. 2003) (citing *Dugan v. Rank*, 372 U.S. 609, 625-26 (1963); *Int'l Paper Co. v. U.S.*, 282 U.S. 399, 407-08 (1931)).[6]

Nor is the inference that Plaintiff seeks to draw from *Horne*'s silence on the police power a persuasive one.  In Plaintiff's view, the fact that *Horne* did not discuss the Government's police power requires reading *Horne* broadly, and therefore treating as a *per se* taking any circumstance where a law, regulation, or other government action "takes your car, . . . , your home," or a dangerous weapon like a bump stock, "without regard" to whether such action is pursuant to the police power.  Opp. Br. at 8-9 (quoting *Horne*, 135 S. Ct. at 2426, 2428).  As Defendant's opening brief explained, however, Plaintiff's proposed inference is improper because the Supreme Court may not be assumed to have "overrule[d] a prior holding without explicitly doing so."  *United States v. Hager*, 879 F.3d 550, 555 (5th Cir. 2018); *see* Mot. at 19.

Finally, in contending that the Supreme Court has "rejected the notion" that Government use of seized personal property is a requirement of a compensable taking, Plaintiff misapprehends the import of that discussion in *Horne*.  *See* Opp. Br. at 10-12.  Plaintiff is correct that the Supreme Court has held, as to *real property*, that "destruction for public purposes" is

---

[6] Although the Federal Circuit has applied a *per se* takings analysis to certain personal property, *see Rose Acre Farms, Inc. v. United States*, 373 F.3d 1177, 1196-98 (Fed. Cir. 2004) (eggs); *Maritrans Inc. v. United States*, 342 F.3d 1344, 1353-55 (Fed. Cir. 2003) (oil tankers), none of these cases involved dangerous contraband of the sort at issue here, and the Supreme Court has never awarded compensation under *Lucas* to the owners of personal property.

sufficient to constitute a taking. *Id.* at 11 (quoting *United States v. Welch*, 217 U.S. 333, 339 (1910), and citing *United States v. Gen. Motors Corp.*, 323 U.S. 373, 378 (1945)). But the discussion in *Horne* itself of the taking of livestock and other necessaries for military use in the 18th century, the appropriation of private gold stocks, and the seizure of garbage attests to the scope of what has historically been recognized as a taking of personal property and thus, the limits of what *Horne* recognizes as a *per se* taking. *See* Mot. at 18-19 & n.11.

C. **Plaintiff Has Not Satisfied The *Penn Central* Standing For A Regulatory Taking.**

Plaintiff continues to maintain that the Final Rule "was obviously a physical taking," so the Court need not engage in a regulatory taking analysis under *Penn Central Transportation Co. v. New York City*, 438 U.S. 104 (1978). Plaintiff is correct that no regulatory takings analysis is needed,[7] but wrong that such analysis would conclude that a regulatory taking had occurred.

Plaintiff's discussion of *Penn Central* relies primarily on the claim that a *per se* takings analysis drawn from *Horne* and *Lucas* has supplanted the multi-factor approach for regulatory takings under *Penn Central*. *See* Opp. Br. at 12. As explained above, however, the Final Rule is not a *per se* taking. Further, as set forth in Defendant's opening brief, courts in the Fifth Circuit continue to apply the multi-factor approach set forth in *Penn Central*, and not a *per se* takings analysis, to regulatory takings claims. *See* Mot. at 22 (citing, *e.g.*, *Degan v. Trustees of Dallas Police & Fire Pension Sys.*, No. 17-cv-01596-N, 2018 WL 4026373 (N.D. Tex. Mar. 14, 2018)).

Nor is it true that the strict restrictions on private ownership of machine guns are irrelevant to the *Penn Central* analysis, as Plaintiff suggests. *See* Opp. Br. at 13-14. Plaintiff contends that his ownership of bump stocks was personal, rather than commercial in nature, rendering irrelevant the expectations that business ventures may have in fields with a "high

---

[7] As explained in the Government's opening brief, the Complaint explicitly pleads a physical takings claim and *not* a *Penn Central* regulatory takings claim. *See* Mot. at 21 & n.13.

9

control over commercial dealings." *Lucas*, 505 U.S. at 1027-28; *see* Opp. Br. at 22-24. However, because the second *Penn Central* factor is "the extent to which the regulation has interfered with distinct investment-backed expectations," *Lingle v. Chevron, U.S.A.*, 544 U.S. 528, 538-39 (2005), the same logic regarding heavily-regulated industries applies regardless of whether possession is for personal or commercial purposes. As numerous cases in the context of dangerous weapons have made clear, such expectations are necessarily diminished by the longstanding history of federal regulation of firearms and other dangerous weapons—regulations that apply not only to "commercial dealings" in arms, but to the personal possession of arms as well. *See, e.g.*, 18 U.S.C. § 922(o) (barring *possession* of machine guns, with limited exceptions for grandfathered machine guns and governmental use); 18 U.S.C. § 922(p) (barring *possession* of certain "undetectable" firearms); *Mitchell Arms, Inc. v. U.S.*, 7 F.3d 212, 216 (Fed. Cir. 1993) ("enforceable rights sufficient to support a taking claim against the United States cannot arise" if the activity is in an area "subject to pervasive Government control").[8] Thus, as in *McCutchen*, Plaintiff's "allegations are insufficient to establish a regulatory taking upon consideration of the character of the government's actions and the extent to which the rule interferes with reasonable investment-backed expectations." 2019 WL 4619754, at *11.

## CONCLUSION

For the foregoing reasons, and those set forth in the Government's opening brief, the Court should dismiss Plaintiff's complaint.

Respectfully submitted,

Dated:  October 25, 2019               ERIN NEALY COX
                                        United States Attorney

---

[8] Plaintiff has not separately addressed the "character" and "economic impact" factors under *Penn Central*, so the Government rests on its prior briefing as to these issues. *See* Mot. at 23, 25.

JOSEPH H. HUNT
Assistant Attorney General

LESLEY FARBY
Assistant Branch Director

MATTHEW J. GLOVER
Counsel to the Assistant Attorney General

  /s/ *Eric J. Soskin*
ERIC J. SOSKIN (PA Bar #200663)
Senior Trial Counsel
U.S. Department of Justice
Civil Division, Rm. 12002
1100 L Street, NW
Washington, D.C. 20530
Telephone: (202) 353-0533
Fax: (202) 616-8470
Email: Eric.Soskin@usdoj.gov

Brian W. Stoltz
Assistant United States Attorney
Texas Bar No. 24060668
1100 Commerce Street, Third Floor
Dallas, TX 75242-1699
Telephone: (214) 659-8626
Fax: (214) 659-8807
Email: brian.stoltz@usdoj.gov

*Attorneys for Defendant*

## **CERTIFICATE OF SERVICE**

On October 25, 2019, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2) or the local rules.

      /s/ Eric J. Soskin
Eric J. Soskin