UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BRIAN P. LANE, Individually and on behalf of all others similarly situated, | § § § § | |
| Plaintiff, | § § | Civil Action No. 3:19-CV-01492-X |
| v. | § § | |
| THE UNITED STATES, | § § | |
| Defendant. | § § | |

## MEMORANDUM OPINION AND ORDER

Bump stocks allow semi-automatic rifles to fire at a rate close to machine guns. In December 2018, the Bureau of Alcohol, Tobacco, Firearms and Explosives issued a final rule determining that bump stocks qualify as prohibited machine guns under federal law and required their destruction or surrender. Brian Lane lawfully purchased three bump stocks before the rule took effect and raises a Fifth Amendment challenge that the federal government must compensate him for taking his property. The federal government responds that the rule falls under a valid use of the police power, which requires no compensation. But as explained below, the federal government forgot the Tenth Amendment and the structure of the Constitution itself. It is concerning that the federal government believes it swallowed the states whole. Assuming the federal government didn't abolish the states to take their police power, the Court **DENIES** the motion to dismiss **WITHOUT PREJUDICE**. The Court will allow the federal government to try again and explain

which enumerated power justifies the federal regulation and whether it allows a taking without compensation. The Court requests that the federal government also address any limits on that federal power and the Court's proper role in examining the validity of the underlying rule when determining if there was a compensable taking.[1]

I. Factual Background

Back in the 1930s, Congress decided to regulate Chicago gangsters and their weapons of choice (machine guns) and passed the National Firearms Act of 1934.[2] That law required persons selling or owning firearms (including machine guns) to register with the Collector of Internal Revenue.[3] Then Congress passed the Firearm Owners Protection Act in 1986, which made it "unlawful for any person to transfer or possess a machinegun" that wasn't lawfully possessed before the Act took effect in 1986.[4] Federal law, as amended by the 1986 change, defines a machinegun as:

> any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts

---

[1] Under § 205(a)(5) of the E-Government Act of 2002 and the definition of "written opinion" adopted by the Judicial Conference of the United States, this is a "written opinion[] issued by the court" because it "sets forth a reasoned explanation for [the] court's decision." It has been written, however, primarily for the parties, to decide issues presented in this case, and not for publication in an official reporter, and should be understood accordingly.

[2] *Friedman v. City of Highland Park, Illinois*, 784 F.3d 406, 408 (7th Cir. 2015) ("During Prohibition the Thompson submachine gun (the "Tommy gun") was all too common in Chicago, but that popularity didn't give it a constitutional immunity from the federal prohibition enacted in 1934.").

[3] *See* 26 U.S.C. ch. 53.

[4] 18 U.S.C. § 922(o)(2).

from which a machinegun can be assembled if such parts are in the possession or under the control of a person.[5]

The Attorney General is responsible for enforcing those laws and has delegated that responsibility (subject to the direction of the Attorney General and Deputy Attorney General) to the director of the Bureau of Alcohol, Tobacco, Firearms and Explosives (Bureau).[6]

Enter agency decision making. Florida entrepreneur William Akins asked the Bureau in 2002 and again in 2004 whether his version of a bump stock (the Akins Accelerator) would be classified as a machine gun.[7] The Bureau tested the device and concluded it was not a machine gun.[8] But the Bureau received later requests to test similar devices and reversed its view on the Akins Accelerator.[9] The agency focused on the fact that the Akins Accelerator uses "an internal spring" along with "the force

---

[5] 26 U.S.C. § 5845(b).

[6] *See* 18 U.S.C. § 926(a); 26 U.S.C. §§ 7801(a)(2)(A), 7805(a); 28 U.S.C. § 599A(b)(1); 28 C.F.R. § 0.130(a)(1)–(2). The Bureau is a law enforcement agency within the Department of Justice. *About the Bureau of Alcohol, Tobacco, Firearms and Explosives*, https://www.atf.gov/ (last visited Mar. 17, 2020). The Court takes issue with the lack of an Oxford comma after "Firearms" in the Bureau's name. Oxford commas add clarity and cost nothing. For example, can the Bureau regulate firearms independently from explosives, or does the lack of a comma in between those two words indicate they can only be regulated when found together? These and others are big problems tiny commas can solve.

[7] *Akins v. United States*, 312 F. App'x 197, 198 (11th Cir. 2009) (per curiam). Notably, this persuasive but non-binding opinion gives scant details in its justification for its holding of how machine guns and semi-automatic firearms work. For the purposes of this case, though, the Court is confident that the parties will help the Court understand the concrete meaning of relevant terms. This is especially important if, as explained below, the legal doctrine for this case requires an assessment of the validity of the final rule. Such materials as technical manuals will help the parties accurately inform the Court as to how machine guns and semi-automatics technically work, particularly their trigger functions. These manuals should also allow the parties to inform the Court as to how in comparison a bump stock or slide-fire device affects, or does not affect, the sear (or any other part) in a semi-automatic firearm such that the bolt moves freely back and forth, like in a machine gun, without subsequent iterations of a "function of the trigger."

[8] *Id.*

[9] *Id.* at 199.

of recoil to reposition and re-fire the rifle."[10]  Thus, the Bureau classified the device as a machine gun and required Akins to register or surrender them.[11]  When Akins sued, the Bureau won in federal district court and the Eleventh Circuit.[12]  Separately, the Court of Federal Claims concluded the classification of the Akins Accelerator as a machine gun did not give rise to a compensable taking.[13]

But not all bump stocks have springs.  Between 2008 and 2017, the Bureau classified bump stocks without springs as not machine guns.[14]  These devices were instead treated as unregulated firearm accessories.  During that time, the Department of Justice estimates 520,000 bump stocks were sold at an estimated average of $301 each.[15]

On October 1, 2017, a gunman opened fire from a Las Vegas hotel window on a crowd attending a music festival.  He killed 58 people and wounded over 400 more using weapons with bump stocks.

---

[10] *Id.*  This resulted in Bureau Decision ATF Rul. 2006-2 (Dec. 13, 2006), *at* https://www.atf.gov/firearms/docs/ruling/2006-2-classification-devices-exclusively-designed-increase-rate-fire/download (holding that a device like the Akins accelerator consisting of a coiled spring and other components "that is designed to attach to a firearm and, when activated by a single pull of the trigger, initiates an automatic firing cycle that continues until either the finger is released or the ammunition supply is exhausted, is a machinegun under the National Firearms Act").

[11] *Akins*, 312 F. App'x at 199.

[12] *Id.* at 198.

[13] *Akins v. United States*, 82 Fed. Cl. 619 (2008).

[14] Bump-Stock-Type Devices, 83 Fed. Reg. 66514, 66517 (Dec. 26, 2018) (to be codified at pts. 447, 478–79).

[15] *Id.* at 66538.

In December 2017, the Department of Justice published an advance notice of proposed rulemaking on whether bump stocks are machine guns.[16] In February 2018, the President instructed the Attorney General to work within established legal protocols "to dedicate all available resources to complete the review of the comments received [in response to the advance notice of proposed rulemaking], and, as expeditiously as possible, to propose for notice and comment a rule banning all devices that turn legal weapons into machineguns."[17] In March 2018, the Department published a notice of proposed rulemaking that proposed clarifying the interpretations of "single function of the trigger" and "automatically" in the statutory definition of "machinegun" in a manner consistent with the classification of bump stocks as machine guns.[18] The Department published the final rule in December 2018, determining that bump stocks are machine guns.[19] The final rule concluded that current possessors of bump stocks must either destroy them or surrender them to a Bureau office within 90 days.[20]

---

[16] Application of the Definition of Machinegun to "Bump Fire" Stocks and Other Similar Devices, 82 Fed. Reg. 60929 (proposed Dec. 26, 2017) (to be codified at 27 C.F.R. pts. 478–79).

[17] Application of the Definition of Machinegun to "Bump Fire" Stocks and Other Similar Devices, 83 Fed. Reg. 7949 (Feb. 23, 2018).

[18] Bump-Stock-Type Devices, 83 Fed. Reg. 13442–43 (proposed Mar. 29, 2018) (to be codified at 27 C.F.R. pts. 447, 478–79).

[19] Bump-Stock-Type Devices, 83 Fed. Reg. 66514, 66516, 66531.

[20] *Id.* at 66530, 66549.

Before the rule took effect, a number of plaintiffs challenged the validity of the rule—largely under the Administrative Procedure Act.[21] These cases involved courts denying preliminary injunctive relief because of the plaintiffs' inability to demonstrate a likelihood of prevailing on the merits.[22] Takings was an issue in one case, where the plaintiff argued the rule should be invalidated because there was a lack of compensation for bump stock owners.[23] The federal district court did not assess whether the takings claim would prevail on the merits because equitable relief is inappropriate for one who may bring a takings claim later.[24] The Court of Appeals for the District of Columbia agreed,[25] and the Supreme Court denied cert in that preliminary posture.

Separately, other plaintiffs brought three actions in the Court of Federal Claims to recover just compensation for bump stocks they destroyed or surrendered in accordance with the final rule.[26] Motions to dismiss are pending in all three cases.

---

[21] *See, e.g.*, *Guedes v. Bureau of Alcohol, Tobacco, Firearms and Explosives*, 356 F. Supp. 3d 109 (D.D.C. 2019), *aff'd* 920 F.3d 1 (D.C. Cir. 2019) (per curiam); *Gun Owners of Am., Inc. v. Barr*, 363 F. Supp. 3d 823 (W.D. Mich. 2019), on appeal, No. 19-1298 (6th Cir.).

[22] *See Guedes*, 920 F.3d at 16–7; *Gun Owners of America*, No. 19-1298, 2019 WL 1395502 at *1–2 (6th Cir. Mar. 25, 2019); *Aposhian v. Barr*, 374 F. Supp. 3d 1145 (D. Utah 2019), on appeal, No. 19-4036 (10th Cir.).

[23] *Guedes*, 356 F. Supp. 3d at 137. The underlying case was *Codrea v. Barr*, No. 18-cv-3086 (D.D.C.), which the court consolidated with *Guedes*.

[24] *Id.*

[25] *Guedes v. Bureau of Alcohol, Tobacco, Firearms and Explosives*, 920 F.3d 1 (2019), *cert. denied* 140 S.Ct. 789 (2020).

[26] *See Rouse v. United States*, 18-cv-1980 (Fed. Cl.); *Modern Sportsman, LLC v. United States*, 19-cv-449 (Fed. Cl.); *McCutchen v. United States*, 18-cv-1965 (Fed. Cl.).

Two of the cases, *Rouse* and *McCutchen*, have class allegations, but there are no motions for class certification because they are only at the dismissal stage.

Lane filed this purported class action in June 2019, claiming the federal government owes him (and all others similarly situated) for the three bump stocks he purchased when they were legal. The government moved to dismiss, and that motion is now ripe.

## II. Motion to Dismiss Standard

Under Federal Rule of Civil Procedure 12(b)(6), the Court evaluates the pleadings by "accept[ing] 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"[27] To survive a motion to dismiss, Lane must allege enough facts "to state a claim to relief that is plausible on its face."[28] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[29] "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."[30] "[W]here the well-pleaded facts do not permit the court to infer more than the mere

---

[27] *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)).

[28] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[29] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[30] *Id.*; *see also Twombly*, 550 U.S. at 545 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]").

possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"[31]

### III. Application

Takings law is difficult. On the one hand, the Takings Clause of the Fifth Amendment seems as broad as it is clear: private property shall not "be taken for public use, without just compensation."[32] This protects individuals who have an investment-backed expectation in private property that government takes and applies to public use. A physical (or *per se*) taking occurs when the state "absolutely dispossess[es] the owner of property."[33]

State government often uses its police power—the power to protect the health and safety of its people—to seize contraband. For example, state governments have determined that cocaine should be illegal because of the danger it poses to the health and safety of the people. When states first made this decision, did they owe drug lords fair market value for these now-prohibited drugs? No. The Supreme Court of the United States has concluded that when a state government declares the

---

[31] *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

[32] U.S. CONST. amend. V.

[33] *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 435 n.12 (1982); *see also Horne v. Dep't of Agric.*, __ U.S. __, 135 S. Ct. 2419, 2427 (2015) (differentiating *per se* takings from regulatory takings by stating that even after creating the regulatory takings framework, the Supreme Court has still "reaffirmed the rule that a physical *appropriation* of property gave rise to a *per se* taking, without regard to other factors" (emphasis in original)).

8

possession of something to be illegal due to health and safety concerns, the state exercises its police power and it is not a compensable taking.[34]

In *Mugler v. Kansas*,[35] the Court first addressed this topic at length. The Court explained that its interpretation of the Takings Clause excludes a

> prohibition simply upon the use of property for purposes that are declared, by valid legislation, to be injurious to the health, morals, or safety of the community, cannot, in any just sense, be deemed a taking or an appropriation of property for the public benefit. . . . The power which the states have of prohibiting such use by individuals of their property, as will be prejudicial to the health, the morals, or the safety of the public, is not, and, consistently with the existence and safety of organized society, cannot be, burdened with the condition that the state must compensate such individual owners for pecuniary losses they may sustain, by reason of their not being permitted, by a noxious use of their property, to inflict injury upon the community. The exercise of the police power by the destruction of property which is itself a public nuisance, or the prohibition of its use in a particular way, whereby its value becomes depreciated, is very different from taking property for public use, or from depriving a person of his property without due process of law. In the one case, a nuisance only is abated; in the other, unoffending property is taken away from an innocent owner.[36]

But even with a power as broad as the police power, the Court admonished that there are limits, and a state waving around the talisman of the police power was not a free pass. The Court explained in *Lawton v. Steele*[37] that:

> the state may interfere wherever the public interests demand it, and in this particular a large discretion is necessarily vested in the legislature to determine, not only what the interests of the public require, but what measures are necessary for the protection of such interests. To justify

---

[34] Such exercises "of the police power . . . [are] treated as legitimate even in the absence of compensation to the owners of the . . . property." *Acadia Tech., Inc. v. United States*, 458 F.3d 1327, 1332–33 (Fed. Cir. 2006).

[35] 123 U.S. 623 (1887).

[36] *Id.* at 668–69.

[37] 152 U.S. 133 (1894).

9

the state in thus interposing its authority in behalf of the public, it must appear—First, that the interests of the public generally, as distinguished from those of a particular class, require such interference; and, second, that the means are reasonably necessary for the accomplishment of the purpose, and not unduly oppressive upon individuals. The legislature may not, under the guise of protecting the public interests, arbitrarily interfere with private business, or impose unusual and unnecessary restrictions upon lawful occupations; in other words, its determination as to what is a proper exercise of its police powers is not final or conclusive, but is subject to the supervision of the courts.[38]

The federal government here raised the talisman of police power 31 times in its motion to dismiss and an additional 19 times in its reply. This seemed unusual to the Court because the Court had thought the police power is a power reserved for the states, not for the federal government. Fearful the Court was wrong, it turned to the first place one should always turn to with such questions: the Constitution. Article I, section 8 enumerates the powers the People gave to the federal government at our Nation's founding: the tax power, the borrowing power, the commerce power, the naturalization power, the bankruptcy power, the power to coin money, the postal power, the maritime power, and the war power.[39] None of these powers is the police power.

Then the Court re-read the Tenth Amendment: "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."[40] Of course, this did not alter the grant

---

[38] *Id.* at 136–37 (citations omitted).

[39] U.S. CONST. art. I, § 8.

[40] U.S. CONST. amend. X.

10

of limited, enumerated powers to federal government. It just reaffirmed it. In *United States v. Darby*,[41] the Supreme Court said as much:

> The amendment states but a truism that all is retained which has not been surrendered. There is nothing in the history of its adoption to suggest that it was more than declaratory of the relationship between the national and state governments as it had been established by the Constitution before the amendment or that its purpose was other than to allay fears that the new national government might seek to exercise powers not granted, and that the states might not be able to exercise fully their reserved powers.[42]

Given that the text and structure of the Constitution yield no indication the federal government has the police power that it asserts, the Court then turned to binding case law. In 1995, the Supreme Court in *United States v. Lopez*[43] observed that the Constitution withheld "from Congress a plenary police power."[44] Confused that the United States would base their case on a power the Supreme Court told the United States in *Lopez* that it didn't have, the Court continued its search in case the Supreme Court later changed its mind after *Lopez*. In 2000, the Supreme Court in *United States v. Morrison*[45] reiterated that the police power was a power "which the Founders denied the National Government and reposed in the States."[46] Again, the United States as a party was told it lacked the power it advances here. But *Morrison* wasn't even the most recent time the Court reminded the United States it has no

---

[41] 312 U.S. 100 (1941).

[42] *Id.* at 124.

[43] 514 U.S. 549 (1995).

[44] *Id.* at 566 (citing Article I, section 8).

[45] 529 U.S. 598 (2000).

[46] *Id.* at 618.

11

police power. In *National Federation of Independent Business v. Sebelius*,[47] the Court explained in greater detail:

> The States thus can and do perform many of the vital functions of modern government—punishing street crime, running public schools, and zoning property for development, to name but a few—even though the Constitution's text does not authorize any government to do so. Our cases refer to this general power of governing, possessed by the States but not by the Federal Government, as the "police power." . . . Because the police power is controlled by 50 different States instead of one national sovereign, the facets of governing that touch on citizens' daily lives are normally administered by smaller governments closer to the governed.[48]

So, not even the Supreme Court has rewritten the Constitution to give a plenary police power to the federal government.

Perhaps there is one more place, where the collective will and knowledge of the people is expressed, that might indicate if the federal government has seized the police power from the states: ~~the Constitution~~ Wikipedia.[49] But strangely, even Wikipedia has overruled neither the Constitution nor the Supreme Court:

> In United States constitutional law, police power is the capacity of the *states* to regulate behavior and enforce order within their territory for the betterment of the health, safety, morals, and general welfare of their inhabitants. . . . Under the Tenth Amendment to the United States Constitution, the powers not delegated to the Federal Government are reserved to the *states* or to the people. This implies that the Federal Government does not possess all possible powers, because most of these

---

[47] 567 U.S. 519 (2012).

[48] *Id.* at 535–36.

[49] *C.f.* Fed. R. Evid. 201(b).

12

are reserved to the *State governments,* and others are reserved to the people.[50]

Rather than deny the federal government's motion to dismiss outright, the Court will allow it an opportunity to file a new motion to dismiss, based on the limited enumerated powers the federal government has (as confirmed by the Constitution, the Supreme Court, and even Wikipedia). If the federal government opts for the commerce power, it should discuss the limitations in *Lopez* and *Morrison*. Also, the federal government should be prepared to address whether the validity of the final rule is an issue under the proper judicial framework for assessing the taking.[51]

For example, the Supreme Court would examine a state legislature's invocation of the police power and whether it was legitimate when considering a state law as a compensable taking.[52] Here, does the Court need to assess whether the final rule is a correct interpretation of Congress's ban on machine guns in deciding whether there was a compensable taking?

## IV. Conclusion

Because the power at the heart of the federal government's motion to dismiss is not a power the federal government possesses, the Court **DENIES WITHOUT PREJUDICE** the motion to dismiss. But the Court will allow the federal government

---

[50] *Police power (United States constitutional law)*, WIKIPEDIA, *at* https://en.wikipedia.org/wiki/Police_power_(United_States_constitutional_law) (last visited Mar. 26, 2020) (emphases added).

[51] If validity is an issue, the Government is further encouraged to dive into the technical aspects of the statutory text and the real things it applies to: firearms. Technically correct is the best kind of correct, and this case seems to require a technical understanding to get the law right.

[52] *See Lawton*, 152 U.S. at 136–37 (collecting cases holding invocations of the police power were invalid).

to file, within 28 days of this Order, a new motion to dismiss based on a power it does possess.

**IT IS SO ORDERED** this 30th day of March, 2020.

_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE