UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION
_____

| | |
|---|---|
| BRIAN P. LANE, Individually and, on behalf of all others similarly situated <br><br> Plaintiff, <br><br> v. <br><br> THE UNITED STATES <br><br> Defendant. | Case No. 3:19-cv-01492-X <br><br> **ORAL ARGUMENT REQUESTED** |

## <u>DEFENDANT'S RENEWED MOTION TO DISMISS</u> <u>AND BRIEF IN SUPPORT</u>

JOSEPH H. HUNT
Assistant Attorney General

LESLEY FARBY
Assistant Branch Director

MATTHEW J. GLOVER
Counsel to the Assistant Attorney General

ERIC J. SOSKIN (PA Bar #200663)
Senior Trial Counsel
U.S. Department of Justice
Civil Division, Rm. 12002
1100 L Street, NW
Washington, D.C. 20530
Telephone: (202) 353-0533
Fax: (202) 616-8470
Email: Eric.Soskin@usdoj.gov

ERIN NEALY COX
United States Attorney

Brian W. Stoltz
Assistant United States Attorney
Texas Bar No. 24060668
1100 Commerce Street, Third Floor
Dallas, TX 75242-1699
Telephone: (214) 659-8626
Fax: (214) 659-8807
Email: brian.stoltz@usdoj.gov

*Attorneys for Defendant*

## TABLE OF CONTENTS

I.      Introduction ................................................................................................ 1

II.     Background.................................................................................................. 2

        A.      Machine Guns Are Contraband, The Ownership Of Which Has Been
                Prohibited Through the Exercise of Commerce Clause Authority . ............ 2

        B.      The Past Treatment of Bump Stocks Classsified Some as Prohibited
                Machine Guns and Others ass Unregulated Firearms Parts. ...................... 5

        C.      The Rule Clarified That Bump Stocks Fall Within The
                Statutory Definition of Machine Gun............................................... 6

        D.      Other Litigation Arising From The Rule........................................... 8

        E.      The Instant Action. ................................................................... 10

III.    Arguments And Authorities In Support ................................................ 11

        A.      Legal Standard For A Motion To Dismiss Under Rule 12(b)(6). .............. 11

        B.      The Prohibition On Bump Stock Possession is an Exercise of the Police
                Power Pursuant to Congress's Authority to Regulate Interstate Commerce,
                and Does Not Give Rise to a Compensable Taking. ................................. 11

                1.      Exercises of the Police Power Do Not Require Compensation as
                        Takings. . ........................................................................... 11

                2.      The Exercise of the Federal Government's Enumerated Powers to
                        Promote Public Safety Qualifies for the "Police Power" Exception.... 12

                3.      The Federal Prohibition on Machine Guns, Including Bump Stocks, is
                        Within the Federal Authority to Regulate Interstate Commerce.......... 17

                4.      Plaintiff's Takings Claims Do Not Turn on the Validity of the Rule. . 18

i

C.    The Ban on Bump Stocks Does Not Constitute A *Per Se* Taking For Which Compensation Is Required Under *Horne v. Dep't of Agriculture*. .................................................. 19

D.    Under The Regulatory Takings Principles Supplied By *Penn Central*, No Compensable Regulatory Taking Has Occurred. .......... 21

IV.   Conclusion ............................................................................................... 25

# TABLE OF AUTHORITIES

## Cases

*Acadia Tech., Inc. v. United States*,
    458 F.3d 1327 (Fed. Cir. 2006) ................................................................. 1, 12, 14, 18

*Akins v. United States*,
    82 Fed. Cl. 619 (2008) ......................................................................................... 6, 15

*Akins v. United States*,
    312 F. App'x 197 (11th Cir. 2009) .................................................................... 5, 6, 25

*Allied-General Nuclear Services v. United States*,
    839 F.2d 1572 (Fed Cir. 1988) ............................................................................ 13, 14

*AmeriSource Corp. v. United States*,
    525 F.3d 1149 (Fed. Cir. 2008) ........................................................................... 14, 17

*Andrus v. Allard*,
    444 U.S. 51 (1979) ........................................................................................ 12, 13, 16

*Aposhian v. Barr*,
    374 F. Supp. 3d 1145 (D. Utah 2019) ........................................................................ 8

*Archbold-Garrett v. New Orleans City*,
    893 F.3d 318 (5th Cir. 2018) ................................................................................... 16

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................................ 11

*B & F Trawlers, Inc. v. United States*,
    27 Fed. Cl. 299 (Fed. Cl. 1992) ............................................................................... 14

*Bachmann v. United States*,
    134 Fed. Cl. 694 (Fed. Cl. 2017) ............................................................................. 14

*Barnes v. United States*,
    122 Fed. Cl. 581 (Fed. Cl. 2015) ............................................................................. 14

*Branch v. United States*,
    69 F.3d 1571 (Fed. Cir. 1995) ................................................................................. 24

*Brooks v. United States*,
    267 U.S. 432 (1925) ............................................................................................... 4, 5

iii

*Building Owners & Managers Ass'n v. FCC*,
   254 F.3d 89 (D.C. Cir. 2001) ........................................................................... 9

*Buttrey v. United States*,
   690 F.2d 1170 (5th Cir. 1982) ........................................................................ 18

*Chi. Burlington & Quincy Ry. Co. v. Illinois*,
   200 U.S. 561 (1906) ........................................................................................ 9

*Commonwealth v. Alger*,
   61 Mass. 53 (1851) ........................................................................................ 13

*Da Vinci Inv., L.P. v. City of Arlington, Tex.*,
   747 F. App'x. 223 (5th Cir. 2018) ................................................................. 22

*Degan v. Bd. of Trustees of Dallas Police & Fire Pension Sys.*,
   No. 17-cv-01596-N, 2018 WL 4026373 (N.D. Tex. Mar. 14, 2018) .................... 22, 23

*Dennis Melancon, Inc. v. City of New Orleans*,
   703 F.3d 262 (5th Cir. 2012) ......................................................................... 24

*F.J. Vollmer Co., Inc. v. Higgins*,
   23 F.3d 448 (D.C. Cir. 1994) ........................................................................ 4, 5

*Fla. Rock Indus., Inc. v. United States*,
   18 F.3d 1560 (Fed. Cir. 1994) ....................................................................... 4, 5

*Friedman v. City of Highland Park, Ill.*,
   784 F.3d 406 (7th Cir. 2015) ........................................................................... 2

*Gardner v. Michigan*,
   26 S. Ct. 106 (1905) ...................................................................................... 20

*German Alliance Ins. Co. v. Barnes*,
   189 F. 769 (Kan. 1st Cir. 1911) ..................................................................... 13

*Gonzales v. Raich*,
   545 U.S. 1 (2005) ........................................................................................... 18

*Guedes et al. v. ATF*,
   356 F. Supp. 3d 109 (D.D.C. 2019),
   *aff'd* 920 F.3d 1 (D.C. Cir. 2019), *cert denied* 140 S. Ct. 789 (2020) ................. 8, 9

*Gun Owners of America, Inc., et al. v. Barr, et al.*,
   363 F. Supp. 3d 823 (W.D. Mich. 2019) .......................................................... 8

*Gun Owners of America, Inc. et al. v. Barr, et al.*,
  No. 19-1298, 2019 WL 1395502 (6th Cir. Mar. 25, 2019); ............................................ 8

*Gun South, Inc. v. Brady*,
  877 F.2d 858 (11th Cir. 1989) ..................................................................................... 23

*Holliday Amusement Co. of Charleston, Inc. v. South Carolina*,
  493 F.3d 404 (4th Cir. 2007) ........................................................................... 16, 17, 18

*Hollis v. Lynch*,
  112 F. Supp. 3d 617 (N.D. Tex. 2015), *aff'd* 827 F.3d 436 (5th Cir. 2016) ................ 17

*Horne v. U.S. Dep't of Agriculture*,
  135 S. Ct. 2419 (2015) .................................................................................... 19, 20, 22

*Illinois Bell Telephone Co. v. FCC*,
  988 F.2d 1254 (D.C. Cir. 1993) .................................................................................... 12

*In re Katrina Canal Breaches Litig.*,
  495 F.3d 191 (5th Cir. 2007) ........................................................................................ 11

*Jackson v. United States*,
  143 Fed. Cl. 242 (Fed. Cl. 2019) ................................................................................. 18

*Jim Sowell Const. Co. v. City of Coppell, Tex.*,
  No. 3:96-CV-0666-D, 2000 WL 968782 (N.D. Tex. July 12, 2000) ............................ 18

*John Corp. v. City of Houston*,
  214 F.3d 573 (5th Cir. 2000) ................................................................................. 16, 17

*Kam-Almaz v. United States*,
  682 F.3d 1364 (Fed. Cir. 2012) ................................................................................... 14

*Keystone Bituminous Coal Ass'n v. DeBenedictis*,
  480 U.S. 470 (1987) ..................................................................................................... 23

*Kipperman v. McCone*,
  422 F. Supp. 860 (N.D. Cal. 1976) .............................................................................. 17

*Lamont v. O'Neill*,
  285 F.3d 9 (D.C. Cir. 2002) ........................................................................................ 2-3

*Lingle v. Chevron, U.S.A.*,
  544 U.S. 528 (2005) ............................................................................................... 22, 23

*Lucas v. S.C. Coastal Council,*
  505 U.S. 1003 (1992)..................................................................... 12, 13, 22, 25

*Maryland Shall Issue v. Hogan,*
  353 F. Supp. 3d 400 (D. Md. 2018)........................................................ 15, 18

*McCutchen v. United States,*
  145 Fed. Cl. 42 (Fed. Cl. 2019) ............................................................... 9, 16

*Miller v. Schoene,*
  276 U.S. 272 (1928).......................................................................................... 20

*Mitchell Arms, Inc. v. U.S.,*
  7 F.3d 212, 216 (Fed. Cir. 1993) ........................................................................ 24

*Modern Sportman, LLC v. United States,*
  145 Fed. Cl. 575 (Fed. Cl. 2019) ..................................................... 9, 16, 17

*Mugler v. Kansas,*
  123 U.S. 623 (1887)................................................................................. 12, 13, 16

*Murr v. Wisconsin,*
  137 S. Ct. 1933 (2017)..................................................................................... 12, 14

*New York Pizzeria, Inc. v. Syal,*
  56 F. Supp. 3d 875 (S.D. Tex. 2014) ............................................................... 11

*Nortz v. United States,*
  294 U.S. 317 (1935)............................................................................................. 20

*One 1958 Plymouth Sedan v. Pennsylvania,*
  380 U.S. 693 (1965)............................................................................................. 14

*Osamor v. United States,*
  No. 4:09-cv-1500, 2010 WL 11668149 (S.D. Tex. Nov. 5, 2010)................................ 15

*Penn Central Transportation Co. v. City of New York,*
  438 U.S. 104 (1978)....................................................................... 10, 21-23, 25

*Penn. Coal Co. v. Mahon,*
  260 U.S. 393 (1922)............................................................................... 14, 18, 22

*Price v. City of Junction, Tex.,*
  711 F.2d 582 (5th Cir. 1983) ........................................................................... 12

vi

*Queta's Investment, Inc. v. City of Hidalgo*,
No. M-04-272, 2005 WL 2416656 (S.D. Tex. Sept. 30, 2005) .................................... 16

*Residents Against Flooding v. Reinvestment Zone No. 17, Houston, Tex.*,
260 F. Supp. 3d 738 (S.D. Tex. 2017) .......................................................................... 16

*Roberts v. Bondi*,
No. 8:18-cv-1062, 2018 WL 3997979 (M.D. Fla. Aug. 21, 2018) ........................ 15, 16

*Ruckelshaus v. Monsanto*,
467 U.S. 986 (1984) ........................................................................................................ 9

*Sig Sauer, Inc. v. Brandon*,
826 F.3d 598 (1st Cir. 2016) ........................................................................................... 5

*Spell v. Edwards*,
No. 12-cv-796, 2013 WL 5232341 (E.D. La. Sept. 13, 2013) ................................. 13-14

*Tabb Lakes v. United States*,
451 F.3d 1071 (9th Cir. 2006) ...................................................................................... 18

*Tahoe–Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*,
535 U.S. 302 (2002) ...................................................................................................... 12

*United States v. $7,990.00 in U.S. Currency*,
170 F.3d 843 (8th Cir. 1999) ........................................................................................ 14

*United States v. Gilbert*,
No. CR05-71 MJP, 2016 WL 11588376 (W.D. Wash. Feb. 26, 2016) ........................ 14

*United States v. Hager*,
879 F.3d 550 (5th Cir. 2018) ........................................................................................ 19

*United States v. Hamilton*,
57 F. App'x. 211 (5th Cir. 2003) ............................................................................... 2, 14

*United States v. Haney*,
264 F.3d 1161 (10th Cir. 2001) ...................................................................................... 4

*United States v. Kenney*,
91 F.3d 884 (7th Cir. 1996) .......................................................................................... 17

*United States v. Lopez*,
514 U.S. 549 (1995) ................................................................................................. 17, 18

vii

*United States v. Morrison*,
   529 U.S. 598 (2000) ........................................................................................... 18

*United States v. Stewart*,
   451 F.3d 1071 (9th Cir. 2006) ......................................................................... 17

*Wilkerson v. Whitley*,
   28 F.3d 498 (5th Cir. 1994) ............................................................................... 19

<u>Constitution and Statutes</u>

United States Constitution, Art. I § 8 ................................................................. 2

United States Constitution, amend. V. .............................................................. 11

5 U.S.C. § 701 *et seq.* ........................................................................................... 9

18 U.S.C. § 921 ..................................................................................................... 3

18 U.S.C. § 921(a)(23) ......................................................................................... 4

18 U.S.C. § 922(o) .......................................................................................*passim*

18 U.S.C. § 922(o)(1) .......................................................................................... 4

18 U.S.C. § 922(o)(2) .......................................................................................... 4

18 U.S.C. § 926(a) ........................................................................................... 4, 6

26 U.S.C. 5845(b) ................................................................................................ 7

26 U.S.C. chap. 53 ............................................................................................... 3

26 U.S.C. § 5822 ................................................................................................. 3

26 U.S.C. § 5841(c) ............................................................................................. 3

26 U.S.C. § 5845 ................................................................................................. 2

26 U.S.C. § 5845(b) .......................................................................................... 4, 5

26 U.S.C. § 7801(a)(2)(A) ................................................................................ 4, 6

26 U.S.C. § 7805(a) .......................................................................................... 4, 6

28 U.S.C. § 599A .............................................................................................. 4, 5

Firearm Owners Protection Act ("FOPA"), Pub. L. 99-308,
 100 Stat. 449 (1986).................................................................................2, 3, 4, 15

Gun Control Act ("GCA"), Pub. L. 90-618, 82 Stat. 1214 (1968)..................................2, 3

Omnibus Crime Control & Safe Streets Act, Pub. L. No. 90-351,
 82 Stat. 197 (1968) ...................................................................................................3

Internal Revenue Code of 1939 (1939) ................................................................................3

An Act to Regulate Commerce in Firearms, Pub. L. No. 785,
 52 Stat. 1250 (1938) .................................................................................................3

National Firearms Act of 1934 ("NFA"), Pub. L. 73-474, 48 Stat. 1236 (1934)...............2

## Other Authorities

Fed. R. Civ. P. 12(b)(6) .....................................................................................................11

28 C.F.R. § 0.130(a)(1)-(2) ..................................................................................................5

*Application of the Definition of Machinegun to "Bump Fire" Stocks and
 Other Similar Devices*, 82 Fed. Reg. 60929 (Dec. 26, 2017) .........................................6

*Definition of Machinegun*, 83 Fed. Reg. 7949 (Feb. 20, 2018)...........................................7

*Bump-Stock-Type Devices*, 83 Fed. Reg. 13442 (Mar. 29, 2018) .......................................7

*Bump-Stock-Type Devices*, 83 Fed. Reg. 66514 (Dec. 26, 2018) ("Rule")...............*passim*

H.R. Rep. No. 83-1337, § 548, *reprinted in* 1954 U.S.C.C.A.N. 4017...............................3

H.R. Rep. No. 99-495, at 1, (1986), *reprinted in* 1986 U.S.C.C.A.N. 1327 .....................4

S. Rep. No. 89-1866, at 1, (1966), *reprinted in* 1986 U.S.C.C.A.N. 1327 .......................3

ATF Ruling 2006-2 ................................................................................................................6

ATF, National Firearms Act Handbook ......................................................................5, 25

ATF, *Bump Stock Destruction Instructions*........................................................................21

St. George Tucker, 1 Blackstone's Commentaries, Editor's App. (1803) .......................20

*The Firearms Owners' Protection Act: A Historical and Legal Perspective*,
 17 Cumb. L. Rev. 585 (1987) ...........................................................................................4

## I.     Introduction

In 1986, relying on its constitutional authority to "regulate Commerce . . . among the several States," Congress enacted a prohibition on the manufacture and possession of machine guns, codified in 18 U.S.C. § 922(o).  A December 2018 final rule issued by the Department of Justice, through its component, the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), provides that "bump stocks"—firearms attachments that render a previously semi-automatic weapon capable of automatic fire—fall within Section 922(o)'s Commerce Clause-based prohibition on machine guns.  *See Bump-Stock-Type Devices*, 83 Fed. Reg. ("FR") 66514 (Dec. 26, 2018) ("Rule").  Plaintiff contends that, by issuing the rule, ATF and the Department of Justice (collectively, "DOJ") have carried out a "compensable taking."  Complaint ¶ 8, ECF No. 1 ("Compl.").  However, when the federal government exercises its enumerated powers in order to protect public safety, it is exercising the same type of power wielded by States in the exercise of their plenary police power, and the seizure or destruction of contraband weapons to protect public safety "is the kind of exercise of the police power that has repeatedly been treated as legitimate even in the absence of compensation to the owners."  *Acadia Tech., Inc. v. United States*, 458 F.3d 1327, 1332-33 (Fed. Cir. 2006).  And other indicia confirm that the Rule does not effect a compensable taking, including: (1) the Rule mandates the destruction of bump stocks, not their physical surrender; (2) DOJ has not seized these weapons for use by the Government, the public, or other private persons; and (3) owners of prohibited machine guns lack investment-backed expectations in the continued possession of such weapons.

## II.    Background

### A.    Machine Guns Are Contraband, the Ownership of Which Has Been Prohibited Through the Exercise of Commerce Clause Authority.

Since 1934, Congress has regulated machine guns pursuant to its taxing and commerce authorities, *see* U.S. Const. art. I § 8. 18 U.S.C. § 922(o) makes it "unlawful for any person to transfer or possess a machinegun,"[1] with limited exceptions for those machine guns lawfully possessed prior to the effective date of the statute and those possessed under the authority of a governmental entity.  Congress adopted this prohibition as part of the Firearm Owners Protection Act ("FOPA"), Pub. L. 99-308, 100 Stat. 449 (1986), which, in amending the Gun Control Act of 1968 ("GCA"), Pub. L. 90-618, 82 Stat. 1214 (Oct. 22, 1968), continued the earlier statute's regulation of machine guns pursuant to Congress's power to regulate interstate commerce.  These laws, together with the National Firearms Act of 1934 ("NFA"), Pub. L. No. 73-474, 48 Stat. 1236 (June 26, 1934), codified at 26 U.S.C. Chapter 53, have over time transformed the role of machine guns in American society from being "the weapon of choice among gangsters in Chicago" in the 1920s to being obvious "contraband" under federal law.  *Compare Friedman v. City of Highland Pk. Ill.*, 784 F.3d 406, 416 (7th Cir. 2015) (Manion, J., dissenting) *with U.S. v. Hamilton*, 57 F. App'x 211 (5th Cir. 2003) (per curiam).

Under the NFA, Congress relied on its taxation authority, imposing various taxes, and registration requirements to facilitate collection of those taxes, on the manufacture and

---

[1] As in Defendant's first motion to dismiss, ECF No. 9, Defendant will use the ordinary spelling of "machine gun" as two words, except where directly quoting the statute or derivative interpretations.

possession of machine guns.  *See* 26 U.S.C. chap. 53.  For this reason, the NFA became codified in the Internal Revenue Code ("IRC").  *See* IRC, 26 U.S.C. §§ 2720-2733 (1939). The NFA imposed various registration requirements and taxes on the manufacture and possession of machine guns.  By enacting the NFA, Congress exercised its taxation power to regulate and thereby to protect the public from "lethal weapons . . . [that] could be used readily and efficiently by criminals or gangsters."  H.R. Rep. No. 83-1337, § 548, *reprinted in* 1954 U.S.C.C.A.N. 4017, 4542.

In 1938, Congress drew on its authority to "regulate Commerce . . . among the several States," U.S. Const. art. I, § 8, to extend its regulation of firearms, including over the licensing of dealers and by restricting the acquisition of firearms by fugitives and those convicted of violent crimes.  *See* An Act to Regulate Commerce in Firearms, 52 Stat. 1250 (1938) ("1938 Act").  The 1968 GCA continued to rely on Congress's enumerated power over interstate commerce, repealing the 1938 Act and implementing new provisions of law to "provide for better control of the interstate traffic in firearms."  82 Stat. 1214 (preamble to GCA).  Congress intended the GCA to "regulate more effectively interstate commerce in firearms" to reduce crime and misuse and "help combat . . . the incidence of serious crime."  *See* 18 U.S.C. § 921 *et seq.*; S. Rep. No. 89-1866, at 1 (1966).  The GCA followed on the heels of other federal legislation that stressed Congress's findings of an extensive interstate commerce in firearms and a need for adequate federal control over such traffic. *See* Omnibus Crime Control & Safe Streets Act, Pub. L. No. 90-351, 82 Stat. 197 (1968).

In adopting the FOPA in 1986, Congress continued to rely on the interstate commerce authority undergirding the GCA.  The FOPA served multiple purposes:

Congress intended the statute both to protect the rights of law-abiding firearms owners as well as to provide "more effective protection of law enforcement officers from [continued] proliferation of machine guns." H.R. Rep. No. 99-495, at 4, 7 (1986). Congress thus froze the privately-held inventory of machine guns by making it "unlawful for any person to transfer or possess a machinegun," other than:

> (A) a transfer to or by, or possession by or under the authority of, the United States or any department or agency thereof or a State, or a department, agency, or political subdivision thereof; or

> (B) any lawful transfer or lawful possession of a machinegun that was lawfully possessed before the date this subsection takes effect.

18 U.S.C. § 922(o)(2). The FOPA and GCA define the term "machinegun" by incorporating the NFA's definition of the term. *See* 18 U.S.C. § 921(a)(23). As amended by the GCA and the FOPA, the NFA defines a "machinegun" as:

> any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.

26 U.S.C. § 5845(b); *F.J. Vollmer & Co. v. Higgins*, 23 F.3d 448, 449 (D.C. Cir. 1994).

Congress and the Attorney General have conferred on ATF the responsibility for investigating and enforcing criminal and regulatory violations of Federal firearms law as well as the authority to promulgate regulations necessary to enforce the provisions of the GCA and NFA. *See* 18 U.S.C. § 926(a); 26 U.S.C. §§ 7801(a)(2)(A), 7805(a); 28 U.S.C. §

599A(b)(1); 28 C.F.R. § 0.130(a)(1)-(2).[2]  The Rule is an exercise of this authority to interpret the GCA's prohibition on machine guns in interstate commerce and the definition of these weapons derived from the NFA.

### B.     The Past Treatment of Bump Stocks Classified Some as Prohibited Machine Guns and Others as Unregulated Firearms Parts.

ATF permits manufacturers and owners to request the agency's view regarding the correct classification of a firearm, accessory, or other item, and in response, the agency may provide a classification letter indicating its current position on a particular device, including whether an item is a machine gun.  *See* ATF, National Firearms Act Handbook § 7.2.4 (2009).  Nothing in federal law requires a firearms manufacturer or owner to seek such a classification letter, however, and such classifications are subject to change.  *Id.*; *see Sig Sauer, Inc. v. Brandon*, 826 F.3d 598, 599-600 (1st Cir. 2016).

In the early 2000s, ATF examined whether one model of bump stock, the "Akins Accelerator," should be classified as a machine gun under the NFA.  *Akins v. United States*, 312 F. App'x 197, 198 (11th Cir. 2009) (per curiam).  ATF first concluded it did not satisfy the statutory definition, then subsequently reversed its view, reclassifying the device as a machine gun and ordering the inventor "to register the devices he possessed or to surrender them."  *Id.* at 198-99.  Both the district court and the Eleventh Circuit Court of Appeals upheld ATF's determination.  *Id*. at 198.  In a separate action, the device's inventor sought compensation for the purported taking of his property; however, the Court of Federal Claims concluded that ATF's determination did not give rise to a compensable taking

---

[2] With respect to ATF's authority to regulate firearms apart from explosives, *see* Mem. Op. at 3 n.6, 28 U.S.C. § 599A provides that an Oxford comma is part of the agency's name.

because ATF "was acting pursuant to the police power conferred on it by Congress." *Akins v. United States*, 82 Fed. Cl. 619, 623 (2008).

ATF subsequently received classification requests for other bump-stock devices that differed in design from the Akins Accelerator, principally by omitting the "internal spring" on which the Akins Accelerator relied to use "the force of recoil to reposition and refire the rifle." *Akins*, 312 F. App'x 198.  Applying a 2006 policy statement, ATF concluded that many bump stocks were not machine guns because they lacked a spring, and that these bump stocks could therefore be sold as unregulated firearms accessories.  83 FR 66517; *see* ATF Ruling 2006-2.  DOJ has estimated that manufacturers sold at least 520,000 bump stocks at an estimated average price of approximately $300.  *See* 83 FR 66538.

### C.  The Rule Clarified That Bump Stocks Fall Within The Statutory Definition of Machine Gun.

After bump stocks were used by the perpetrator of an October 2017 attack on a concert in Las Vegas, public attention became focused on whether bump stocks had been properly classified, leading DOJ to revisit that issue, as well as its prior analysis of the terms used to define machine gun in 26 U.S.C. 5845(b).  *See* 83 FR 66516-17.  As an initial step, DOJ published an advance notice of proposed rulemaking ("ANPRM").  *See Application of the Definition of Machinegun to "Bump Fire" Stocks and Other Similar Devices*, 82 FR 60929 (Dec. 26, 2017); 18 U.S.C. § 926(a); 26 U.S.C. §§ 7801(a)(2)(A), 7805(a); 28 U.S.C. § 599A(b)(1).  This ANPRM yielded over 115,000 comments.  *See* https://go.usa.gov/xvW9Q (last visited Apr. 27, 2020).

On February 20, 2018, the President issued a memorandum to the Attorney General

6

concerning bump stocks.  *See Definition of Machinegun*, 83 FR 7949 (Feb. 20, 2018).  The memorandum instructed DOJ, working within established legal protocols, "to dedicate all available resources to complete the review of the comments received [in response to the ANPRM], and, as expeditiously as possible, to propose for notice and comment a rule banning all devices that turn legal weapons into machineguns."  *Id.*  Carrying out that directive, on March 29, 2018, DOJ published an NPRM, proposing to clarify the interpretations of the terms "single function of the trigger" and "automatically" in the statutory definition of "machinegun" to clarify that bump stocks are classified as machine guns.  *See Bump-Stock-Type Devices*, 83 FR 13442 (Mar. 29, 2018).

Between the publication of the NPRM and the closing date for comments, June 27, 2018, DOJ received over 186,000 comments on the NPRM, spanning a wide range of views on issues raised by the proposed rule, including comments regarding whether implementation of the proposed rule would violate the Takings Clause.  *See* 83 FR 66519, 66523.   DOJ then drafted the Rule, addressing the comments raised, including by explaining that "classifying bump-stock-type devices as machineguns . . . does not have the nature of a taking" because it is an "exercise of those police powers which are necessary to . . . [a] well-ordered community."  *Id.* at 66523 (quoting *Chi. Burlington & Quincy Ry. Co. v. Illinois*, 200 U.S. 561, 594 (1906)), and that when "the federal government . . . engage[s], pursuant to one or more of its enumerated powers, in activities not unlike those engaged in by the states under their inherent sovereign powers to protect the public welfare," such activities are the exercise of a "police power" component of the enumerated power.  83 FR 66524 (cleaned up); *see generally id.* at 66519-43.  The Rule was published

7

in the Federal Register on December 26, 2018.  *See id.* at 66514.

In the Rule, DOJ clarified for members of the public that bump stocks are machine guns and overruled the prior, erroneous classification decisions treating bump stocks as unregulated firearms parts.  *See* 83 FR 66516, 66531 (explaining that "the previous classification[s] . . . relied on the mistaken premise that . . . such devices do not enable 'automatic' firing") (citation omitted).  DOJ also instructed "current possessors" of bump stocks "to undertake destruction of the devices" or to "abandon [them] at the nearest ATF office."  *Id.* at 66549.  The Rule explained that DOJ would not take enforcement action for 90 days (beginning on December 26, 2018), to give possessors of bump stocks time to destroy the devices or to abandon them at the nearest ATF office.  *Id.* at 66530, 66549.

**D.    Other Litigation Arising from the Rule.**

During the 90-day period before enforcement of the bump stock ban, an array of plaintiffs challenged the Rule in venues around the country, seeking to enjoin the Rule from taking effect.  *See, e.g.*, *Guedes et al. v. ATF*, 356 F. Supp. 3d 109 (D.D.C. 2019), *aff'd* 920 F.3d 1 (D.C. Cir. 2019) (per curiam), *cert. denied* 140 S. Ct. 789 (Mar. 2, 2020); *Gun Owners of America, Inc.* ("*GOA*") *et al. v. Barr, et al.*, 363 F. Supp. 3d 823 (W.D. Mich. 2019), *on appeal,* No. 19-1298 (6th Cir.).  These plaintiffs raised numerous legal challenges to the Rule, primarily under the Administrative Procedure Act, 5 U.S.C. § 701 *et seq*.  Courts uniformly denied preliminary injunctive relief upon determining that the plaintiffs failed to demonstrate a likelihood of success on the merits.  *See Guedes*, 920 F.3d at 1; *GOA v. Barr,* No. 19-1298, 2019 WL 1395502 at *1 (6th Cir. Mar. 25, 2019); *Aposhian v. Barr*, 374 F. Supp. 3d 1145 (D. Utah 2019).  Appeals continue in these cases.

*See Aposhian v. Barr, et al.* No. 19-4036 (10th Cir.); *GOA v. Barr*, No. 19-1298 (6th Cir.).

Only one of the judicial opinions at the preliminary-relief stage addressed a takings claim. In *Codrea v. Barr*, No. 18-cv-3086 (D.D.C.) (consolidated with *Guedes, et al. v. ATF et al.*, No. 18-cv-2988 (D.D.C.)), plaintiffs asserted that the Rule should be invalidated due to the lack of compensation for lawful owners of bump stocks. *See Guedes*, 356 F. Supp. 3d at 137. The district court declined to assess the likelihood of success on the claim, instead observing that "equitable relief is not available to enjoin an alleged taking of private property for a public use . . . when a suit for compensation can be brought" later. *Id.* (citation omitted); *see also Building Owners & Managers Ass'n v. FCC*, 254 F.3d 89, 101 (D.C. Cir. 2001) (Randolph, J., concurring) ("There is no constitutional necessity for payment [in a takings case] to be made in advance"). Because plaintiffs had "made no showing that a suit for compensation under the Tucker Act, or the Little Tucker Act" would be inadequate, the district court concluded that "[p]reliminary injunctive relief [was] therefore unavailable." *Guedes*, 356 F. Supp. 3d at 137 (citations omitted). The plaintiffs did not pursue an appeal of the denial of preliminary injunctive relief on this claim.

In addition, three actions have been brought in the Court of Federal Claims seeking to recover "just compensation" for bump stocks destroyed or abandoned pursuant to the Rule. That court has dismissed two of the cases, concluding that no compensation is required, and the third is stayed pending appeals in the first two. *See McCutchen v. United States*, 145 Fed. Cl. 42 (Fed. Cl. 2019), appeal docketed Nov. 27, 2019, No. 20-1188 (Fed. Cir.); *Modern Sportsman, LLC v. United States*, 145 Fed. Cl. 575 (Fed. Cl. 2019), appeal docketed Nov. 1, 2019, No. 20-1107 (Fed. Cir.); *Rouse v. U.S.*, 18-cv-1980 (Fed. Cl.).

9

### E.     The Instant Action.

On June 24, 2019, Plaintiff filed the "Class Action Complaint" in this case.  *See* Compl.  Plaintiff alleges that he resides in Ellis County, Texas, and that he "legally purchased and owned multiple" bump stocks, including at least "three slide-fire bump-stocks" in which he had a property interest "[a]t the time of issuance of the [Final] Rule." *See id.* ¶ 6.  He contends that "bump-stocks were fully legal in the United States when [he] paid money to purchase his," like "hundreds of thousands of other citizens."  *Id.* ¶ 21.  He further contends that the Rule "did not just take *value* from [his] property . . . it actually *physically* took the tangible property itself."  *Id.* ¶ 33.  Pursuant to these allegations, he seeks to represent a "class of similarly situated purchasers of bump-stock devices," and intends to seek certification of this class as "[a]ll individuals or entities of the United States who purchased fewer than 15 bump-stock devices or bump-fire devices, lawfully possessed them and then destroyed them as required by the Rule."  *Id.* ¶¶ 37-38.  Plaintiff suggests that "there are in excess of 100,000 Class members."  *Id.* ¶ 40.

Defendant moved to dismiss, explaining that the prohibition on bump stock possession is an exercise of the police power that does not give rise to a compensable taking.  *See* Mot. to Dismiss at 12-18, ECF No. 9 ("MTD").  Defendant also contended that the prohibition on bump stocks is not a *per se* taking, *see* MTD at 18-21, or a compensable regulatory taking under the analysis supplied by *Penn Central Transp. Co. v. New York*, 438 U.S. 104, 124 (1978), *see* MTD at 21-25.  After briefing, this Court denied the motion without prejudice, finding that Defendant had relied excessively on the argument that exercises of the "police power" do not amount to compensable takings, without adequately

explaining the source of that power in one of the enumerated powers of the federal government.  *See* Mem. Op. and Order, ECF No. 17 (Mar. 30, 2020) ("Mem. Op.").

### III.   Arguments and Authorities in Support

### A.   Legal Standard For A Motion To Dismiss Under Rule 12(b)(6).

Federal Rule of Civil Procedure 12(b)(6) provides Defendant the opportunity to move to dismiss for failure to state a claim upon which relief can be granted.  *See* Fed. R. Civ. P. 12(b)(6).  Dismissal must be granted unless "a complaint . . . contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted) (internal quotation marks omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*; *see also New York Pizzeria, Inc. v. Syal*, 56 F. Supp. 3d 875, 878 (S.D. Tex. 2014) (Costa, J.).  In reviewing a Rule 12(b)(6) motion, "the court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff."  *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (cleaned up).

### B.   The Prohibition on Bump Stock Possession is an Exercise of the Police Power Pursuant to Congress's Authority to Regulate Interstate Commerce, and Does Not Give Rise to a Compensable Taking.

### 1.   Exercises of the Police Power Do Not Require Compensation as Takings.

The Takings Clause of the Fifth Amendment provides that private property shall not "be taken for public use, without just compensation."  U.S. Const. amend. V.  Although the plain language of the Clause "requires the payment of compensation whenever the government acquires private property for a public purpose," *Tahoe–Sierra Preservation*

*Council, Inc. v. Tahoe Regional Planning Agency*, 535 U.S. 302, 321 (2002), "[i]t is clear that not every destruction or injury to property by governmental action has been held to be a 'taking' in the constitutional sense," *Price v. City of Junction, Tex.*, 711 F.2d 582, 591 (5th Cir. 1983) (citation omitted). *See also Murr v. Wisconsin*, 137 S. Ct. 1933 (2017); *Illinois Bell Telephone Co. v. FCC*, 988 F.2d 1254, 1263 (D.C. Cir. 1993). These cases recognize long-established precedent holding that the scope of the Takings Clause excludes "[a] prohibition simply upon the use of property for purposes that are declared . . . to be injurious to the health, morals, or safety of the community[. Such] cannot, in any just sense, be deemed a taking." *Mugler v. Kansas*, 123 U.S. 623, 668 (1887); *see Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1027 (1992) ("[T]he property owner necessarily expects the uses of his property to be restricted, from time to time, by various measures newly enacted by the State in legitimate exercise of its police powers."). This is particularly true "in the case of personal property, by reason of the State's traditionally high degree of control over commercial dealings," which creates "the possibility that new regulation might even render . . . property economically worthless (at least if the property's only economically productive use is sale or manufacture for sale)." *Lucas,* 505 U.S. at 1027-28 (citing *Andrus v. Allard*, 444 U.S. 51, 66–67 (1979). Accordingly, such exercises "of the police power . . . [are] treated as legitimate even in the absence of compensation to the owners of the . . . property." *Acadia*, 458 F.3d at 1332-33.

    **2.  The Exercise of the Federal Government's Enumerated Powers to Promote Public Safety Qualifies for the "Police Power" Exception.**

As explained in the Rule, the Rule's reliance on the "police power" exception to

compensable takings "does not posit the existence of a 'plenary police power' at the Federal level," 83 FR 66524, which, as this Court observed, does not exist.  *See* Mem. Op. at 10, 13.  Rather, when "the federal government . . .  engage[s], pursuant to one or more of its enumerated powers, in activities not unlike those engaged in by the states under their inherent sovereign powers to protect the public welfare," such activities are the exercise of a narrower "police power" that is a necessary and proper component of the enumerated power.  83 FR 66524 (cleaned up) (quoting *Fla. Rock Indus., Inc. v. United States*, 18 F.3d 1560, 1568 n.17 (Fed. Cir. 1994)); *see also Brooks v. United States*, 267 U.S. 432, 436 (1925) (When Congress "regulate[s] interstate commerce" by "punishing the use of such commerce . . . [to] harm [] the people of other states . . . it is merely exercising the police power").  Accordingly, state police power precedents can be "transpose[d] . . . [to] the Federal Government" because the state police power protects the general "welfare" and the "Federal Constitution exists, as stated in the preamble," to promote the general welfare. *Allied-General Nuclear Services v. United States*, 839 F.2d 1572, 1576 (Fed. Cir. 1988) (concluding thusly with respect to the preamble's "common defence" language).

DOJ promulgated the Rule to clarify that the prohibition of machine guns, which is a regulation of interstate commerce, includes a prohibition on bump stocks.  This exercise of the federal power to regulate interstate commerce to protect public safety is analogous to a State's exercise of its plenary police power for the same ends, and the federal exercise of such power thereby falls within the exception from compensation under *Mugler*.  For this reason, the "exercise of the police power to condemn contraband or noxious goods . . . has not been regarded as a taking for public use" by the federal government.  *Acadia*, 458

13

F.3d at 1332.  And courts have frequently recognized that the "police power" exception applies to the seizure and destruction of contraband in service of constitutionally-enumerated powers, including the Commerce Clause power.  *See, e.g.*, *Barnes v. U.S.*, 122 Fed. Cl. 581, 583 (Fed. Cl. 2015) (DEA seizure in connection with illegal possession of marijuana is "pursuant to the police power" and not within the scope of the Takings Clause); *AmeriSource Corp. v. U.S.*, 525 F.3d 1149, 1153-54 (Fed. Cir. 2008) (DOJ seizure of pharmaceuticals regulated pursuant to the Commerce Clause "in order to enforce criminal laws [is] a government action clearly within the bounds of the police power," and thus "not seized for public use within the meaning of the Fifth Amendment") (internal quotations omitted); *United States v. $7,990.00 in U.S. Currency*, 170 F.3d 843, 846 (8th Cir. 1999) (in enforcing criminal statute pursuant to Commerce Clause authority, "the forfeiture of contraband is an exercise of the [federal] government's police power . . . [and] is not subject to the Fifth Amendment's Takings Clause"); *Kam-Almaz v. U.S.*, 682 F.3d 1364, 1372 (Fed. Cir. 2012) ("[l]awful seizures" by the federal government pursuant to the "authority to search and seize property at our nation's borders" fall within the police power exception to the Fifth Amendment).[3]

The exercise of authority in the Rule to "clarify the meaning of machine gun and to make clear that [bump stocks] are machine guns" is no different: an exercise of the Commerce Clause power to protect public safety, and therefore, within the "police power" exception.  In the FOPA, Congress acted to "correct existing firearms statutes," 100 Stat.

---

[3] *See also, e.g.*, *Allied General*, 839 F.2d 1576; *B&F Trawlers, Inc. v. U.S.*, 27 Fed. Cl. 299, 305 (Fed. Cl. 1992); *Bachmann v. U.S.*, 134 Fed. Cl. 694, 696-98 (Fed. Cl. 2017).

449, § 1(b), including by amending the GCA to prohibit machine guns altogether, reflecting the continued exercise of the Commerce Clause power authorizing the GCA. And because DOJ relied on that authority in adopting the Rule to "protect[] the public" from dangerous contraband, the Rule's clarification of the FOPA is an action "pursuant to the government's police powers," precluding any "claim under the Fifth Amendment." *Osamor v. United States*, No. 4:09-cv-1500, 2010 WL 11668149 at \*9 (S.D. Tex. Nov. 5, 2010).

Applying the same principle, the Court of Federal Claims has repeatedly held that ATF may revise its interpretation of Section 922(o) to encompass bump stocks without giving rise to a compensable taking. In *Akins*, after unsuccessfully challenging ATF's decision to reverse its classification, the inventor sought compensation in that court. Notwithstanding his reliance on an ATF letter explicitly stating that the device "does not constitute a machinegun," that court analogized ATF's reversal to the "condemn[ation] of contraband" in *Acadia* and explained that "[p]roperty seized and retained pursuant to the police power is not taken for a 'public use' in the context of the Takings Clause." *Akins*, 82 Fed. Cl. at 622. Although the court in *Akins* used the "police power" terminology, the ATF was exercising its Commerce Clause authority over the Akins Accelerator, as it was in the Rule, and so the analysis applies equally in this case.[4]

In two cases seeking takings compensation for the Rule itself, the Court of Federal Claims followed *Akins* and held that the police power exception required dismissal of such

---

[4] The *Akins* Court also explained that Plaintiff's "expectation interest" was "not a property interest protected by the Fifth Amendment," because the intricate and longstanding regulatory framework for machine guns placed plaintiff on notice of the "potential for federal regulation of his invention." 82 Fed. Cl. at 624.

claims.  In *McCutchen*, the court explained that "owners to divest themselves of such tools of war is the paradigmatic example of the exercise of the government's police power, which defeats any entitlement to compensation under the Takings Clause."  145 Fed. Cl. 52. Similarly, in *Modern Sportsman*, the court reasoned that "the Takings Clause is not implicated" because DOJ "acted within the narrow confines of the police power when it required the surrender or destruction of all bump stocks."  145 Fed. Cl. at 582-83.

Although courts in the Fifth Circuit have analyzed some exercises of the police power differently and permitted claims for compensation to proceed, *see, e.g.*, *John Corp. v. City of Houston*, 214 F.3d 573 (5th Cir. 2000), those cases involved only routine government regulations of property.  *See, e.g.*, *id.* at 578 (denial of renovation permits leading to the loss of value in apartment buildings); *Archbold-Garrett v. New Orleans City*, 893 F.3d 318, 324-25 (5th Cir. 2018) (demolition of a townhouse); *Residents Against Flooding v. Reinvestment Zone No. 17, Houston, Tex.*, 260 F. Supp. 3d 738, 765, 804 (S.D. Tex. 2017) (flooding of property); *Queta's Investment, Inc. v. City of Hidalgo*, No. M-04-272, 2005 WL 2416656 (S.D. Tex. Sept. 30, 2005) (landscaping ordinance).  The classification of bump stocks as machine guns—private possession of which is forbidden apart from the exceptions in 18 U.S.C. § 922(o)—is different than an "ordinary regulation of ordinary business," however.  *Holliday Amusement Co. of Charleston v. S.C.*, 493 F.3d 404, 410 (4th Cir. 2007).  Such classification and seizure of contraband is one of "the most basic exercises of the police power," for which the Takings Clause does not "compel the government to regulate by purchase."  *Id.* at 410 (quoting *Andrus*, 444 U.S. 69).

Further, *John Corp.* and its progeny have little bearing on the question of how the

16

police power exception apply to a takings claim against the federal government. As explained above, the federal government's exercise of the police power is in service of one of its enumerated powers and is thus exercised within "narrow confines." *Modern Sportsman*, 145 Fed. Cl. 582. In the *John Corp.* line of cases, the plenary state police power at issue could be exercised unchecked in the absence of a compensation remedy under the Takings Clause, but no similar risk from the exercise of limitless government power exists here in the federal context where the police power is not plenary.

### 3.  The Federal Prohibition on Machine Guns, Including Bump Stocks, Is Within the Federal Authority to Regulate Interstate Commerce.

It is well-established that "the manufacturing, possession, and trafficking of machine guns *does* substantially affect interstate commerce, and that Congress was well within its Commerce Clause authority in enacting § 922(o)." *Hollis v. Lynch*, 121 F. Supp. 3d 617, 639 (N.D. Tex. 2015) (emphasis added), *aff'd* on other grounds, 827 F.3d 436 (5th Cir. 2016); *see also U.S. v. Stewart*, 451 F.3d 1071, 1077 (9th Cir. 2006) (holding that Congress had a "rational basis to conclude that federal regulation of intrastate incidents of transfer and possession [of machine guns] is essential to effective control of the interstate incidents of such traffic"); *U.S. v. Kenney*, 91 F.3d 884, 891 (7th Cir. 1996) ("both the nature of the statute and the history of federal firearms legislation support the conclusion that § 922(o) is a constitutional exercise of Congress's Commerce Clause power"). "Congress is empowered to regulate . . . things in interstate commerce, even though the threat may come only from intrastate activities," like the continued possession of machine guns. *U.S. v. Lopez*, 514 U.S. 549, 558 (1995); *see id.* at 558-59 ("commerce authority

includes the power to regulate . . . activities that substantially affect interstate commerce"). As the Supreme Court explained in *Gonzales v. Raich*, 545 U.S. 1 (2005), Congress "can regulate purely intrastate activity" as long as "failure to regulate that class of activity would undercut the regulation of the interstate market."[5] *Id.* at 16-17. The Rule's treatment of bump stocks mirrors the near-absolute bar on marijuana possession upheld in *Raich*.

### 4. Plaintiff's Takings Claims Do Not Turn on the Validity of the Rule.

This Court does not "need to assess whether the final rule is a correct interpretation of [18 U.S.C. § 922(o)] in deciding whether there was a compensable taking." Mem. Op. at 13. Plaintiff does not challenge the Rule itself, but instead, has pleaded a claim for compensation under the Little Tucker Act. *See* Compl. ¶ 48. This approach is consistent with precedent under the Tucker Act mandating that, "for the Court to possess jurisdiction over a takings claim, the 'claimant must concede the validity of the government action which is the basis of the taking claim.'" *Jackson v. U.S.*, 143 Fed. Cl. 242, 247 (Fed. Cl. 2019) (quoting *Tabb Lakes v. U.S.*, 10 F.3d 796, 802 (Fed. Cir. 1993)). Because "the grant of jurisdiction" in the Tucker Act "is practically identical to that" of the Little Tucker Act, *Kipperman v. McCone*, 422 F. Supp. 860, 868 (N.D. Cal. 1976), this Court should conclude that the validity of the Rule is not placed at issue in Plaintiff's takings claim.[6]

---

[5] Mindful of this Court's instruction that Defendant also address "the limitations [on the Commerce Clause] . . . in [*United States v.*] *Morrison*," 529 U.S. 598 (2000), Defendant notes that unlike the "crime of violence motivated by gender" at issue in *Morrison*, *id.* at 605, the machine guns that form the basis of a violation of § 922(o) are themselves transported in interstate commerce.

[6] As explained above, no inquiry into the validity of the Rule should be undertaken in this action. To the extent this Court determines that Plaintiff's claims require consideration of "[s]uch materials as technical manuals" in a review of the "technical aspects of the

### C.     The Ban on Bump Stocks Does Not Constitute A *Per Se* Taking For Which Compensation Is Required Under *Horne v. Dep't of Agriculture*.

The Complaint also contends that the ban on bump stocks works "a physical dispossession of personal property by the Government" that "must be compensated" under *Horne v. U.S. Dep't of Agriculture*, 135 S. Ct. 2419 (2015).  Compl. ¶ 34.  *Horne* has no application to the ban on bump stocks—nothing has been taken.

Although *Horne* held that the Government has a "categorical duty under the Fifth Amendment to pay just compensation," and that this duty applies not "only to real property, [but] to personal property," *Horne*, 135 S. Ct. 2425-26, the mere fact that bump stocks are personal property is insufficient to bring the challenged rule within the ambit of *Horne*.  As an initial matter, *Horne* did not address the "police power" limitation on compensable takings at all, and no consequential inference may be drawn from its silence.  *See United States v. Hager*, 879 F.3d 550, 555 (5th Cir. 2018) ("[A]bsent clear indications from the Supreme Court itself, lower courts should not lightly assume that a prior decision has been overruled *sub silentio*.") (quoting *Wilkerson v. Whitley*, 28 F.3d 498, 504 (5th Cir. 1994)).  Further, there is no physical seizure involved in the bump stock ban, whereas *Horne*'s analysis turned on the fact that the Department of Agriculture's seizures of raisins involved an "actual taking of possession . . . for the Government's control and use."[7]  *Horne*, 135 S.

---

statutory text," Mem. Op. at n.7, 51, such consideration should occur at summary judgment on the basis of the administrative record for the Rule.  *See Buttrey v. U.S.*, 690 F.2d 1170, 1184 (5th Cir. 1982).

[7] As the Court explained, after seizing the raisins as part of the program challenged in *Horne*, the Government "sells them in noncompetitive markets, for example to exporters, federal agencies, or foreign governments; donates them to charitable causes; releases them to growers who agree to reduce their raisin production; or disposes of them by any other means."  (internal quotation marks omitted).  *Horne*, 133 S. Ct. at 2424.

Ct. at 2428.  As the Court explained, this distinction is critical in light of the original public meaning of the Takings Clause: "[T]he author of the first treatise on the Constitution . . . [stated] the Takings Clause was 'probably' adopted in response to 'the arbitrary and oppressive mode of obtaining supplies for the army, and other public uses, by impressment.'"[8]  *Horne*, 135 S. Ct. at 2426 (quoting St. George Tucker, 1 Blackstone's Commentaries, Editor's App. 305–306 (1803)).  The ban on bump stocks involves no comparable physical seizure; to the contrary, the Rule "encouraged destruction" as the preferred option for disposal of bump stocks and stated that, if delivered to the Government, ATF "will . . . destroy [the] devices in-house." 83 FR 66551; *see also Miller v. Schoene*, 276 U.S. 272, 279-80 (1928) (no taking where, to prevent the spread of communicable disease, government "order[ed] the destruction" of landowner's trees).

Finally, *Horne* is distinguishable because it involved the government taking private property for its own use, a scenario of "impressment" not present here.  *Horne*, 135 S. Ct. at 2426.  Specifically, the raisins at issue in *Horne* were "transferred from [raisin] growers to the Government."  135 S. Ct. at 2428.  Despite Plaintiff's insistence that the bump stock ban "actually *physically* took the tangible property," Compl. ¶ 33 (emphasis in original),

---

[8] *Horne* also enumerated Founding era examples where compensation issued for takings of personal property, all of which involved appropriations for government use.  *See, e.g.*, *Horne*, 133 S. Ct. 2436 ("Virginia allowed the seizure of surplus 'live stock, or beef, pork, or bacon' for the military." (quoting 1777 Va. Acts ch. XII)) ("South Carolina authorized the seizure of 'necessaries' for public use." (quoting 1779 S.C. Acts § 4); *compare, e.g.*, *Gardner v. Michigan*, 26 S. Ct. 106 (1905) (no requirement of compensation for surrender of garbage to city contractor for disposal and destruction) *with Nortz v. United States*, 294 U.S. 317 (1935) (only amount of compensation, not requirement of compensation, at issue where Secretary of Treasury required surrender of gold for government use thereof).

the Government specifically "encouraged" bump stock owners to comply with 18 U.S.C. § 922(o) through "the destruction of the devices" rather than by transfer to Government possession.  To that end, the Rule provides instructions about how to destroy a bump stock:

> methods of destruction include completely melting, shredding, or crushing the device. If the device is made of metal, an alternative acceptable method of destruction is using an oxy/acetylene torch to make three angled cuts that completely severs design features critical to the functionality of the bump-stock-type device. Each cut should remove at least 1⁄4 inch of metal per cut. Any method of destruction must render the device so that it is not readily restorable to a firing condition or is otherwise reduced to scrap. However, as the majority of bump-stock-type devices are made of plastic material, individuals may use a hammer to break them apart so that the device is not readily restorable to a firing condition or is otherwise reduced to scrap, and throw the pieces away.

83 FR 66530.  The Rule also informed bump stock owners that "[a]dditional information on the destruction" of bump stocks would be made available online, and ATF proceeded to publish such information.  *See Bump Stock Destruction Instructions*, ATF, https://go.usa.gov/xvKh6 (last visited Apr. 27, 2020).  Only as a last alternative were bump stock owners provided an opportunity "to abandon bump-stock-type devices at the nearest ATF office," but those devices were also to be "destroy[ed] . . . in-house" by ATF, not retained for government use.  83 FR 66530.[9]  Because the Rule did not require that the "articles [be] seized" or impose a "physical appropriation" of the devices, *Horne* does not apply.  *Horne*, 135 S. Ct. at 2425-26.

### D.     Under The Regulatory Takings Principles Supplied By *Penn Central*, No Compensable Regulatory Taking Has Occurred.

Plaintiff's claims are equally subject to dismissal should the Court determine that

---

[9]  Defendant acknowledges that, to accommodate requests made in connection with litigation over the Rule, ATF agreed to store, rather than immediately dispose of, some of the surrendered bump stocks.  *See, e.g.*, *Cargill v. Barr*, Case No. 19-cv-349 (W.D. Tex.).

the claims are appropriately analyzed under the framework of *Penn Central Transportation Co. v. City of New York*, 438 U.S. 104, 124 (1978).[10]  "Prior to Justice Holmes's exposition in [*Mahon*], it was generally thought that the Takings Clause reached only a direct appropriation of property, or the functional equivalent."  *Lucas*, 505 U.S. at 1014 (cleaned up).  *Mahon* held that "compensation was also required for a 'regulatory taking'—a restriction on the use of property that went 'too far.'"  *Horne*, 135 S. Ct. at 2427 (citing *Mahon*, 260 U.S. at 415).  *Penn Central*, in turn, "clarified that the test for how far was 'too far'" required an 'ad hoc' factual inquiry."  *Id.* (citing *Penn Central*, 438 U.S. at 124).

"The *Penn Central* Court acknowledged that it had been 'unable to develop any set formula' for evaluating regulatory takings claims, but it did identify 'several factors that have particular significance.'"  *Degan v. Bd. of Trustees of Dallas Police & Fire Pension Sys.*, No. 17-cv-01596-N, 2018 WL 4026373 at *7 (N.D. Tex. Mar. 14, 2018) (quoting *Lingle v. Chevron, U.S.A.*, 544 U.S. 528, 538 (2005)) (cleaned up); *see also Da Vinci Inv., L.P. v. City of Arlington, Tex.*, 747 F. App'x 223, 228 (5th Cir. 2018).  "*Penn Central* focused on three factors: (1) 'the economic impact of the regulation on the claimant,' (2) 'the extent to which the regulation has interfered with distinct investment-backed

---

[10] Plaintiff's pleading choices suggests Plaintiff has *not* raised a regulatory takings claim. Plaintiff states that the Rule did not "take *value* from Plaintiffs' property by overregulating it; it actually *physically* took the tangible property itself.  Put even more succinctly . . . it was physically taken from him." Compl. ¶ 33 (emphasis in original) (characterizing effect of Rule as "a physical dispossession"); Compl. at Prayer for Relief ¶ B (seeking a declaration "that the Government's action . . . constituted a physical taking").  However, given that Plaintiff seeks to certify a class that includes bump stock owners who themselves "destroyed them as required," Compl. ¶ 38, Defendant provides this analysis of Plaintiff's claim as a regulatory taking in the event the Court deems such analysis appropriate.

expectations,' and (3) 'the character of the governmental action—for instance whether it amounts to a physical invasion or instead merely affects property interests through 'some public program adjusting the benefits and burdens of economic life to promote the common good.'" *Degan*, 2018 WL 4026373 at *7 (quoting *Lingle*, 544 U.S. at 538-39). Even if *Penn Central* applied to the current case, a regulatory claim under *Penn Central* would necessarily fail for the same reasons that no compensable taking has occurred at all. *See supra* Part III.B.

Reaffirming that "the nature of the State's interest . . . is a critical factor" in analyzing the "public purpose" and character of the governmental action under *Penn Central*, the Supreme Court has explained that an action taken "to arrest what [the Government] perceives to be a significant threat to the common welfare" is a factor that "leans heavily against finding a taking." *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 485-489 (1987). The statutory prohibition on machine guns is part of the effort to fight violent crime and protect law enforcement officers. *See supra* Part I.A; *compare* 83 FR 66520. The ban on bump stocks as machine guns, in turn, comes directly from Congress's mandate that dangerous, automatic weapons like those used in Las Vegas should not be unregulated. *See* 83 FR 66516. This factor alone weighs strongly against finding a taking under the *Penn Central* analysis. *See Gun South, Inc. v. Brady*, 877 F.2d 858, 869 (11th Cir. 1989) (evaluating a restriction on firearms imports and finding "the character of the governmental action . . . [to be] in a purely regulatory capacity" where the Government "does not profit from its actions").

It is likewise the case that Plaintiff had no reasonable investment-backed

23

expectation that bump stocks would go unregulated.  The firearms industry is highly regulated, especially with regard to contraband weapons like machine guns; as such, Plaintiff is mistaken to claim to have had "legitimate investment-backed expectations" in his bump stocks "as firearms parts."  Compl. ¶ 21; *see Mitchell Arms, Inc. v. U.S.*, 7 F.3d 212, 216 (Fed. Cir. 1993) ("enforceable rights sufficient to support a taking claim against the United States cannot arise in an area voluntarily entered into and. . . subject to pervasive Government control," such as "the firearms import business"); *accord Branch v. United States*, 69 F.3d 1571, 1581 (Fed. Cir. 1995) (a party's "reasonable investment-backed expectations are greatly reduced in a highly regulated field").  In *Mitchell Arms*, acting in reliance on import permits issued by ATF (and subsequent assurances from ATF that the permits would be honored), a private business acquired approximately 9,000 rifles and shipped them to ports of entry, whereupon the Government refused to honor the import permits.  *See* 7 F.3d at 214.  The reviewing courts rejected plaintiff's claim for compensation, concluding that, because the "ability to import the rifles . . . was at all times entirely subject to the exercise of ATF's regulatory power," no proper investment-backed expectation "arose on Mitchell's part."  7 F.3d at 217.  The Fifth Circuit has indicated its agreement with these principles, holding that a party has no "substantial likelihood of establishing" that a regulatory taking has occurred where the Government's "authority to exercise control" arises in a "highly regulated environment."  *Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 272-74 (5th Cir. 2012) (recognizing the taxi industry in New Orleans as "heavily regulated" in light of the city's licensing system).

Plaintiff's only support for his claim of such "expectations" is that ATF "issued

multiple classification decisions" to other parties who sought determinations from ATF, some of which stated that the bump stock submitted "is not regulated as a firearm" under federal law.  Compl. ¶¶ 18, 20.  But ATF has long made clear that, while such letters "may generally be relied upon by their recipients as the agency's official position concerning the status of the firearms," the "classifications are subject to change if later determined to be erroneous or impacted by subsequent changes in the law or regulations," as has occurred here.  *See* ATF, National Firearms Handbook § 7.2.4 (2009).  Indeed, the very fact that parties saw it necessary to contact ATF for an opinion regarding whether bump stocks are prohibited machine guns underscores the "pervasive Government control" over this field that precludes the existence of reasonable expectations.  *See Akins*, 312 F. App'x 198.

In light of the strength with which *Penn Central*'s "character" and "expectations" factors point in the Government's favor, the "economic impact" factor should be accorded minimal weight.  As the Supreme Court explained in *Lucas*, an owner of personal property "ought to be aware of the possibility that new regulation might even render his property economically worthless."  505 U.S. at 1027-28.  Thus, even though the classification of bump stocks as prohibited machine guns has rendered Plaintiff's devices "economically worthless," the "economic impact" factor cannot offset the character of Government's actions to protect public safety.

In short, even if the Court finds it necessary to examine the *Penn Central* factors, that analysis demonstrates that no compensable taking has occurred.

### IV.    Conclusion

For the foregoing reasons, the Court should dismiss Plaintiff's complaint.

Respectfully submitted,

Dated:  April 27, 2020

ERIN NEALY COX
United States Attorney

JOSEPH H. HUNT
Assistant Attorney General

LESLEY FARBY
Assistant Branch Director

MATTHEW J. GLOVER
Counsel to the Assistant Attorney General

  /s/ *Eric J. Soskin*
ERIC J. SOSKIN (PA Bar #200663)
Senior Trial Counsel
U.S. Department of Justice
Civil Division, Rm. 12002
1100 L Street, NW
Washington, D.C. 20530
Telephone: (202) 353-0533
Facsimile:[11] (202) 616-8470
Email: Eric.Soskin@usdoj.gov

Brian W. Stoltz
Assistant United States Attorney
Texas Bar No. 24060668
1100 Commerce Street, Third Floor
Dallas, TX 75242-1699
Telephone: (214) 659-8626
Fax: (214) 659-8807
Email: brian.stoltz@usdoj.gov

*Attorneys for Defendant*

---

[11] A facsimile number has been included in accordance with LCvR 10.1(b).  However, during the current public health emergency, receipt of facsimile transmissions may be delayed.

## <u>CERTIFICATE OF SERVICE</u>

On April 27, 2020, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court.  I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2) or the local rules.

<u>  /s/ Eric J. Soskin</u>
Eric J. Soskin