# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| BRIAN P. LANE, Individually and behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | Case No. 3:19-cv-01492-X<br>Judge Brantley Starr |

## AMENDED COMPLAINT- CLASS ACTION

### INTRODUCTION

1. Plaintiff asserts this claim on behalf of himself and a class of similarly situated individuals against the United States (the "Government" or the "Defendant") after the Government took his private property without compensation in violation of the Fifth Amendment of the United States Constitution (or alternatively illegally exacted his property). Plaintiff was the owner of bump-fire type rifle stocks (collectively referred to as "bump-stocks" or "stocks").

2. Bump-stocks were fully legal in the United States when Plaintiff acquired three of them, and they remained legal at all times until the Government demanded their surrender or destruction.

3. The taking of Plaintiff's bump-stock was prompted by President Trump's direction to his Administration to "clarify" whether bump-stocks "should be illegal" in the wake of the horrific Las Vegas mass shooting in October of the previous year.

1

The Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") responded by revisiting the statutory definition of "machinegun," a category of firearms banned by Congress in 1986, and artfully reimagining the agency construction of the term "machinegun" so that it could—for the first time—encompass bump-stocks.

4.      In December 2018, ATF rolled out a new rule ("the Final Rule" or "Rule") banning bump-stocks under the statutory ban on machineguns. The Rule required owners of bump-stocks to surrender them to the Government or destroy them. The Final Rule was clear that persons in possession of a bump-stock type device were "not acting unlawfully *unless* they fail to relinquish or destroy their device *after* the effective date of this regulation." 83 Fed. Reg. at 66,523 (emphasis added).

5.      The Takings Clause of the Fifth Amendment of United States Constitution provides that "private property" shall not "be taken for public use, without just compensation." U.S. Const. amend. V. The Fifth Amendment imposes a categorical duty on the government to pay just compensation for physical takings of private property. *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 421 (1982). A physical taking occurs when the state "absolutely dispossess[es] the owner of property." *Id.* at 435 n.12.

## PARTIES

6.      Plaintiff, Brian Lane ("Plaintiff") is an individual who resides in Ellis County, Texas. Plaintiff legally purchased and owned multiple bump-fire type devices for his personal use. At the time of the issuance of the Rule, Plaintiff had a property interest in three slide-fire bump-stocks.

2

7.  Defendant United States of America, through the ATF's amendment of 27 CFR parts 447.11, 478.11 and 479.11, required everyone in possession of a bump-stock to destroy or surrender the devices.

## JURISDICTION AND VENUE

8.  This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331 and 28 U.S.C. § 1346(a). Plaintiff and each putative class member have at least one claim against the United States for a compensable taking or, alternatively, an illegal exaction, and no individual class member's claim exceeds $10,000.

9.  The Court has personal jurisdiction over all parties to this lawsuit, and venue is proper in this District pursuant to 28 U.S.C. § 1391 and 28 U.S.C. § 1402(b).

## FACTUAL ALLEGATIONS

### An Overview of Firearm Regulation

10. Three federal statutes regulate the sale and possession of firearms in the United States, the National Firearms Act of 1934 (NFA), 26 U.S.C. Chapter 53; the Gun Control Act of 1968 (GCA), 18 U.S.C. Chapter 44; and the Firearm Owners Protection Act (FOPA), Pub. L. 99-308, 100 Stat. 449 (1986). The GCA and FOPA specifically define the term "machinegun," and in 1986, FOPA made it unlawful for any person to transfer or possess any firearm that meets the statutory definition of machinegun that was not lawfully possessed before FOPA's effective date in 1986.

11. The Attorney General is responsible for enforcing the GCA, the NFA and the FOPA. This responsibility includes the authority to promulgate regulations necessary to enforce of their provisions.

12. The Attorney General has delegated the responsibility for administering and enforcing the GCA, the NFA and the FOPA to the Director of the ATF, subject to the direction of the Attorney General and the Deputy Attorney General.

13. The general public must adhere to the ATF's authority and rulemaking when it comes to firearms.

**History of Federal Guidance on Bump-Stocks.**

14. In 2006, the ATF concluded that certain spring-loaded devices were classified as machineguns under the GCA and NFA.

15. Specifically, the ATF determined that certain devices attached to semi-automatic firearms that use an internal spring to harness the force of the recoil so that the firearm shoots more than one shot with a single pull of the trigger are machineguns.

16. One such bump-stock-type device that relied on internal springs and was classified as a machinegun was the "Akins Accelerator."

17. After classification, the ATF advised individuals who had purchased the Akins Accelerator that they had the option of removing the internal spring, thereby placing the device outside the classification of machinegun and allowing the possessor to *retain the device* in lieu of destroying or surrendering the device.

18. Between 2008 and 2017 the ATF also issued multiple classification decisions concluding that certain other bump-stock-type devices, that did not rely on springs, were not machineguns. The ATF determined that semiautomatic firearms modified with these bump-stocks did not fire "automatically," and were thus not "machineguns," because the devices did not rely on internal springs or similar mechanical parts to channel recoil energy.

19. The ATF classified these bumps-stock devices as firearm parts which are not subject to regulation.

20. For nearly a decade, through its series of classification decisions, the ATF expressly determined that bump-fire stocks, slide-fire devices, and devices with certain similar characteristics are a firearm part not regulated as a firearm under either the GCA or the NFA, and therefore not subject to federal regulation. 83 Fed. Reg. at 66,514.

21. Over an eight-year period, when hundreds of thousands of citizens purchased bump-stocks, they did so legally. There was no statutory prohibition. Plaintiff and members of the class had legitimate investment-backed expectations in their bump-stocks as firearm parts when they acquired the bump-stocks. Put another way, bump-stocks were fully legal in the United States when Plaintiff paid money to purchase his.

**The Las Vegas Shooting and the Political Aftermath**

22. On October 1, 2017, a gunman opened fire from a hotel window on a crowd attending a Las Vegas music festival. He killed 58 people and wounded another 422, and the weapons he used were modified with bump-stocks.

23. On February 20, 2018, President Donald Trump issued a "Presidential Memorandum on the Application of the Definition of Machinegun to 'Bump Fire' Stocks and Other Similar Devices" as a response to the horrific events at the Las Vegas mass shooting. President Trump directed his Administration to "clarify" whether bump-stocks "should be illegal" and noted that "the Obama Administration repeatedly concluded that particular bump stock type devices were lawful to purchase and possess." The President announced that he had asked his Administration "to fully review how the Bureau of Alcohol, Tobacco, Firearms and Explosives regulates bump-fire stocks and similar devices." 83 Fed. Reg. at 7950.

24. In response to this directive, the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") proposed a new rule banning bump-stocks under the statutory ban on machine guns under the GCA and NFA. On March 29, 2018, the Government published a Notice of Proposed Rulemaking ("NPR") in the Federal Register. 83 Fed. Reg. at 13422.

25. In the NPR, the ATF proposed an amendment to its regulations that reversed its previous determinations that bump-stocks are a firearm part and not subject to federal regulation.

6

**The Government Reverses Itself**

26. The full review mandated by President Trump culminated in the issuance of an ATF rule that broadened elements of the definition of "machinegun" under the NFA, GCA and FOPA, such that the FOPA ban on machine guns could reach bump-stocks.

27. On December 26, 2018, the ATF published its final rule in the Federal Register, 83 FR 66514, amending 27 CFR parts 447, 478, and 479, redefining bump-fire stocks as "machineguns" under the NFA and GCA ("the Final Rule")

28. The ATF Final Rule required owners of bump-stocks to surrender their private property to the government or destroy it. Those were the only two options. One way or the other, Plaintiffs were permanently dispossessed of their property. The Rule also acknowledged that ownership of the stocks before the effective date of the Rule of March 26, 2019 was entirely legal. 83 Fed. Reg. at 66,523.

29. The ATF's website expressly warned people who had lawfully obtained the bump-stocks and lawfully owned them until the Rule went into effect that "[c]urrent possessors of bump-stock-type devices must divest themselves of possession as of the effective date of the final rule[.]" https://www.atf.gov/rules-and-regulations/bump-stocks (last visited June 18, 2019).

30. The Final Rule was an abrupt reversal of clear ATF guidance about bump-stocks. More than ten previous classification decisions from the ATF had classified bump-stocks as a firearm part or accessory.

7

31. The Final Rule's reversal of the Government's position about bump-stock devices was unrelated to organic statutory interpretation or new technical information about how bump-stock devices function. The Government acquired no new information about the functionality of bump-stock devices; it simply changed its mind about the same exact thing it had been saying was okay to purchase and possess for nearly a decade.

### The United States Supreme Court Invalidates the Final Rule

32. On June 14, 2024, the United States Supreme Court held that a semiautomatic rifle equipped with a bump-stock is not a "machinegun" as defined by Congress and that ATF therefore exceeded its statutory authority by issuing the Final Rule. *Garland v. Cargill*, 602 U.S. 406 (2024).

33. The Supreme Court in *Cargill* noted that ATF had "abruptly reversed course" from the position it had taken on more than 10 separate occasions before issuing an "about-face" by including bump stocks under the definition of machinegun in the Final Rule.

### CLASS ACTION ALLEGATIONS

34. Plaintiff brings this class action lawsuit on behalf of himself and a class of similarly situated purchasers of bump-stock devices, pursuant to Rule 23(b)(1), 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure.

35. Plaintiff seeks certification of the following Class:

> *All individuals or entities of the United States who purchased fewer than 15 bump-stock devices or bump-fire devices, lawfully possessed them and then destroyed them as required by the Final Rule, excluding class counsel and agencies of the federal government.*

36. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

37. The members of the Class are so numerous that their individual joinder is impracticable. According to the Government's own statistics and publicly available industry data, hundreds of thousands of bump-fire stocks were sold throughout the United States, and there are in excess of 100,000 Class members. The precise number or identification of members of the Class is presently unknown to Plaintiff, but Class members may be notified of the pendency of this action by mail, email, Internet postings, and/or publication.

38. Common questions of law and fact exist as to all members of the Class, which predominate over any questions affecting only individual members of the Class. These common questions of law or fact include, but are not limited to, the following:

    a. Whether the ATF's promulgated regulation effected a taking under the 5th Amendment of the United States Constitution;
    b. Whether the ATF's promulgated regulation effected an illegal exaction;
    c. Whether requiring the physical surrender of bump-stocks to the ATF is a taking under the 5th Amendment of the United States Constitution or an illegal exaction; and
    d. Whether the class is entitled to just compensation and the measure of the damages for the taking.

9

39. Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff, on behalf of himself and the other members of the Class. Similar or identical statutory law violations and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action.

40. Plaintiff's claims are typical of the claims of the other members of the Class because, among other things, all such claims arise out of the same regulation. Further, the damages of each member of the Class were caused directly by Defendant's wrongful conduct in violation of the laws as alleged herein.

41. Plaintiff is an adequate Class representative because he is a member of the Class and his interests do not conflict with the interests of the other members of the Class he seeks to represent. Plaintiff has also retained counsel competent and experienced in complex and class action litigation. Plaintiff and his counsel intend to prosecute this action vigorously for the benefit of all members of the Class. Accordingly, the interests of the members of the Class will be fairly and adequately protected by Plaintiff and his counsel.

42. Individual class members prosecuting separate actions would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the Government and would be dispositive of the interests of other class members who are not parties to this case, impairing their ability to protect their interests.

43. Defendant has acted or refused to act on grounds generally applicable to Plaintiff and the other members of the Class, thereby making appropriate final injunctive relief and declaratory relief with respect to the members of the Class as a whole. The federal regulation was applied uniformly to all members of the Class, affects all members of the class in the exact same way, and the resolution of any individual class member's claim will apply uniformly to the class as a whole.

44. A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other members of the Class are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for members of the Class to individually seek redress for Defendant's wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## COUNT I
## TAKING UNDER THE FIFTH AMENDMENT

45. Plaintiff brings this case under the Fifth Amendment of the United States Constitution, which provides "nor shall private property be taken for public

use, without just compensation[,]" and the Little Tucker Act, 28 U.S.C. § 1346(a), which grants original jurisdiction to the district courts for any "civil action or claim against the United States, not exceeding $10,000 in amount" founded upon the Constitution.

46. The Government physically took property from each class member who lawfully purchased and possessed a bump-stock and surrendered it to the Government or destroyed it per the Government's directive that "any method of destruction must render the device so that it is not readily restorable to a firing condition or is otherwise reduced to scrap." Plaintiff and the class are entitled to the just compensation for the taking of their property.

47. A federal law or regulation that requires previously lawful owners of property to destroy or surrender said property, without just compensation, is unprecedented in the history of the United States.

48. Unlike individual states, the federal government does not have a plenary police power.

49. The ATF took Plaintiff's property for a public purpose.

50. The ATF's actions are attributable to the United States.

51. The United States government has not provided Plaintiff and the class with any compensation for the taking of their property.

## COUNT II
## (IN THE ALTERNATIVE)
## ILLEGAL EXACTION

52. Plaintiff realleges and incorporates all allegations in the preceding paragraphs as though fully set forth herein.

53. In the alternative, the Final Rule constitutes an illegal exaction because the ATF exceeded and contravened its statutory and regulatory authority granted by Congress under the GCA and NFA.

54. The ATF asserted that it was exercising the regulatory power conferred by 18 U.S.C. 922(o)(1) to prohibit citizens from possessing machineguns when it redefined the term "machinegun" to include bump-stocks and ordered Plaintiff and the class to surrender or destroy their bump-stocks.

55. The Supreme Court has held that bump-stocks are not "machineguns" as the Congress defined that term in the statute and that the ATF therefore exceeded its statutory authority by issuing the Final Rule and requiring the surrender and destruction of the Plaintiff's, and each class member's, property. *Garland v. Cargill*, 602 U.S. 406 (2024).

56. By, through and as a direct result of the Government's illegal action or improper application of the law, the Government has thus exacted Plaintiff's private property and property interests.

57. The Final Rule has enriched the Government at Plaintiff's expense, directly or in effect, by illegally imposing costs and expenses on Plaintiff and the class that Plaintiff and the class should not have to bear, and that the Government

otherwise would bear, including without limitation the cost of the bump-stock devices that were destroyed and the cost to destroy the devices.

58.     The Government's actions have had a direct and substantial impact on Plaintiff and the class and the exaction occurred as direct result of the unlawful government action.

59.     Plaintiff and the class are entitled to recover for the Government's exaction of their property and property rights. Specifically, and without limitation, Plaintiff and the class are entitled to recover from the Government the fair market value of the bump-stock devices that the ATF ordered to be destroyed along with the costs associated with destruction.

60.     As a result of the Government's actions, Plaintiff and the class have actually, directly, and proximately suffered harm, injury and damages, and are entitled to recovery against the Government in an amount to be proven at trial.

## PRAYER FOR RELIEF

Plaintiff requests that the Court:

A.     Certify this case as a class action under Federal Rule of Civil Procedure 23(b)(1), 23(b)(2) and 23(b)(3);

B.     Declare that the Government's action requiring surrender or destruction of the bump-stocks constituted a physical taking of private property (or, alternatively, that the Government illegally exacted Plaintiffs' property);

C.     Award monetary relief for all class members;

D.  Award Plaintiff and his attorneys their costs, expenses and attorneys' fees under 28 U.S.C. § 2412 and/or from a common fund; and

E.  Award all other appropriate relief.

>  /s/ *Adam M. Riley*
>  Adam M. Riley
>  Ethan A. Flint
>  Flint Cooper, LLC
>  222 East Park Street, Suite 500
>  Edwardsville, Illinois 62025
>  T: (618) 288-4777
>  F: (618) 288-2864
>  ariley@flintcooper.com
>  eflint@flintcooper.com

Dated:  August 7, 2024                    *Attorneys for Plaintiff*

15