## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| BRIAN P. LANE, Individually and, on behalf of all others similarly situated, <br><br> *Plaintiff*, <br><br> v. <br><br> THE UNITED STATES, <br><br> *Defendant*. | Case No. 3:19-cv-01492-X <br> Judge Brantley Starr |

## DEFENDANT'S MOTION TO DISMISS

Defendant moves to dismiss Plaintiffs' Amended Complaint for failure to state a claim.

*See* Fed. R. Civ. P. 12(b)(6).  In support, Defendant relies on the accompanying brief.

Dated:  October 28, 2024

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney
General

BRIGHAM J. BOWEN
Assistant Branch Director
Federal Programs Branch

*/s/ Alexander V. Sverdlov*
ALEXANDER V. SVERDLOV
(NY Bar 4918793)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Tel: (202) 305-8550
alexander.v.sverdlov@usdoj.gov

*Counsel for Defendant*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| BRIAN P. LANE, Individually and, on behalf of all others similarly situated, | |
| *Plaintiff,* | Case No. 3:19-cv-01492-X |
| v. | Judge Brantley Starr |
| THE UNITED STATES, | |
| *Defendant.* | |

**MEMORANDUM OF LAW IN SUPPORT**
**OF DEFENDANT'S MOTION TO DISMISS**

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney
General

BRIGHAM J. BOWEN
Assistant Branch Director
Federal Programs Branch

ALEXANDER V. SVERDLOV
(NY Bar 4918793)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Tel: (202) 305-8550
alexander.v.sverdlov@usdoj.gov

*Counsel for Defendant*

## **TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................1

BACKGROUND ...................................................................................................................2

I.     Statutory Framework For Regulating Machine Guns.........................................................2

II.    ATF's Prior Classifications Of Bump Stocks ...................................................................3

III.   ATF Issues The Rule ........................................................................................................4

IV.   Challenges To The Rule And Procedural History...........................................................5

ARGUMENT .........................................................................................................................7

I.     ATF's Determination that Bump Stocks Fall within the Statutory Prohibition on
Machine Guns Did Not Effect a Compensable Taking ....................................................8

     A.     ATF's Interpretive Rule Cannot Be A Taking ....................................................8

     B.     If *Cargill* Is Read As Finding The Rule To Be Unauthorized For Takings
Purposes, Plaintiff's Takings Claim Fails As A Matter of Law ..........................11

     C.     ATF's Rule Constitutes An Exercise Of The Police Power That Cannot
Give Rise To A Taking .....................................................................................12

II.    Plaintiff Does Not State A *Per Se* Physical Takings Claim...............................................17

III.   Plaintiff Does Not State A Regulatory Takings Claim Under *Penn Central* ..................18

IV.   Plaintiff Fails To State A Cognizable Illegal Exaction Claim .........................................20

CONCLUSION.....................................................................................................................22

## TABLE OF AUTHORITIES

**Cases**

*A&D Auto Sales, Inc. v. United States,*
748 F.3d 1142 (Fed. Cir. 2014) ........................................................................ 8

*Acadia Tech., Inc. v. United States,*
458 F.3d 1327 (Fed. Cir. 2006) ................................................................... 11, 16

*Aerolineas Argentinas v. United States,*
77 F.3d 1564 (Fed. Cir. 1996) ......................................................................... 20

*Akins v. United States,*
82 Fed. Cl. 619 (2008) ............................................................................... 4, 13

*Akins v. United States,*
312 F. App'x. 197 (11th Cir. 2009) (per curiam) ......................................... 3, 4, 9

*Allied-General Nuclear Services v. United States,*
839 F.2d 1572 (Fed. Cir. 1988) ........................................................................ 14

*AmeriSource Corp. v. United States,*
525 F.3d 1149 (Fed. Cir. 2008) .............................................................. 8, 12, 14

*Aposhian et al. v. Barr et al.,*
958 F.3d 969 (10th Cir. 2020) ........................................................................... 5

*Appolo Fuels, Inc. v. United States,*
381 F.3d 1338 (Fed. Cir. 2004) ................................................................... 18, 19

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) .......................................................................................... 7

*Ass'n of N.J. Rifle & Pistol Clubs, Inc. v. Attorney Gen. N.J.,*
910 F.3d 106 & n.32 (3d Cir. 2018), *abrogated on other grounds by New York State Rifle & Pistol Ass'n, Inc. v. Bruen,* 142 S. Ct. 2111 (2022) ........................................................... 13

*Barnes v. U.S.,*
122 Fed. Cl. 581 (Fed. Cl. 2015) ...................................................................... 14

*Boeing Co. v. United States,*
968 F.3d 1371 (Fed. Cir. 2020) ........................................................................ 21

*Branch v. United States,*

69 F.3d 1571 (Fed. Cir. 1995) ........................................................................... 19

*Breneman v. United States*,
57 Fed. Cl. 571 (2003) ................................................................................... 10

*Brooks v. United States*,
267 U.S. 432 (1925) ....................................................................................... 14

*Cargill v. Garland*,
57 F.4th 447 (5th Cir. 2023) ........................................................................ 5, 7

*Cedar Point Nursery v. Hassid*,
594 U.S. 139 (2021) ................................................................................. 14, 17

*Columbus Regional Hosp. v. United States*,
990 F.3d 1330 (Fed. Cir. 2021) ..................................................................... 20

*Commonwealth Edison Co. v. United States*,
271 F.3d 1327 (Fed. Cir. 2001) (en banc) .................................................... 19

*Darby Development, Co., Inc. v. United States*,
112 F.4th 1017 (Fed. Cir. 2024) ....................................................... 11, 12, 16

*Del-Rio Drilling Programs, Inc. v. United States*,
146 F.3d 1358 (Fed. Cir. 1998) ..................................................................... 16

*Dimare Fresh, Inc. v. United States*,
808 F.3d 1301 (Fed. Cir. 2015) .......................................................... 8, 10, 18

*Duncan v. Bonta*,
19 F.4th 1087 (9th Cir. 2021), *vacated and remanded on other grounds*, 142 S. Ct. 2895 (2022) ........................................................................................................... 13

*Eastport S.S. Corp. v. United States*,
372 F.2d 1002 (Ct. Cl. 1967) ........................................................................ 20

*Fla. Rock Indus., Inc. v. United States*,
18 F.3d 1560 (Fed. Cir. 1994) ....................................................................... 14

*Garelick v. Sullivan*,
987 F.2d 913 (2d Cir. 1993) ............................................................................ 8

*Garland v. Cargill*,
602 U.S. 406 (2024) .................................................................................. 1, 5, 7

*Guedes et al. v. ATF, et al.*,

iii

920 F.3d 1 (D.C. Cir. 2019) ........................................................................... 5, 9

*Gun Owners of America, Inc., et al. v. Barr, et al.*,
19 F.4th 890 (6th Cir. 2021) (en banc) ................................................. 5

*Hardin v. ATF*,
65 F.4th 895 (6th Cir. 2023) ................................................................ 5

*Hawaii Housing Authority v. Midkiff*,
467 U.S. 229 (1984) ........................................................................... 15

*Holliday Amusement Co. of Charleston v. South Carolina*,
493 F.3d 404 (4th Cir. 2007) ....................................................... 12, 13

*Horne v. Dep't of Agric.*,
576 U.S. 350 (2015) ........................................................................... 17

*Huntleigh USA Corp. v. United States*,
525 F.3d 1370 (Fed. Cir. 2008) ........................................................... 8

*In re Katrina Canal Breaches Litig.*,
495 F.3d 191 (5th Cir. 2007) ............................................................... 7

*Jenkins v. United States*,
71 F.4th 1367 (Fed. Cir. 2023) .......................................................... 16

*Kam-Almaz v. U.S.*,
682 F.3d 1364 (Fed. Cir. 2012) ......................................................... 15

*Kelo v. City of New London*,
545 U.S. 469 (2005) ........................................................................... 15

*Keystone Bituminous Coal Ass'n v. DeBenedictis*,
480 U.S. 470 (1987) ..................................................................... 12, 18

*Lingle v. Chevron U.S.A. Inc.*,
544 U.S. 528 (2005) ........................................................................... 17

*Lucas v. S. Carolina Coastal Council*,
505 U.S. 1003 (1992) ......................................................................... 19

*Maryland Shall Issue, Inc. v. Hogan*,
963 F.3d 356 (2020), *cert. denied*, 141 S. Ct. 2595 (2021) .......... 12, 13

*McCutchen v. United States*,
145 Fed. Cl. 42 (2019), *aff'd*, 14 F.4th 1355 (Fed. Cir. 2021) ..................................... *passim*

*Miller v. Schoene*,

iv

276 U.S. 272 (1928) ................................................................... 13, 17, 18

*Mitchell Arms, Inc. v. U.S.*,
  7 F.3d 212 (Fed. Cir. 1993) ............................................. 19

*Modern Sportsman, LLC v. United States*,
  145 Fed. Cl. 575 (2019) ............................................. 15, 16

*Mugler v. Kansas*,
  123 U.S. 623 (1887) ................................................... 13, 18

*Mugler v. Kansas*,
  142 S. Ct. 623 (1887) ................................................ 13, 18

*Nat'l Veterans Legal Servs. Program v. United States*,
  968 F.3d 1340 (Fed. Cir. 2020) .................................... 21

*Oregon Firearms Fed. v. Kotek*,
  682 F. Supp. 3d 874 (D. Or. 2023) ............................... 13

*PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.*,
  139 S. Ct. 2051 (2019) ................................................. 8

*Penn Central Transportation Co. v. City of New York*,
  438 U.S. 104 (1978) ................................................. 2, 18

*Perez v. Mortgage Bankers Ass'n*,
  575 U.S. 92 (2015) ......................................................... 8

*Piszel v. United States*,
  121 Fed. Cl. 793 (2015) ............................................... 20

*Piszel v. United States*,
  833 F.3d 1366 (Fed. Cir. 2016) ................................... 21

*Rith Energy, Inc. v. United States*,
  270 F.3d 1347 (Fed. Cir. 2001) ................................... 11

*Rose Acre Farms, Inc. v. United States*,
  559 F.3d 1260 (Fed. Cir. 2009) ................................... 18

*Ruckelshaus v. Monsanto Co.*,
  467 U.S. 986 (1984) ..................................................... 18

*Shalala v. Guernsey Mem. Hosp.*,
  514 U.S. 87 (1995) ...................................................... 8, 9

*Sig Sauer, Inc. v. Brandon*,

826 F.3d 598 (1st Cir. 2016) ................................................................ 3

*Stupp Corp. v. United States,*
 5 F.4th 1341 (Fed. Cir. 2021) ..................................................... 5, 8, 9

*Taylor v. United States,*
 959 F.3d 1081 (Fed. Cir. 2020) .................................................. 10, 11

*United States v. $7,990.00 in U.S. Currency,*
 170 F.3d 843 (8th Cir. 1999) ..................................................... 14, 15

*United States v. N. Am. Transp. & Trading Co.,*
 253 U.S. 330 (1920) ........................................................................ 11

*United States v. Pewee Coal Co.,*
 341 U.S. 114 (1951) ........................................................................ 17

**U.S. Constitution**

U.S. Const. amend. V ........................................................................ 8

**United States Code**

18 U.S.C. § 921 ................................................................................... 3
18 U.S.C. § 922 .......................................................................... *passim*
26 U.S.C. Chapter 53 ......................................................................... 3
26 U.S.C. § 5845 ............................................................................ 1, 3
28 U.S.C. § 1295 ................................................................................ 6
28 U.S.C. § 1346 ................................................................................ 6
28 U.S.C. § 1491 .............................................................................. 21

**Rules**

Federal Rule of Civil Procedure 12 ............................................... 2, 7

**Regulations**

82 Fed. Reg. 60929 (Dec. 26, 2017) ................................................. 4
83 Fed. Reg. 7,949 (Feb. 20, 2018) .................................................. 4
83 Fed. Reg. 66,514 (Dec. 26, 2018) ......................................... *passim*

**Other Authorities**

Bureau of Alcohol, Tobacco, Firearms and Explosives, National Firearms Act Handbook §
7.2.4.1 ............................................................................................. 19

## INTRODUCTION

Relying on its constitutional authority to "regulate Commerce . . . among the several States," Congress has long restricted access to "'machinegun[s],'" which it defined as any weapon that can "shoot, automatically more than one shot . . . by a single function of the trigger." 26 U.S.C. § 5845(b); *see also* 18 U.S.C. § 922(o). Following the tragic mass shooting in Las Vegas, Nevada, the Department of Justice's Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) issued a rule clarifying that bump stocks—sliding mechanisms that replace a rifle's standard stock to facilitate rapid firing—fall within this statutory definition. *Bump-Stock-Type Devices*, 83 Fed. Reg. 66,514 (Dec. 26, 2018) (the Rule). The Rule precipitated a slew of legal challenges, which wound their way through the courts for years. These culminated in the Supreme Court's decision last term in *Garland v. Cargill*, 602 U.S. 406 (2024), which held that ATF had misinterpreted the statutory language and concluded that a bump stock is not a "machinegun" under Congress's definition of that term.

Unlike the plaintiff in *Cargill*, Plaintiff here did not originally challenge the Rule's validity. Instead, he brought a putative class action in 2019 alleging that ATF's prohibition on the possession of bump stocks amounted to a Fifth Amendment taking—and, following *Cargill*, has amended his complaint adding a claim that the Rule constitutes an illegal exaction of property. *See* Am. Compl., ECF No. 44 (FAC). But analogous challenges were repeatedly rejected by the U.S. Court of Federal Claims and the Federal Circuit before *Cargill*. *See, e.g.*, *McCutchen v. United States*, 145 Fed. Cl. 42, 52 (2019), *aff'd* 14 F.4th 1355 (Fed. Cir. 2021). And while *Cargill* found the Rule invalid, its rationale does not revive Plaintiff's monetary claims against the United States.

As a legal matter, Plaintiff's takings claim fails for at least three threshold reasons. *First*, an interpretive rule, like the Rule here, cannot constitute a taking because it has no force of law; it merely communicates the government's interpretation of a statute. The fact that private parties may respond to the government's interpretation of a statute by limiting their own use of property or disposing of property does not mean that the government's

interpretation is a taking. *Second*, to the extent *Cargill* means that ATF acted in excess of its statutory authority for purposes of the Takings Clause, Plaintiff's claim would fail because it is well established that only authorized government action can form the basis for a cognizable takings claim. *Third*, in any event, ATF's attempt to prohibit the possession of dangerous weapons constitutes an exercise of the police power that cannot be a taking. This remains true even despite the Supreme Court's conclusion that ATF misinterpreted the relevant statutory firearms law provisions. When considering a takings claim, the Court must assume that the government action at issue is authorized and lawful under Federal Circuit precedent, and regardless, application of the police power doctrine is not defeated by a later finding that the agency made a mistake.

Even if this Court were to reach beyond these threshold issues, Plaintiff fails to allege a claim for either a *per se* physical taking, or a regulatory taking under the multi-factor test set forth in *Penn Central Transportation Co. v. City of New York*, 438 U.S. 104, 124 (1978). Likewise, Plaintiff's illegal exaction claim fails to state a claim under settled Federal Circuit precedent because the Rule did not compel Plaintiff to make monetary payments, and thus no exaction of has occurred.

For all these reasons, Plaintiff's claims fail as a legal matter. Accordingly, the Court should dismiss Plaintiff's amended complaint pursuant to Rule 12(b)(6).

**BACKGROUND**

## I.    **Statutory Framework For Regulating Machine Guns**

Over the last century, Congress has imposed increasingly strict regulations on machineguns as part of the interconnected framework of Federal laws regulating the interstate firearms market. Through passage of the Firearm Owners Protection Act (FOPA), Pub. L. 99-308, 100 Stat. 449 (1986), Congress has prohibited the possession of machineguns manufactured after the effective date of the FOPA in 1986, and closely regulated the possession of machineguns manufactured prior to this date. *See* 18 U.S.C. § 922(o).

2

Among its provisions, FOPA added 18 U.S.C. § 922(o) to the GCA. This section makes it "unlawful for any person to transfer or possess a machinegun" not lawfully possessed before the FOPA's effective date. 18 U.S.C. § 922(o)(2). The FOPA specifically defines the term "machinegun" by incorporating the definition of that term found in the National Firearms Act of 1934 (NFA), 26 U.S.C. Chapter 53. *See* 18 U.S.C. § 921(a)(23). Accordingly, "machinegun" is defined by Congress as:

> any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.

26 U.S.C. § 5845(b).

## II.    ATF's Prior Classifications Of Bump Stocks

A manufacturer or owner of a device may request ATF's views on the classification of various devices under Federal firearms laws, and ATF may provide a classification letter indicating ATF's current position on a particular device, although that classification is subject to change. *See McCutchen*, 14 F.4th at 1368-69; *Sig Sauer, Inc. v. Brandon*, 826 F.3d 598, 599-600 (1st Cir. 2016). As detailed in the Rule, in 2002 and 2004, a Florida inventor asked ATF to determine whether the Akins Accelerator, a specific model of a bump stock that "uses an internal spring and the force of recoil to reposition and refire the rifle," would be classified as a machinegun under the NFA. *Akins v. United States*, 312 F. App'x. 197, 198 (11th Cir. 2009) (*per curiam*). ATF initially set forth its view that it did not constitute a machinegun. *Id.* After receiving further requests to classify similar devices, ATF reversed its view, classifying the device as a machinegun. ATF ordered the inventor "to register the devices he possessed or to surrender them," *id.* at 199, and issued a policy statement concluding that "devices attached to semiautomatic firearms that use an internal spring to harness the force of the recoil so that

the firearm shoots more than one shot with a single pull of the trigger are machineguns."
Rule, 83 Fed. Reg. at 66,516. The inventor sued, and the Court of Appeals for the Eleventh
Circuit upheld ATF's classification determination. *Akins*, 312 F. Appx. at 198. The Court of
Federal Claims subsequently concluded that ATF's determination did not give rise to a
compensable taking. *Akins v. United States,* 82 Fed. Cl. 619 (2008).

ATF subsequently received classification requests for other devices that, unlike the
Akins Accelerator, did not include internal springs. In a series of classification decisions
between 2008 and 2017, ATF provided its views that these devices were not machineguns
because, in the absence of internal springs or similar mechanical parts that would channel
recoil energy, the bump stocks did not fire "automatically." Rule, 83 Fed. Reg. at 66,517; *see*
*McCutchen*, 14 F.4th at 1361, 1368-69.

III.    <u>ATF Issues The Rule</u>

On October 1, 2017, a shooter attacked a large crowd attending an outdoor concert in
Las Vegas, Nevada. By using several AR-type rifles with attached bump-stock-type devices,
the shooter was able to fire several hundred rounds of ammunition in a short period of time,
killing 58 people and wounding approximately 500. Rule, 83 Fed. Reg. at 66,516. In response
to this incident, ATF took a fresh look at whether bump stocks may, in fact, fall within the
statutory definition of a "machinegun." ATF issued an advanced notice of proposed
rulemaking "to interpret the definition of machinegun" and consider "whether certain bump
stock devices fall within that definition." *Application of the Definition of Machinegun to "Bump*
*Fire" Stock and Other Similar Devices*, 82 Fed. Reg. 60929, 60930 (Dec. 26, 2017). The President
subsequently issued a memorandum to the Attorney General concerning "bump fire" stocks
and similar devices. *Application of the Definition of Machinegun to "Bump Fire" Stock and Other*
*Similar Devices*, 83 Fed. Reg. 7949 (Feb. 20, 2018). The memorandum noted that ATF had
previously "concluded that particular bump stock type devices were lawful to purchase and
possess." *Id*. The memorandum noted that after the Las Vegas mass shooting, the President
"sought further clarification of the law restricting fully automatic machineguns." *Id*. ATF

4

then issued a notice of proposed rulemaking proposing to clarify the precise meanings of certain terms contained in the statutory definition of a "machinegun," and that based on this reading, a bump stock fit within that definition. Following that process, ATF issued the Rule explaining that ATF was: (1) clarifying that "[t]he term 'machinegun' includes a [bump stock]," and (2) overruling its prior classification letters treating non-mechanical bump stocks as unregulated firearms parts. Rule, 83 Fed. Reg. at 66,553-54; *see id.* at 66,516, 66,531. The Rule also provided instructions for "current possessors" of such bump stocks: to avoid liability under the statute the devices should be destroyed or abandoned at the nearest ATF office. *Id.* at 66,530, 66,549.

## IV.    Challenges To The Rule And Procedural History

Several individuals and associations filed lawsuits in federal district courts around the country seeking to enjoin the Rule shortly after its issuance. *See Cargill v. Garland*, 57 F.4th 447, 456-57 (5th Cir. 2023) *aff'd* 602 U.S. 406 (2024); *Hardin v. ATF*, 65 F.4th 895, 897-98 (6th Cir. 2023); *Gun Owners of America, Inc., et al. v. Barr, et al.*, 19 F.4th 890, 897 (6th Cir. 2021) (*en banc*); *Aposhian et al. v. Barr et al.*, 958 F.3d 969, 977 (10th Cir. 2020) *vacated by Cargill*, 602 U.S. 406 (2024); *Guedes et al. v. ATF, et al.*, 920 F.3d 1 (D.C. Cir. 2019) (*per curiam*) *cert denied* 140 S. Ct. 789 (2020), *judgment vacated by Cargill*, 602 U.S. 406 (2024). Those plaintiffs contended that ATF had misinterpreted its statutory authority and that non-mechanical bump stocks do not constitute machineguns under Congress's definition of the term. *See Guedes*, 920 F.3d at 9, 17-32. In opposing those actions, the Government consistently took the position that the Rule was an interpretive, rather than a legislative, rule[1] and that ATF's determination that bump stocks are machineguns merely reflected the best interpretation of the statute. *See, e.g., Guedes*, 920 F.3d at 18-19.

---

[1] In contrast to a legislative rule, an interpretive rule "merely clarify[ies] existing duties for affected parties" and does not have the force and effect of law. *Stupp Corp. v. United States*, 5 F.4th 1341, 1352 (Fed. Cir. 2021).

Plaintiff here, by contrast, did not seek to enjoin the Rule's application; instead, he filed suit under the jurisdictional provisions of the Little Tucker Act, 28 U.S.C. § 1346(a), alleging that the Rule constituted a Fifth Amendment taking of their bump stocks. Compl, ECF No. 1, ¶¶ 48-54. Plaintiff designated the case as a putative class action covering "individuals or entities of the United States who purchased fewer than 15 bump-stock devices or bump-fire devices, lawfully possessed them and then destroyed them as required by the Final Rule." *Id.* ¶ 38. But, after initial briefing on Defendants' motion to dismiss, the Court stayed this case while similar takings claims were being litigated in the Federal Circuit. *See* Order, ECF No. 34.[2]

The Federal Circuit ultimately affirmed the lower courts' dismissal of those cases, holding that "the preexisting federal statutory prohibition on possession or transfer of 'machineguns,' 18 U.S.C. § 922(o), subject to a valid implementation by the Attorney General," meant that "Plaintiff lacked a property right in what they allege was taken— continued possession or transferability of their bump-stock-type devices." *McCutchen v. United States*, 14 F.4th 1355, 1365 (Fed. Cir. 2021). This rationale, the Court explained, was "different from, though related to . . . the grounds" relied upon by the Court of Federal Claims, which had dismissed the takings claim after concluding that "ATF acted 'pursuant to its police power.'" *Id.* at 1362, 1365 (citation omitted). One of the members of the panel concurred, explaining that he would have affirmed the judgment pursuant to the police power doctrine, as the lower court had. *Id.* at 1370-1380 (Wallach, J., concurring). The Federal Circuit denied a petition for rehearing *en banc* and the Supreme Court subsequently denied a petition for a writ of certiorari.

While these proceedings were ongoing challenges to the Rule's validity wound their way through courts. As relevant here, the Fifth Circuit panel initially concluded that the Rule

---

[2] The Federal Circuit has "exclusive jurisdiction" to review "final decision of a district court of the United States . . . if the jurisdiction of that court was based, in whole or in part" on the Little Tucker Act. 28 U.S.C. § 1295(a)(2).

was valid but the *en banc* Court reversed. *Cargill*, 57 F.4th 447. The Supreme Court granted certiorari and agreed with the Fifth Circuit that ATF exceeded its authority in issuing the Rule because a semiautomatic rifle equipped with a non-mechanical bump stock is not a "machinegun" under Federal firearms laws. 602 U.S. at 406.

Following *Cargill*, this Court lifted the stay and Plaintiff amended his complaint. *See* ECF No. 35. That amended complaint alleges that their bump stocks "were fully legal in the United States when Plaintiff acquired three of them, and they remained legal at all times until the Government demanded their surrender or destruction" on or before the effective date of the Rule. FAC ¶ 2. According to Plaintiff, the Rule's requirement that he and others like him destroy or surrender their devices affected a Fifth Amendment taking of property. FAC ¶¶ 45-47. In the alternative, Plaintiff alleges that the "Rule constitutes an illegal exaction because the ATF exceeded and contravened its statutory and regulatory authority granted by Congress" under Federal firearms law. FAC ¶¶ 53-57.

Defendants now move to dismiss.

## ARGUMENT

Plaintiff's complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) because it fails to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). Under that rule, dismissal must be granted unless "a complaint . . . contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted) (internal quotation marks omitted). In reviewing a Rule 12(b)(6) motion, "the court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (cleaned up). But here, Plaintiff's Takings Clause claim (Count I of the Amended Complaint) and the Illegal Exactions claim (Count II) both fail as a legal matter—and therefore lack the "facial plausibility" necessary to withstand dismissal. *Iqbal*, 556 U.S. at 678.

I.    **ATF's Determination that Bump Stocks Fall within the Statutory Prohibition on Machine Guns Did Not Effect a Compensable Taking**

The Takings Clause of the Fifth Amendment provides that private property shall not "be taken for public use, without just compensation." U.S. Const. amend. V. So, to receive compensation, a plaintiff must meet two requirements. First, he must demonstrate a protected "'property interest for purposes of the Fifth Amendment'" that has been infringed by "the government action." *McCutchen*, 14 F.4th at 1364 (quoting *Huntleigh USA Corp. v. United States*, 525 F.3d 1370, 1377 (Fed. Cir. 2008)). Second, he must demonstrate that the property was taken for "public use." *AmeriSource Corp. v. United States*, 525 F.3d 1149, 1153 (Fed. Cir. 2008). Here, however, Plaintiff fails to meet these requirements for three independent reasons.

A.    **ATF's Interpretive Rule Cannot Be A Taking**

A preliminary consideration in adjudicating all takings claims is whether the complaint has alleged "government action sufficient to invoke a takings analysis." *A&D Auto Sales, Inc. v. United States*, 748 F.3d 1142, 1153 (Fed. Cir. 2014). Government action must "legally compel[]" an obligation affecting private property for it "to give rise to a taking." *Garelick v. Sullivan*, 987 F.2d 913, 916 (2d Cir. 1993); *see also Dimare Fresh, Inc. v. United States*, 808 F.3d 1301, 1311 (Fed. Cir. 2015) (rejecting takings claim where the "government action [was] devoid of coercion, legal threat, regulatory restriction, or any binding obligation"). That can happen through a legislative rule that is issued pursuant to an agency's statutory authority and has the force and effect of law. *PDR Network, LLC v. Carlton & Harris Chiropractic*, Inc., 139 S. Ct. 2051, 2055 (2019). But that is not true for interpretative rules, which merely "advise the public of the agency's construction of the statutes and rules which it administers." *Perez v. Mortgage Bankers Ass'n*, 575 U.S. 92, 97 (2015) (quoting *Shalala v. Guernsey Mem. Hosp.*, 514 U.S. 87, 99 (1995) (citation and quotation marks omitted); *see also Stupp Corp. v. United States*, 5 F.4th 1341, 1352 (Fed. Cir. 2021) ("Legislative rules alter the landscape of individual rights and obligations, binding parties with the force and effect of law; interpretive rules, on the

other hand, merely clarify existing duties for affected parties."). Such rules cannot form the predicate for a takings claim because they do not provide legal compulsion for Plaintiff to surrender their property.

In issuing the Rule, ATF merely explained that possessing a bump stock violates 18 U.S.C. § 922(o), the criminal prohibition on machinegun ownership, a statute enacted in 1986. Because the statute banned machineguns and "ATF must . . . classify devices that meet the statutory definition of 'machinegun' as machineguns," Rule, 83 Fed. Reg. at 66,529, the Rule explained that "the restrictions imposed by the [NFA and GCA]" apply to bump stocks, as they have since 1986. *id.* at 66,520.[3] Moreover, the Rule directly states that its function is to "clarif[y] that bump-stock-type devices are machineguns that are subject to the NFA and GCA," *id.* at 66,515, undertaken pursuant to ATF's "authority to 'reconsider and rectify' potential classification errors," such as those regarding bump stocks. *Id.* at 66,516 (quoting *Akins v. U.S.*, 312 F. App'x 200). Further, in issuing the Rule, ATF determined that the "definitions for the terms 'single function of the trigger' and 'automatically'" contained in the Rule "represent the best interpretation of the statute," *i.e.*, what the statute has always meant. *Id.* at 66,521. These indicia firmly demonstrate that the Rule is a clarifying interpretation rather than a legislative action. *See Stupp*, 5 F.4th at 1352.[4] As a result, the Rule cannot, as a legal matter, provide the necessary legal compulsion for Plaintiff to destroy their bump stocks.

Attempting to resist this result, Plaintiff protests that the "Rule required owners of bump-stocks to surrender them to the Government or destroy them" by the effective date under threat of criminal penalty. FAC ¶ 4, 28-29. But these statements did not themselves

---

[3] In *Guedes et al. v. ATF et al.,* 920 F.3d 1, 17-20 (D.C. Cir. 2019) (*per curiam*), the D.C. Circuit determined that the Rule was a legislative rule, but the D.C. Circuit's judgment in *Guedes* was subsequently vacated by *Cargill*, and regardless, *Guedes* would not be binding here. The Supreme Court in *Cargill* did not address whether the Rule was legislative or interpretive.

[4] Although it is of course true that the Rule was published in the Federal Register, there is no prohibition on the Government invoking notice and comment rulemaking with respect to interpretive rules. *See Guernsey*, 514 U.S. at 99 (explaining that "interpretive rules do not require notice and comment").

create legal obligations; rather, they were ATF's announcement that it would not exercise its enforcement powers with respect to conduct occurring prior to the effective date of the Rule, even though it could legally do so.  That possessors of bump stocks needed to destroy or abandon the devices or potentially face criminal liability was merely the agency's announcement of how it would apply the longstanding criminal prohibition on machineguns, 18 U.S.C. § 922(o).  Agencies regularly make public statements articulating their views on a range of legal and factual issues.  But case after case has made clear that a Government action that itself "did not have a 'legal effect or impose a direct legal obligation on any party'" cannot effect a taking.  *Taylor v. United States*, 959 F.3d 1081, 1089 (Fed. Cir. 2020); *see, e.g.*, *Dimare Fresh*, 808 F.3d at 1311 (finding that statements by the Food and Drug Administration in press releases that a salmonella outbreak was linked to the consumption of certain tomatoes could not constitute the basis for a takings claim); *Breneman v. United States*, 57 Fed. Cl. 571, 583-85 (2003) (holding that Federal Aviation Administration's hazard determinations did not constitute Government action sufficient for takings claim where determinations were merely advisory).

To the extent Plaintiff had concerns about ATF's interpretation here—or did not wish to surrender his bump stock—the appropriate course was the one pursued by numerous other plaintiffs who challenged the Rule and sought to enjoin its application with respect to them. Those challenges provided Plaintiff a means to ensure that they would not face criminal liability on account of what they (and ultimately the Supreme Court) viewed as an erroneous interpretation of ATF's authorities.  And a number of those plaintiffs—including the plaintiff in *Cargill* itself—made specific arrangements for ATF to maintain possession of their bump stocks so they could be returned at the conclusion of the litigation.  *See, e.g.*, *Cargill*, No. 23-50856, ECF No. 37 at 3 (5th Cir., June 28, 2024) (explaining that Defendants had "informed Cargill that his bump stocks are available for pickup at the Austin ATF field office and has provided him with contact information for an ATF agent there with whom Cargill can arrange pickup").  Had Plaintiff followed the same course here, he too could have obtained the return

of his physical property.  But his strategic choice not to follow that course does not indicate that he suffered a taking, nor form a basis for retroactive compensation.

### B. If *Cargill* Is Read As Finding The Rule To Be Unauthorized For Takings Purposes, Plaintiff's Takings Claim Fails As A Matter of Law

The *Cargill* decision presents another barrier to Plaintiff's taking claim.  More than a century ago, the Supreme Court held that, for the "government [to] be liable [under the Takings Clause] it must appear that the officer who has physically taken possession of the property was duly authorized so to do, either directly by Congress or by the official upon whom Congress conferred the power."  *United States v. N. Am. Transp. & Trading Co.*, 253 U.S. 330, 333 (1920).  Stated differently, "[a] government action cannot be a taking . . . if the government actors lacked the 'authority' to take the action."  *Taylor v. United States*, 959 F.3d 1081, 1089 n.4 (Fed. Cir. 2020); *Acadia Tech., Inc. v. United States*, 458 F.3d 1327, 1330-31 (Fed. Cir. 2006) (explaining that "an uncompensated taking and an unlawful government action constitute two separate wrongs that give rise to two separate causes of action" and a "property owner is free either to sue in district court for asserted improprieties committed in the course of the challenged action or to sue for an uncompensated taking" under the Tucker Act (citations omitted)); *Rith Energy, Inc. v. United States*, 270 F.3d 1347, 1352-53 (Fed. Cir. 2001) (on petition for rehearing) (explaining that "in a takings case we assume that the underlying governmental action was lawful, and we decide only whether the governmental action in question constituted a taking for which compensation must be paid").  So, if the Supreme Court's determination in *Cargill* that the Rule was statutorily unauthorized is read to mean that the prohibition on bump stocks was unauthorized for takings purposes, then Plaintiff's takings claim is not cognizable.

To be sure, the Federal Circuit has recently complicated this analysis with its decision *Darby Development, Co., Inc. v. United States*, 112 F.4th 1017 (Fed. Cir. 2024).  There, the Court examined the meaning of authority for purposes of takings claims and concluded that the United States may potentially be subject to takings claims asserted by apartment owners as a

result of the CDC Rule limiting the right of such owners to evict tenants during the pandemic, even though the Supreme Court determined that the rule was likely invalid. *Id.* The Federal Circuit determined that the fact that the Supreme Court found the Government's eviction moratorium unauthorized by statute was insufficient to preclude takings liability, reasoning that for purposes of a takings claim "an action can be authorized . . . even if it is unlawful or done without legal authority." *Id.* at 1023. The panel in *Darby* ultimately establishes a more stringent test for what makes a government action "unauthorized . . . for taking-claim purposes." *Id.* at 1026-27. However, the time for the government to seek further review in *Darby* has not yet run, and the Court has yet to issue a mandate. Accordingly, Defendants preserve the argument that *Cargill's* invalidation of the Rule was sufficient to eliminate any takings liability given the possibility of further review in *Darby* being sought and granted.

### C.    ATF's Rule Constitutes An Exercise Of The Police Power That Cannot Give Rise To A Taking

Even if the Court disagrees on the first two threshold grounds, Plaintiff would still not be entitled to compensation for his bump stocks for the reason that Defendants had articulated when they first moved to dismiss this case: namely, no taking has occurred because ATF's Rule was a proper exercise of the government's police power.

1.    The Supreme Court has long recognized that not every Government action that affects property is "taken for a 'public use' in the context of the Takings Clause." *AmeriSource Corp. v. United States*, 525 F.3d 1149, 1153 (Fed. Cir. 2008). Among other things, the Government may prohibit the possession of property it determines to be "injurious to the health . . . or safety of the community" including contraband or dangerous weapons without that prohibition constituting a taking. *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 489 (1987) (citation omitted); *see Maryland Shall Issue, Inc. v. Hogan*, 963 F.3d 356, 359 (2020) (citation omitted), *cert. denied*, 141 S. Ct. 2595 (2021) (upholding state ban on bump stocks); *Holliday Amusement Co. of Charleston v. South Carolina*, 493 F.3d 404, 405-06 (4th Cir.

2007) (upholding ban on video gaming machines, and subjecting them to forfeiture); *Akins v. United States,* 82 Fed. Cl. 619, 622 (2008).

This principle—known as the police power doctrine—animates a long line of cases finding that certain laws protecting public safety do not constitute a taking even if the laws result in the destruction of private property. For example, in *Mugler* v. *Kansas*, 123 U.S. 623 (1887), the state of Kansas banned the manufacture or sale of liquor. In rejecting a takings claim brought by a distillery owner, the Supreme Court explained that a "prohibition simply upon the use of property for purposes that are declared, by valid legislation, to be injurious to the health, morals, or safety of the community, cannot, in any just sense, be deemed a taking." *Id.* at 668. The Supreme Court subsequently applied this principle in holding that the State of Virginia was not required to provide takings compensation to the owners of trees that were destroyed to prevent the spread of disease that threatened apple orchards. *Miller v. Schoene*, 276 U.S. 272, 279-80 (1928).

Numerous courts have applied this principle in rejecting takings claims arising from laws prohibiting the possession of dangerous firearms. *See Duncan v. Bonta*, 19 F.4th 1087, 1112 (9th Cir. 2021) (*en banc*), *vacated and remanded on other grounds*, 142 S. Ct. 2895 (2022); *Maryland Shall Issue,* 963 F.3d at 359; *Ass'n of N.J. Rifle & Pistol Clubs, Inc. v. Attorney Gen. N.J.*, 910 F.3d 106, 124 & n.32 (3d Cir. 2018), *abrogated on other grounds by New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022); *Oregon Firearms Fed. v. Kotek*, 682 F. Supp. 3d 874, 941-42 (D. Or. 2023) (applying *Mugler* and *Duncan* to find high capacity magazine ban not a taking). These decisions rest significantly on the broad principle that "[a] compensable taking does not occur when the state prohibits the use of property as an exercise of its police powers." *N.J. Rifle*, 910 F.3d at 124 n.32; *see also Duncan*, 19 F.4th at 1112 ("Nothing in the case law suggests that any time a state adds to its list of contraband—for example, by adding a drug to its schedule of controlled substances—it must pay all owners for the newly proscribed item.").

13

Of course, as this Court has previously noted, the police power is traditionally associated with States. *See* Mem. Op., ECF No. 17 at 10, 13. But it is well established that when "the federal government . . . engage[s], pursuant to one or more of its enumerated powers, in activities not unlike those engaged in by the states under their inherent sovereign powers to protect the public welfare," such activities are the exercise of a narrower "police power" that is a necessary and proper component of the enumerated power. 83 FR 66524 (cleaned up) (quoting *Fla. Rock Indus., Inc. v. United States*, 18 F.3d 1560, 1568 n.17 (Fed. Cir. 1994)); *see also Brooks v. United States*, 267 U.S. 432, 436 (1925) (When Congress "regulate[s] interstate commerce" by "punishing the use of such commerce . . . [to] harm [] the people of other states . . . it is merely exercising the police power"). Accordingly, state police power precedents can be "transpose[d] . . . [to] the Federal Government" because the state police power protects the general "welfare" and the "Federal Constitution exists, as stated in the preamble," to promote the general welfare. *Allied-General Nuclear Services v. United States*, 839 F.2d 1572, 1576 (Fed. Cir. 1988) (concluding thusly with respect to the preamble's "common defence" language); *cf. Cedar Point Nursery v. Hassid*, 594 U.S. 139, 160 (2021) (discussing "longstanding background restrictions on property rights" including "background limitations" of "traditional common law privileges").

For this reason, courts have frequently recognized that the "police power" exception applies to the seizure and destruction of contraband in service of constitutionally- enumerated powers, including the Commerce Clause power. *See, e.g.*, *Barnes v. U.S.*, 122 Fed. Cl. 581, 583 (Fed. Cl. 2015) (DEA seizure in connection with illegal possession of marijuana is "pursuant to the police power" and not within the scope of the Takings Clause); *AmeriSource Corp. v. U.S.*, 525 F.3d 1149, 1153-54 (Fed. Cir. 2008) (DOJ seizure of pharmaceuticals regulated pursuant to the Commerce Clause "in order to enforce criminal laws [is] a government action clearly within the bounds of the police power," and thus "not seized for public use within the meaning of the Fifth Amendment") (internal quotations omitted); *United States v. $7,990.00 in U.S. Currency*, 170 F.3d 843, 846 (8th Cir. 1999) (in enforcing criminal statute pursuant to

14

Commerce Clause authority, "the forfeiture of contraband is an exercise of the [federal] government's police power . . . [and] is not subject to the Fifth Amendment's Takings Clause"); *Kam-Almaz v. U.S.*, 682 F.3d 1364, 1372 (Fed. Cir. 2012) ("[l]awful seizures" by the federal government pursuant to the "authority to search and seize property at our nation's borders" fall within the police power exception to the Fifth Amendment).

2.      Applying this principle in prior litigation over the bump-stock rule, the Court of Federal claims correctly concluded that Plaintiff's "bump-stock devices were not 'taken for a public use,' within the meaning of the Takings Clause" because "the prohibition on possession involved an exercise of the government's police power." *McCutchen*, 145 Fed. Cl. at 52. As that court explained after extensively surveying the caselaw, "the purpose of promulgating the Final Rule was to promote public safety and to prevent public harm," which satisfied "the narrow confines of the police power." *Modern Sportsman, LLC v. United States*, 145 Fed. Cl. 575, 583 (2019). Those decisions reflected a proper application of the police power doctrine under established precedent—and this Court should follow their reasoning.

To be sure, the Federal Circuit affirmed these cases "on a threshold ground that differs from, though is related to, the Claims Court's grounds"—namely, that bump stock owners had no protected property interest in the first place. *McCutchen*, 14 F.4th at 1364. But the Federal Court's discussion makes clear that it adopted this alternative rationale not because it viewed the Court of Federal Claims as having erred. *Id.* Rather, the Federal Circuit explained that analyzing the application of "police power" in this context could involve difficult "line-drawing" and doctrinal questions, which the panel believed could be avoided on alternative grounds. *Id.* That, however, merely reflects the inherent difficulties of takings doctrine itself as it has been elucidated by the Supreme Court—and does not suggest the doctrine is inapplicable. *McCutchen*, 14 F.4th at 1363 (noting the conflicting language in *Kelo v. City of New London*, 545 U.S. 469, 480 (2005) and *Hawaii Housing Authority v. Midkiff*, 467 U.S. 229, 240 (1984) regarding when compensation might be due).

15

*Cargill* does not suggest otherwise.  Even if the Supreme Court's holding that the Rule was beyond ATF's statutory authority did not defeat Plaintiff's taking claim outright, there is no reason to conclude that the Government's police power vanishes merely because it was based on a legal mistake or factual error.  Indeed, a contrary rule would produce absurd results in a wide variety of Government applications of its police power.  For example, it is well accepted that the Government's seizure of property for use as evidence in a criminal proceeding does not constitute a taking as a matter of law.  *See Jenkins v. United States*, 71 F.4th 1367, 1373-74 (Fed. Cir. 2023).  The fact that a Court later invalidates the seizure on some basis does not transform the initial Government action at issue in seizing the evidence into a taking under the Fifth Amendment.  *See id.*; *Acadia Tech*, 458 F.3d at 1330-31.

Indeed, this conclusion would only be strengthened if this Court were to follow the Federal Circuit panel's decision in *Darby.*  As noted above, that panel concluded that, for purposes of a takings claim, a government action can be "authorized" even if it subsequently found "unlawful."  *Darby*, 112 F.4th at 1027.  The relevant test, as the panel explained, is whether government agents acted "'within the general scope of their duties'" or whether the government action was "'a natural consequence of congressionally approved measures' or 'pursuant to the good faith implementation of a congressional act.'"  *Id.* at 1024 (quoting *Del-Rio Drilling Programs, Inc. v. United States*, 146 F.3d 1358, 1362 (Fed. Cir. 1998)).  But applying those factors here would only highlight the applicability of the police power doctrine because (1) ATF's Rule was unquestionably within the general scope of ATF's duties to regulate machineguns for the purpose of protecting public safety and (2) within the agency's good faith implementation of a statute.  *See Modern Sportsman*, 145 Fed. Cl. at 583 (explaining that ATF was "[a]cting pursuant to [its] authority [bestowed by Congress] when promulgating the Rule.").  That is, ATF's issuance of the Rule would constitute the type of authorized government action designed to safeguard the public—which precludes Plaintiff's takings claim.  *See Acadia Tech*, 458 F.3d at 1330-31 (holding that whether a seizure was determined to be unlawful under the customs statutes would not transform the seizure into a taking).

\*    \*    \*

In short, Plaintiff's takings claim has no viable avenue. Three separate threshold doctrines bar it. It should therefore be dismissed.

## II.    Plaintiff Does Not State A *Per Se* Physical Takings Claim

Setting aside the threshold defects, Plaintiff's complaint fails to allege a compensable "physical taking of private property" under established precedent. FAC at 14, ¶ 46.

To state a physical takings claim, a plaintiff must allege an actual physical invasion or appropriation of its property. *See Cedar Point*, 594 U.S. at 147-48; *Horne v. Dep't of Agric.*, 576 U.S. 350, 359-60 (2015); *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 537-38 (2005); *United States v. Pewee Coal Co.,* 341 U.S. 114, 115-17 (1951). For example, *Horne* involved a USDA order requiring raisin growers to physically reserve a specified portion of their crop for transfer to the Government each year, free of charge. *Horne*, 576 U.S. at 355. Because "[a]ctual raisins are transferred from the growers to the Government" and "[t]itle to the raisins passes to the [Government]," the reserve requirement is a "clear physical taking" requiring just compensation. *Id.* at 361-62.

Here, by contrast, ATF did not mandate that bump stock owners transfer title of their bump stocks to the government or any third party. Rather, the Rule "encouraged destruction" as the preferred option for disposal of bump stocks and stated that, if delivered to the Government, ATF "will . . . destroy [the] devices in-house." 83 Fed. Reg. at 66,551; *see also id.* at 66,530 (providing detailed instructions for destroying the device). In this way, the government did not "physically take[] property *for itself* or someone else" but instead merely "restricted a property owner's ability to use his own property." *Cedar Point*, 594 U.S. at 149.

Plaintiff's physical taking claim therefore runs aground on the "settled difference in [] takings jurisprudence between appropriation and regulation"—a distinction the Supreme Court has applied even when the two may "have the same economic impact." *Horne*, 576 U.S. at 362; *see also Miller v. Schoene*, 276 U.S. 272, 279-80 (1928) (no taking where government "order[ed] the destruction" of landowner's trees). Because the Rule did not require that the

17

"articles [be] seized" or impose a "physical appropriation" of the devices, no physical taking occurred. *Horne*, 576 U.S. at 359.

**III.**    **Plaintiff Does Not State A Regulatory Takings Claim Under *Penn Central***

Plaintiff also cannot assert a regulatory takings claim under the multi-factor test identified in *Penn Central Transportation Co. v. City of New York*, 438 U.S. 104, 124 (1978).[5] Under *Penn Central,* a court considers:  (1) the character of the Government's actions, (2) the property holder's investment backed expectations, and (3) the economic impact on the property holder. *Id.*  These factors weigh against Plaintiff.

With respect to the character of the Government's actions, it is well established that a restriction "directed at the protection of public health and safety . . . is the type of regulation in which the private interest has traditionally been most confined and governments are given the greatest leeway to act without the need to compensate those affected by their actions." *Rose Acre Farms, Inc. v. United States*, 559 F.3d 1260, 1281 (Fed. Cir. 2009); *see Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 489-90 (1987).  As noted above, courts have long recognized that the Government may act to preclude the possession of dangerous goods or contraband without engaging in a taking.  *See Miller*, 276 U.S. at 279-80; *Mugler*, 123 U.S. at 665.  Moreover, as an interpretive rule, the Rule constitutes the type of Government action that courts have found does not support a taking because the act does not result in legal compulsion or obligation.  *Dimare Fresh*, 808 F.3d at 1309.

In addition, Plaintiff had no reasonable expectations that their property would go unregulated. *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1005-06 (1984); *Appolo Fuels, Inc. v. United States*, 381 F.3d 1338, 1349 (Fed. Cir. 2004).  In determining whether a property owner

---

[5]    Plaintiff has not raised a regulatory takings claim in his complaint; rather, the complaint only alleges that ATF's rule constitutes a *physical* taking.  FAC ¶ 46, *id.* at 14 (seeking a declaration "that the Government's action . . . constituted a physical taking").  This failure to assert a regulatory taking constitutes waiver of the claim.  Nevertheless, given that Plaintiff seeks to certify a class that includes bump stock owners who themselves "destroyed them as required," FAC ¶ 35, Defendant provides this analysis of the regulatory taking factors in the event the Court deems such analysis appropriate.

has established reasonable investment-backed expectations, the Federal Circuit has articulated three criteria: (a) "whether the plaintiff operated in a 'highly regulated industry'"; (b) "whether the plaintiff was aware of the problem that spawned the regulation at the time it purchased the allegedly taken property"; and (c) "whether the plaintiff could have 'reasonably anticipated' the possibility of such regulation in light of the 'regulatory environment' at the time of purchase." *Appolo Fuels, Inc. v. United States*, 381 F.3d 1338, 1349 (Fed. Cir. 2004) (quoting *Commonwealth Edison Co. v. United States*, 271 F.3d 1327, 1348 (Fed. Cir. 2001) (en banc)).

The *Appolo* factors, when applied to undisputable facts and the allegations of the complaint, show that Plaintiff has no plausible claim of a regulatory taking. To start, an individual's "reasonable investment-backed expectations are greatly reduced in a highly regulated field," *Branch v. United States*, 69 F.3d 1571, 1581 (Fed. Cir. 1995), such as the firearms industry, *see Mitchell Arms, Inc. v. U.S.*, 7 F.3d 212, 216 (Fed. Cir. 1993). Perhaps not surprisingly, then, Plaintiff fails to allege anything specific about his "investment-backed" expectations beyond noting that ATF had issued a "series of classification decisions" over the course of a decade concluding that non-mechanical bump-stocks were not prohibited. FAC ¶ 18-21. But, as the Federal Circuit has already highlighted, although ATF's classification letters "may generally be relied upon by their recipients as the agency's official position concerning the status of the firearms under Federal firearms laws," the "classifications are subject to change if later determined to be erroneous or impacted by subsequent changes in the law or regulations." *See McCutchen*, 14 F.4th at 1368-69 (citing Bureau of Alcohol, Tobacco, Firearms and Explosives, National Firearms Act Handbook § 7.2.4.1) (emphasis omitted). In any event, an owner of personal property "'ought to be aware of the possibility that new regulation might even render his property economically worthless.'" *See Lucas v. S. Carolina Coastal Council*, 505 U.S. 1003, 1027-28 (1992). ATF's prior classification letters concerning bump stocks did not provide Plaintiff with property rights; the letters were subject to change, had changed in the past, and did not protect the Plaintiff from the Government

19

applying long-standing Federal firearms laws to devices that pushed the boundary of prohibited weapons. *See McCutchen*, 14 F.4th at 1368-70.

By operating in such a highly regulated environment Plaintiff should have been fully aware that their bump stocks might be interpreted to be machineguns given that the devices tested the border of the statutory definition, and any investment-backed expectations were highly diminished as a result. Plaintiff therefore have no viable regulatory takings theory.

## IV. Plaintiff Fails To State A Cognizable Illegal Exaction Claim

The Court should also dismiss Count II of the amended complaint because Plaintiff fails to state a cognizable illegal exaction claim.

The Federal Circuit has explained that "an illegal exaction claim may be maintained when 'the plaintiff has paid money over to the Government, directly or in effect, and seeks return of all or part of that sum' that 'was improperly paid, exacted, or taken from [him] in contravention of the Constitution, a statute, or a regulation.'" *Aerolineas Argentinas v. United States*, 77 F.3d 1564, 1572-73 (Fed. Cir. 1996) (quoting *Eastport S.S. Corp. v. United States*, 372 F.2d 1002, 1007 (Ct. Cl. 1967)). Thus, a valid illegal-exaction claim must satisfy two elements: (1) money was taken by the Government; and (2) in doing so, the Government violated a provision of the Constitution, a statute, or a regulation. *Piszel v. United States*, 121 Fed. Cl. 793, 801 (2015), *aff'd*, 833 F.3d 1366 (Fed. Cir. 2016) (citation omitted). The first prong of this two-part analysis may be shown where money was paid directly to the Government, or was paid to others at the direction of the Government to meet a governmental obligation. *Aerolineas Argentinas*, 77 F.3d at 1573. Indeed, the "essence of an illegal exaction is when 'the government has the citizen's money in its pocket.'" *Columbus Regional Hosp. v. United States*, 990 F.3d 1330, 1348 (Fed. Cir. 2021) (citation omitted).

Plaintiff's proposed illegal exaction claim suffers from a glaring, fatal flaw—Plaintiff has not, and cannot, allege that they paid money to the Government or to a third party at the direction of the Government to satisfy a Government obligation. *See Aerolineas Argentinas*, 77 F.3d at 1572-73. Indeed, it is black letter law that an illegal exaction claim must be predicated

on the payment of money. *Piszel v. United States*, 833 F.3d 1366, 1382 (Fed. Cir. 2016). For example, in *Piszel*, the plaintiff brought an illegal exaction claim alleging that the Government as conservator for Freddie Mac caused Freddie Mac to withhold severance payments to plaintiff. The Federal Circuit rejected the illegal exaction claim because "[n]o facts as alleged in the complaint concern the payment of money by Mr. Piszel," and accordingly, "there was no exaction here because there was no payment." *Id.* at 1382. This requirement—that a plaintiff alleging an illegal exaction show that it "has paid money over to the [g]overnment, directly or in effect, and seeks return of all or part of that sum"—derives from the jurisdictional requirements of the Little Tucker Act, and is therefore unwaivable. *Nat'l Veterans Legal Servs. Program v. United States*, 968 F.3d 1340, 1347-48 (Fed. Cir. 2020).

Contrary to this clear Federal Circuit precedent, Plaintiff are seeking to create a new category of claim where no money has been paid. This type of an illegal exaction claim lacks any legal basis—and would contravene the jurisdictional limits that the Little Tucker Act imposes. *See id.* at 1347 & n.7 (explaining the jurisdictional requirements of the Little Tucker Act and noting that it "follows the same rules as its bigger sibling, the Tucker Act, 28 U.S.C. § 1491(a)(1), which assigns jurisdiction exclusively to the Court of Federal Claims regardless of the monetary amount claimed"); *see generally Boeing Co. v. United States*, 968 F.3d 1371, 1382-83 (Fed. Cir. 2020) (explaining the jurisdictional foundation for illegal exaction claims as analogs to contract and money-mandating-statute claims). And Plaintiff cannot paper over this flaw by claiming that the Rule somehow "enriched the Government at Plaintiff's expense." FAC ¶ 57. As detailed above, the Rule was in no way designed to benefit ATF and did not mandate that Plaintiff transfer title to their property. Instead, the Rule merely gave Plaintiff the option to "abandon" their bump stocks at an ATF office as a matter of convenience if they did not wish to destroy the bump stocks themselves. Plaintiff do not— and cannot—explain how this is at all analogous to the type of wrongful payments or tax suits

that the illegal-exaction doctrine addresses.  *See, e.g.*, *Nat'l Veterans Legal Servs.*, 968 F.3d at 1347 (discussing the types of suits brought under the illegal exaction theory).

Accordingly, Plaintiff fail to state an illegal exaction claim in the absence of a monetary payment.  That claim should likewise be dismissed.

## CONCLUSION

For these reasons, the Court should dismiss Plaintiff's amended complaint for failure to state a claim.

Dated:  October 28, 2024                                      Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney
General

BRIGHAM J. BOWEN
Assistant Branch Director
Federal Programs Branch

*/s/  Alexander V. Sverdlov*
ALEXANDER V. SVERDLOV
(NY Bar 4918793)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Tel: (202) 305-8550
alexander.v.sverdlov@usdoj.gov

*Counsel for Defendant*