**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| BRIAN P. LANE, individually and, on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>THE UNITED STATES,<br><br>*Defendant*. | Civil Action No. 3:19-cv-01492-X<br>Judge Brantley Starr |

## <u>DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS</u>

YAAKOV M. ROTH
Acting Assistant Attorney General

PATRICIA M. McCARTHY
Director

ERIC P. BRUSKIN
Assistant Director

NATHANAEL B. YALE
(NY Bar 4417861)
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, DC 20044
Telephone: (202) 616-0464
Facsimile: (202) 353-0461
nathanael.b.yale@usdoj.gov

ANDREW I. WARDEN
Assistant Branch Director
Federal Programs Branch

April 15, 2025                                    *Attorneys for Defendant*

In 2018, the Department of Justice's (DOJ) Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) issued a rule clarifying its position that bump stocks fall within the scope of the statutory definition of machine gun. *Bump-Stock-Type Devices*, 83 Fed. Reg. 66,514 (Dec. 26, 2018) (Rule). Plaintiff Brian P. Lane subsequently filed this action alleging that the Rule constituted a Fifth Amendment taking or an illegal exaction.

On June 14, 2024, the Supreme Court held in *Garland v. Cargill*, 602 U.S. 406 (2024), that a bump stock is not a "machinegun" under the statutory definition. As the United States explained in its motion to dismiss, ECF No. 51, the government's ultimately incorrect interpretation that bump stocks fall within the Federal firearm statutes did not effect either a *per se* physical or regulatory taking, or a regulatory taking under the multi-factor test set forth in *Penn Central Transportation Co. v. City of New York*, 438 U.S. 104, 124 (1978).[1] The Rule did no more than purport to reasonably regulate personal property, and the fact that the Rule was subsequently challenged and invalidated did not convert it into a taking.

Plaintiff's illegal exaction claim fares no better. No monetary payments have been made, and thus no exaction of money has occurred, because of the Rule.

The Court should therefore dismiss the complaint for failure to state a claim.

## ARGUMENT

### I.    Plaintiff Fails To State A Physical Taking

As established in our motion, Mr. Lane fails to state a physical taking. Def. Mot. 17-18. As he acknowledges, to state a physical takings claim, a plaintiff must allege "an actual physical invasion or appropriation of its property." Pl. Opp. 17 (citing *Horne v. Dep't of Agric.*, 576 U.S. 350, 359-60 (2015)); *see Cedar Point Nursery v. Hassid*, 594 U.S. 139, 147-48 (2021); *Lingle v. Chevron U.S.A. Inc.*, 544

---

[1] After further consideration, the government is withdrawing the argument that the police power doctrine precludes the finding of a taking here.

U.S. 528, 537-38 (2005); *United States v. Pewee Coal Co.,* 341 U.S. 114, 115-17 (1951).  Mr. Lane cannot assert a physical takings claim because he does not allege that the government physically seized or appropriated his bump stocks.  Def. Mot. 17-18.   According to Mr. Lane, he adequately pleaded an actual physical invasion or appropriation by alleging that the Rule required bump stock owners to destroy or surrender the devices to ATF.  Pl. Opp. 17.  As an initial matter, he continues to misread the Rule which merely clarified that bump stocks were machine guns, and therefore illegal to possess under longstanding statutory law.  *See* Rule, 83 Fed. Reg. at 66,514-16, 66,553-54.  Any statements in the Rule regarding the destruction or abandonment of the devices was simply the natural consequence of the devices being interpreted to be machine guns under Federal law.

The primary case relied on by Mr. Lane for his physical takings claim, *Horne v. Dep't of Agric.,* 576 U.S. 350, 359-60 (2015), fails to advance his argument.  In *Horne*, the Court found a "clear physical taking" because there was a "physical appropriation" of the raisins by the government.  *Id.* at 361, 364.  Here, in contrast, the government did not require that plaintiff transfer the bump stocks to the government, nor did the government seize any devices or otherwise physically invade Mr. Lane's property.  *See Maryland Shall Issue, Inc. v. Hogan*, 963 F.3d 356, 366-67 (4th Cir. 2020) (explaining that *Horne* applies to a "direct appropriation" of property).  Mr. Lane asserts that "the Constitution is concerned with means as well as ends."  Pl. Opp. 17 (citing *Horne*, 576 U.S. at 362).  But that principle cuts against his argument here, because there has been no seizure or appropriation.

That the government's interpretation was ultimately determined to be incorrect in *Cargill* does not transform a permissible regulation of personal property into a physical taking.  And for takings claim purposes, it is well-established that a taking cannot rest on the argument that a taking exists *because* a government action is unlawful, which would necessarily be the case here.  *See Lion Raisins, Inc. v. United States*, 416 F.3d 1356, 1369-70 (Fed. Cir. 2005).

2

II.    **Plaintiff Fails To State A Regulatory Taking**

In his complaint, Mr. Lane only alleges a physical taking, Am. Compl. ¶ 46, and therefore any regulatory takings claim is waived.  In any event, even if the Court were to consider Mr. Lane's arguments that he stated a *per se* regulatory takings claim or a regulatory takings claim, a claim under either theory is unavailing.

First, with respect to a *per se* regulatory takings claim under *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003 (1992), the Supreme Court in *Lucas* itself recognized that its *per se* rule would generally be inapplicable with respect to personal property because an owner of personal property "ought to be aware of the possibility that new regulation might even render his property economically worthless." *Lucas*, 505 U.S. at 1027-28.  Accordingly, courts have frequently limited the *Lucas* rule to claims involving real property.  *See, e.g.*, *Maryland Shall Issue*, 963 F.3d at 365-67; *Hawkeye Commodity Promotions, Inc. v. Vilsack*, 486 F.3d 430, 441 (8th Cir. 2007) ("[I]t appears that Lucas protects real property only."); *Unity Real Estate Co. v. Hudson*, 178 F.3d 649, 674 (3d Cir. 1999) ("[T]he categorical approach has only been used in real property cases."); *see also 1256 Hertel Ave. Assocs., LLC v. Calloway*, 761 F.3d 252, 264 (2d Cir. 2014) (*Lucas* refers to "regulation that deprives '*land*' (not 'property') of all economically beneficial use") (emphasis in original).[2]  And, contrary to Mr. Lane's contention, Pl. Opp. 18-19, *Andrus v. Allard*, 444 U.S. 51 (1979), does not establish that *Lucas* applies here.  At no point does *Andrus* hold or suggest that a prohibition on possessing personal property must constitute a *per se* taking; nor is it fairly read as dictating the rule set forth in *Lucas* over a decade later with respect to real property.

---

[2] Mr. Lane suggests that the Federal Circuit has resolved the application of the *per se* rule in *Lucas* to personal property, *see* Pl. Opp. 18, but that is incorrect.  *See McCutchen v. United States*, 145 Fed. Cl. 42, 54-56 (2019) *aff'd on other grounds*, 14 F.4th 1355 (Fed. Cir. 2020) (explaining the Federal Circuit's treatment of *Lucas* with respect to personal property and holding that the Rule did not effect a *per se* regulatory taking).

Mr. Lane also cannot assert a plausible regulatory takings claim under the multi-factor *Penn Central* test. Def. Mot. 18-20. As a preliminary matter, with respect to the character of the government action prong of *Penn Central*, because the Rule is an interpretive rule that did not legally compel plaintiff to destroy his bump stocks, it cannot support plaintiff's takings claims. Def. Mot. 8-11, 18. Mr. Lane contends that the Rule was a legislative rule that changed the legal rights and obligations of the public with respect to bump stocks. Pl. Opp. 4-6. But this contention is incompatible with the plain language of the Rule, which explained that its purpose was to express ATF's belief that bump stocks fell within the longstanding statutory definition of machine gun. Rule, 83 Fed. Reg. at 66,529 ("[T]he impetus for this rule is the Department's belief, after a detailed review, that bump-stock-type devices satisfy the statutory definition of 'machinegun.'"). In other words, the only legal foundation for the prohibition was Congress' statutory ban on new machineguns, *not* the Rule itself. *Id.* at 66,535 ("[T]he Department has concluded that the [National Firearms Act] and [Gun Control Act] require regulation of bump-stock-type devices as machineguns."). Thus, the plain language of the Rule conclusively establishes that it was a clarifying interpretation rather than a legislative action.

Mr. Lane suggests that the Rule is legislative because "ATF explicitly invoked its congressionally delegated authority." Pl. Opp. 5. But the authority cited is merely the Attorney General's authority to "prescribe only such rules and regulations as are necessary to carry out" the GCA and NCA, *see* 18 U.S.C. § 926(a). Congress would not "have intended, and expected, courts to treat [the] rule" as legislative given the limited scope of this delegation. *See Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158, 173 (2007). And as previously stated, the plain language of the Rule establishes that ATF was announcing the best interpretation of the statute and not exercising delegated legislative authority. *E.g.*, Rule, 83 Fed. Reg. at 66,529. Mr. Lane also suggests that rules issued through the notice and comment rulemaking process are legislative rules, Pl. Opp. 6-7, but

there is no bar on the government using notice and comment rulemaking for interpretive rules, *see Shalala v. Guernsey Mem. Hosp.*, 514 U.S. 87, 99 (1995). Instead, the use of the notice-and-comment process here simply reflected the government's recognition of the importance of notifying bump stock possessors of its changed understanding of the statutory terms. *See* 83 Fed. Reg. 66,523.[3]

In any event, even if the Rule were determined to be legislative, the character of the government action prong would still not support a taking. To start, plaintiff does not dispute that a restriction "directed at the protection of public health and safety . . . is the type of regulation in which the private interest has traditionally been most confined and governments are given the greatest leeway to act without the need to compensate those affected by their actions." *Rose Acre Farms, Inc. v. United States*, 559 F.3d 1260, 1281 (Fed. Cir. 2009); *see Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 489-90 (1987). According to plaintiff, however, under *Penn Central*, the character of the government action must be viewed in the context of the fact that the Supreme Court in *Cargill* ultimately found that ATF's interpretation was invalid. Pl. Opp. 19-20. He cites no precedent for this contention, and, once again, this statement contradicts numerous decisions of the Federal Circuit that have held that a takings claim cannot be premised on the allegation that a taking exists because the government action is unlawful. *See Lion Raisins*, 416 F.3d at 1369-70.

---

[3] Mr. Lane's attempt to rely on language in *Guedes et al. v. ATF et al.,* 920 F.3d 1, 17-20 (D.C. Cir. 2019) (*per curiam*), and *Aposhian et al. v. Barr et al.*, 958 F.3d 969, 979-81 (10th Cir. 2020), addressing the legislative/interpretive rule distinction, Pl. Opp. 4-6, is unavailing. In adjudicating the district court's denial of preliminary injunctive relief, the D.C. Circuit in *Guedes* found that the Rule was a legislative rule, 920 F.3d at 17-20, but later entered judgment for the government, holding that the Rule was the best interpretation of the statute and that it need not reach the issue of whether the Rule was legislative or interpretive. *Guedes et al. v. ATF et al.,* 45 F.4th 306, 313 (D.C. Cir. 2022), *vacated by Cargill*, 144 S. Ct. 2676 (2024). The Tenth Circuit in *Aposhian* also found the Rule to be legislative in nature, but the Supreme Court in *Cargill* later vacated that decision. *Aposhian et al. v. Barr et al.*, 958 F.3d 969, 979-81 (10th Cir. 2020), *vacated by Cargill*, 602 U.S. 406 (2024). Neither *Guedes* nor *Aposhian* are binding here, and the Supreme Court in *Cargill* did not address whether the Rule was legislative or interpretive.

He is likewise incorrect in asserting that the character of the government action prong weighs in favor of a taking because of "ATF's history of repeatedly assuring the public that bump stocks are not machine guns." Pl. Opp. 20. Referencing ATF's classification letters, Mr. Lane contends that on "ten separate occasions" ATF assured the public that bump stocks did not fall within the statutory definition of machine gun. Pl. Opp. 20. But the Federal Circuit in *McCutchen v. United States*, 14 F.4th 1355 (Fed. Cir. 2020) already persuasively rejected this argument in a related context explaining that although such letters "may generally be relied upon by their recipients as the agency's official position concerning the status of the firearms under Federal firearms laws," the "classifications are subject to change if later determined to be erroneous or impacted by subsequent changes in the law or regulations." *See McCutchen*, 14 F.4th at 1368-69 (citation omitted). ATF's prior classification letters concerning bump stocks did not provide plaintiffs with property rights; the letters were subject to change and had changed in the past. *See McCutchen*, 14 F.4th at 1368-70.

In addition, with respect to the second prong of *Penn Central*, Mr. Lane had no reasonable investment-backed expectations to plausibly support a regulatory takings claim. Def. Mot. 19-20; *Appolo Fuels, Inc. v. United States*, 381 F.3d 1338, 1349 (Fed. Cir. 2004) (citing factors). An individual's "reasonable investment-backed expectations are greatly reduced in a highly regulated field," *Branch v. United States*, 69 F.3d 1571, 1581 (Fed. Cir. 1995), such as the firearms industry. *See Mitchell Arms, Inc. v. United States.*, 7 F.3d 212, 216 (Fed. Cir. 1993). Although Mr. Lane acknowledges that the firearms industry is highly regulated, he argues that the Second Amendment is a "countervailing consideration," and that unlike in *Appolo*, which involved coal mining, there are "constitutional limits to regulation." Pl. Opp. 20-21. Plaintiff's argument misses the mark. Neither this case nor *Cargill* included a Second Amendment claim, and in any event, there is no reasonable dispute that the government can regulate dangerous or unusual weapons consistent with the Second Amendment. *See District of Columbia v. Heller*, 554 U.S. 570, 627 (2008). With respect to the remaining *Appolo*

6

factors, Mr. Lane fails to make any specific allegations concerning his expectations other than relying on ATF classification letters to other applicants. *See* Pl. Opp. 21. But, as detailed above, the Federal Circuit has already rejected the significance of these letters in the very context of a takings claim. *See McCutchen*, 14 F.4th at 1368-70.

III.    **If *Cargill* Can Be Viewed As Finding The Rule To Be Unauthorized For Takings Purposes, Plaintiff's Takings Claim Fails As A Matter of Law**

In our motion, we established that if the Supreme Court's determination in *Cargill* that the Rule was statutorily unauthorized means that the Rule is also unauthorized for takings purposes, then plaintiff's takings claim is not cognizable. Def. Mot. 11-12. Unsurprisingly, Mr. Lane relies heavily on the Federal Circuit's recent decision in *Darby Development, Co., Inc. v. United States*, 112 F.4th 1017 (Fed. Cir. 2024), and that decision's analysis of the meaning of authority for takings claim purposes. Pl. Opp. 9-11. We acknowledge that under the reasoning in *Darby*, the Supreme Court's decision in *Cargill* would not render the issuance of the Rule unauthorized for takings purposes. But the mandate has yet to issue in *Darby*, and a request for further review of that decision by the Federal Circuit is pending.[4]

IV.    **Plaintiff Fails To State an Illegal Exaction Claim**

The Court must also dismiss Mr. Lane's illegal exaction claim because he has not, and cannot, allege that he paid money to the government or to a third party at the direction of the government to satisfy a government obligation. Def. Mot. 20-23.

Mr. Lane attempts to redefine illegal exaction claims as not requiring a payment of money by seizing on language in Federal Circuit caselaw indicating that a payment can be "in effect," Pl. Opp.

---

[4] On January 10, 2025, the government filed a petition for rehearing *en banc* in *Darby*, and the *Darby* plaintiffs filed a response on April 11, 2025. *Darby Development, Inc. v. United States*, No. 22-1929 (Fed. Cir.) at ECF Nos. 92, 104. As of the filing of this brief, the Federal Circuit has not issued a decision on the government's petition.

22-23.  But the "in effect" language was meant to capture the factual scenario where the government mandates an actual payment to a third party, and therefore a payment was not made directly to the United States.  *See Aerolineas Argentinas v. United States*, 77 F.3d 1564, 1572-73 (Fed. Cir. 1996).

That an illegal exaction claim *must* involve a payment of money aligns with the limited jurisdictional reach of the Tucker Act and Little Tucker Act.  The Federal Circuit has set forth the jurisdictional foundation for illegal exaction claims, explaining that they are one of three general types of claims against the government under those statutes, in addition to contract and money-mandating-statute claims.  *See Boeing Co. v. United States*, 968 F.3d 1371, 1382-83 (Fed. Cir. 2020).  In particular, the Federal Circuit has differentiated between illegal exaction claims, where "the plaintiff *has paid money* over to the Government, directly or in effect, and seeks return of all or part of that sum[,]" and money-mandating-statute claims,  which are "demands in which money *has not been paid* but the plaintiff asserts that he is nevertheless entitled to a payment from the treasury."  *Boeing*, 968 F.3d at 1382-83 (emphasis added).  Mr. Lane attempts to manufacture a new type of monetary claim under the Little Tucker Act—where no money has been paid, and there is no money-mandating statute or regulation that requires payment by the Government.  There is simply no legal support for this theory.

## **CONCLUSION**

For these reasons, and those stated in our motion to dismiss, the Court should dismiss plaintiff's amended complaint for failure to state a claim.

Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General

PATRICIA M. McCARTHY
Director

ERIC P. BRUSKIN
Assistant Director

/s/ Nathanael B. Yale
NATHANAEL B. YALE
(NY Bar 4417861)
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, DC 20044
Telephone:  (202) 616-0464
Facsimile:   (202) 353-0461

ANDREW I. WARDEN
Assistant Branch Director
Federal Programs Branch

April 15, 2025                                  *Attorneys for Defendant*