UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BRIAN P. LANE, Individually and on behalf of all others similarly situated, | § § § | |
| *Plaintiff,* | § § | |
| v. | § § § | Civil Action No. 3:19-CV-1492-X |
| THE UNITED STATES, | § § § | |
| *Defendant.* | § § | |

**MEMORANDUM OPINION AND ORDER**

This case is a putative class action involving whether a government rule banning bump stocks amounts to a taking under the Fifth Amendment or an impermissible exaction (whether the government benefits from taking money or property). The government moved to dismiss the takings and exaction claims. (Doc. 51). After reviewing the motion, the briefing, and applicable law, the Court **GRANTS IN PART** and **DENIES IN PART** the government's motion to dismiss. The Court **DENIES** the motion as to the takings claim because plaintiff Brian Lane pled that the government took or made him destroy his bump stocks and did not compensate him. But the Court **GRANTS** the motion as to Lane's illegal exaction claim. Exaction claims must show that the government benefitted from taking the plaintiff's money or property, and Lane has not pled such facts.

1

## I.   Factual Background

The Court addressed the background and history surrounding the regulation of machineguns and bump stocks in its previous order denying the government's first motion to dismiss.[1] The relevant history is repeated in brief here.

On October 1, 2017, a gunman opened fire from a Las Vegas hotel window on a crowd attending a music festival. The gunman killed 58 people and wounded over 400 more using weapons outfitted with bump stocks. In December 2017, the Department of Justice (the Department) published an advance notice of proposed rulemaking on whether bump stocks are machine guns.[2] In December 2018, the Department published the Final Rule (the Rule), determining that bump stocks are machineguns under 26 U.S.C. § 5845(b) and 18 U.S.C. § 922(o)(2).[3]

In June 2024, in *Garland v. Cargill*, the Supreme Court held that a bump stock did not convert a rifle into a "machinegun" under the statutory definition, affirming the Fifth Circuit's decision that the Rule violated the Administrative Procedure Act.[4] Following the Supreme Court's decision in *Cargill*, Lane amended his complaint to include a second, alternative claim for illegal exaction. The government now moves to dismiss both Lane's Fifth Amendment claim and illegal exaction claim.

---

[1] Doc. 17 at 2–7.

[2] Application of the Definition of Machinegun to "Bump Fire" Stocks and Other Similar Devices, 82 Fed. Reg. 60,929 (proposed Dec. 26, 2017) (to be codified at 27 C.F.R. pts 478–79).

[3] Bump-Stock-Type Devices, 83 Fed. Reg. 66,514 (Dec. 26, 2018).

[4] 602 U.S. 406, 410 (2024), *aff'g* 57 F.4th 447 (5th Cir. 2023) (en banc).

## II.  Legal Standard

A Rule 12(b)(6) motion challenges a pleading for "failure to state a claim upon which relief can be granted."[5] A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[6] When analyzing the pleadings under a Rule 12(b)(6) motion, the complaint need contain "only enough facts to state a claim to relief that is plausible on its face."[7] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference the defendant is liable" for the claim alleged.[8] The Court will accept all well-pleaded factual allegations as true, but need not accept legal conclusions or threadbare recitals of elements as true.[9]

## III.  Analysis

The government first argues that the Rule is not sufficient to effectuate a taking. Then the government argues that Lane fails to state a claim under Rule 12(b)(6) for either a taking or for an illegal exaction. The Court addresses the government's argument regarding the effect of the Rule first, then considers the Rule 12 challenge.

---

[5] Fed. R. Civ. P. 12(b)(6).

[6] Fed. R. Civ. P. 8(a)(2).

[7] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[8] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[9] *Id.* at 678–79.

## A. Takings Under the Fifth Amendment

As this Court has stated before, takings law is difficult.[10] But anything worth doing is.[11] The Takings Clause of the Fifth Amendment provides that private property shall not "be taken for public use, without just compensation."[12]

The government argues the Rule did not affect a compensable taking. In this vein, the government argues (1) that the Rule was an interpretive rule; (2) if *Cargill* renders the Rule unauthorized for takings purposes, the takings claim cannot survive; and (3) the Rule is an exercise of police power. The government withdrew its police power argument in its reply.[13]

First, the government argues that, as an interpretive rule, the Rule "cannot form the predicate for a takings claim because they do not provide legal compulsion for Plaintiff to surrender their property."[14] The government position is that the Rule is "a clarifying interpretation rather than a legislative action."[15] Lane argues in response that the Rule was a legislative rule, which gives rise to a takings action.

---

[10] Doc. 17 at 8.

[11] *See* Moneyball (Columbia Pictures, 2011):
   Billy Beane: You don't know how to play first base. Scott, it's not that hard, Scott. Tell 'em Wash.
   Ron Washington: It's incredibly hard.
   Billy Beane: Hey, anything worth doing is.

[12] U.S. Const. amend. V.

[13] The Court also previously disposed of the government's theory that it possessed a police power to regulate and dispose of bump-stock-devices. *See generally* Doc. 17.

[14] Doc. 51 at 9.

[15] Doc. 51 at 9.

A "legislative rule" is "issued by an agency pursuant to statutory authority and has the force and effect of law."[16] On the other hand, an "interpretive rule [] simply advises the public of the agency's construction of the statues and rules which it administers and lacks the force and effect of law."[17] "Legislative rules alter the landscape of individual rights and obligations, binding parties with the force and effect of law; interpretive rules, on the other hand, merely clarify existing duties for affected parties."[18]

Here, the Rule instituted criminal liability for the possession of a bump stock, that is legal one day illegal the next is an alteration of individual rights. Before the Rule, bump stocks were legal to own and possess. And, then, in an "about-face"[19] the Rule set a date for when possession of a bump-stock-device would be criminal.[20]

Even the Department itself appears to have intended for the Rule to be legislative at the time. In responding to a comment about bump stock owners' due process rights, the Department wrote, "The rule clarifies the scope of the [National Firearms Act] and [Gun Control Act], general legislative enactments, with respect to bump-stock-type devices. Official action that is legislative in nature is not subject to the notice and hearing requirements of the due process clause."[21] The Court assumes,

---

[16] *PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.*, 588 U.S. 1, 7 (2019) (cleaned up).

[17] *Id.* (cleaned up).

[18] *Stupp Corp. v. United States*, 5 F.4th 1341, 1352 (Fed. Cir. 2021).

[19] *Cargill*, 602 U.S. at 413.

[20] 83 Fed. Reg. 66,514, 66,514, 66,523, 66,546.

[21] 83 Fed. Reg. 66,514, 66,524–25 (internal quotations omitted).

5

without deciding at this stage, that the Rule is of a legislative nature that is potentially subject to a takings claim.

Second, the government argues that "*Cargill*'s invalidation of the Rule was sufficient to eliminate any takings liability."[22] But the Federal Circuit has held that "even if an action by a government agent is unlawful, it will likely be deemed authorized for takings-claim purposes if it was done within the normal scope of the agent's duties."[23] "[A] government official may act within his authority even if his conduct is later determined to be contrary to law."[24] The Department issued the Rule under its authority to promulgate regulations implementing the National Firearms Act and Gun Control Act.[25] Even though the Supreme Court invalidated the Rule in *Cargill*, that decision did not render the Rule an unauthorized action for the purposes of a takings-claim.

Next, the Court turns to the Complaint and whether Lane stated a cognizable takings claim under Rule 8. The government asserts that Lane fails to state a claim for a physical or a regulatory taking. Lane asserts he has alleged facts sufficient for either theory. Considering first a physical taking, the government argues it "did not mandate that bump stock owners transfer title of their bump stocks to the government," and therefore, did not execute a physical taking.[26]

---

[22] Doc. 51 at 12.

[23] *Darby Dev. Co., Inc. v. United States*, 112 F. 4th 1017, 1027 (Fed. Cir. 2024). The Court recognizes the government wishes to preserve this argument pending further review of the *Darby* case before an *en banc* panel.

[24] *Del-Rio Drilling Programs, Inc. v. United States*, 146 F. 3d 1358, 1362 (Fed. Cir. 1998).

[25] *See* Bump-Stock-Type Devices, 83 Fed. Reg. 66,514, 66,515 (Dec. 26, 2018).

[26] Doc. 51 at 17–18.

There are two types of recognized takings: a physical (or *per se*) taking and a regulatory taking. The Supreme Court has recognized that a "physical *appropriation* of property g[ives] rise to a *per se* taking, without regard to other factors," while a regulatory taking requires an "ad hoc" factual inquiry which includes "factors such as the economic impact of the regulation, its interference with reasonable investment-backed expectations, and the character of the government action."[27] The "classic taking is one in which the government directly appropriates private property for its own use."[28] More specifically, a "claimant under the Takings Clause must show that the government, by some specific action, took a private property interest for a public use without just compensation."[29] "Property rights in a physical thing have been described as the rights to possess, use and dispose of it."[30]

Here, according to Lane's complaint, the Department's Rule took several critical sticks from the bundle of property rights. Lane's complaint states he had a property interest in (*i.e.*, he owned) three bump stocks; the government, through the Rule, dispossessed him of his right to legally own his bump stocks by requiring owners to surrender or destroy their bump stocks to avoid criminal prosecution; and the government did not compensate Lane for the dispossession. Accepting all well-pled allegations as true, Lane has stated a cognizable claim for a Fifth Amendment taking when the government required him to surrender or destroy his bump stocks without

---

[27] *Horne v. Dep't of Agric.*, 576 U.S. 350, 360 (2015).

[28] *Id.* at 357 (cleaned up).

[29] *Adams v. United States*, 391 F.3d 1212, 1218 (Fed. Cir. 2004).

[30] *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 435 (1982).

compensation.

Turning to a regulatory taking, the government seeks to dismiss Lane's takings claim on the grounds that he cannot state a regulatory taking because the Rule was an interpretive rule. The Court addressed this argument above. The remainder of the government's argument seeks to dispose of Lane's theory as to his takings claim and engages in a factual analysis under *Penn Central*. Whether or not the factually-intense *Penn Central* inquiry matters later in this litigation, it's only purpose at this stage is to show that factual intensity means the Court cannot dispose of Lane's takings claim at the motion to dismiss stage.

Lane has stated a takings claim under the Fifth Amendment. The Court **DENIES** the government's motion to dismiss Lane's takings claim.

### B. Illegal Exaction Claim

Lane also claims the government committed an unlawful exaction. The government argues that because no money was taken from Lane, there can be no illegal exaction claim. Lane argues that he has stated an in-effect exaction because the Rule "exacted something of value from him" and "unlawfully declared [his] property to be contraband."[31]

"An illegal exaction involves a deprivation of property without due process of law, in violation of the Due Process Clause of the Fifth Amendment to the Constitution."[32] To prove an illegal exaction claim, a plaintiff must prove they "ha[ve]

---

[31] Doc. 52 at 23.

[32] *Norman v. United States*, 429 F.3d 1081, 1095 (Fed. Cir. 2005).

paid money over to the Government, directly or in effect, . . . that was improperly paid, exacted, or taken from the [plaintiff] in contravention of the Constitution, a statute, or a regulation."[33]  An "in effect" illegal exaction can occur in two situations: first, when the government requires the plaintiff to make a payment to a third party on the government's behalf; and second, "when the government exacts property which it later sells and for which it receives money."[34]

The Court finds both parties to be off base, but the government must ultimately prevail on this claim at this stage.  The point of an illegal exaction claim is that the government is profiting from acquiring money or property from its citizens.  That means the government's position that *money* must be taken is narrow and wrong because it excludes in-kind exactions.  But Lane does not provide any facts at this stage that the government has sold the bump stocks that were surrendered.  If those facts come to light in discovery, Lane may seek leave to amend.  But based on the facts alleged in the live complaint, the Court **GRANTS** the motion to dismiss Lane's illegal exaction claim.

## IV.    Conclusion

For the reasons above, the Court **GRANTS IN PART** and **DENIES IN PART** the government's motion to dismiss.  The Court **DISMISSES** Lane's illegal exaction claim.

---

[33] *Aerolineas Argentinas v. United States*, 77 F.3d 1564, 1572–73 (Fed. Cir. 1996) (cleaned up).
[34] *Piszel v. United States*, 121 Fed. Cl. 793, 801 (Fed. Cl. 2015).

9

**IT IS SO ORDERED** this 4th day of June, 2025.

_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE